UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, ) ) ) | |
| Plaintiff ) ) | C.A. No.: 04 - 263 Erie |
| v. ) ) | Judge McLaughlin<br>Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, ) ) ) ) | |
| Defendants ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' APPEAL FROM ORDER OF MAGISTRATE JUDGE**

AND NOW, the Defendants, by and through their attorneys, ELDERKIN, MARTIN, KELLY & MESSINA, file the following Appeal from Order of Magistrate Judge, respectfully representing as follows:

I.   APPEAL FROM ORDER OF JUNE 13, 2006

1. On June 13, 2006, the Magistrate Judge issued an order denying Defendants' Motion to Compel Discovery (Doc #57) and denying in part Defendants' Motion for Protective Order (Doc #64). The Defendants respectfully appeal from this Order.

II.     BACKGROUND

2. This is a contract action in which the Plaintiff seeks payment from the Defendants for services allegedly provided by Plaintiff to Defendants under a written contract dated September 1, 2002. In response, and relevant to the issues raised by this appeal, Defendants have asserted that Plaintiff failed to adequately perform the services required by the contract. *Answer, ¶9; Third Defense*. Plaintiff terminated the contract effective January 9, 2004 and almost simultaneously commenced operations of its own loan consolidation work in direct competition with the Defendants.

3. Defendants are in the business of, among other things, securing customers for a lender for purposes of the issuance of new student loans to consolidate existing student loans. The Defendants perform this loan consolidation service by engaging in telemarketing and mail solicitations of persons who have more than one outstanding student loan.

4. Under the contract of September 1, 2002, the Defendants hired the Plaintiff to, among other things, obtain lists of names, telephone numbers and addresses to be used by Defendants in the telemarketing and mail solicitations.

5. To obtain these lists, the Plaintiff prepared and submitted written requests to ChoicePoint, a company which retrieves, stores and sells vast amounts of credit data from various

national credit agencies. ChoicePoint would produce lists from this database in response to the specific attributes and characteristics of the debt profile to be identified by Plaintiff. This profile could include attributes such as the monetary level and the number of student loans held by each debtor to be listed. See *Plaintiff's Brief in Support of Motion for Protective Order (Doc #62) pp. 3-4*. It is Defendants' understanding that Plaintiff submitted approximately twenty-three (23) separate written requests to ChoicePoint over the course of the duration of the parties' contract. These requests contain detailed descriptions of the characteristics of the specific universe of names and addresses to be produced by ChoicePoint.

6. The Plaintiff represented to the Defendants that the Plaintiff had experience and expertise in defining and identifying list selection criteria (i.e. attributes and characteristics) so as to obtain from ChoicePoint lists which would produce the highest rate of returns on the solicitations. See *Plaintiff's Motion for Protective Order (Doc #61) ¶3*.

7. After several months of performing under the parties' September 1, 2002 contract, the lists delivered to Defendants by Plaintiff declined substantially in quality. The number of usable names and telephone numbers declined and the positive results of those who could be called by Defendants also diminished significantly. Although Plaintiff has denied that it is responsible for these poor results, Plaintiff has offered no viable explanation for the precipitous decline in performance. Coincidentally, and unbeknownst to Defendants, at or about this same time, Plaintiff was secretly setting up its own business to compete directly with the Defendants for

loan consolidations. This concealed conduct of Plaintiff was a violation of the contract's non-compete provision. *Contract, ¶17*.[1] It also raises a question as to whether Defendants received all of the lists which had been delivered to Plaintiff by ChoicePoint or whether Plaintiff was skimming the lists for its own competitive advantage.

       8. In any event, it was the dramatic and unexplained decline in performance of the lists which, in part, led the Defendants to fail to pay the Plaintiff the amounts it currently claims are due and payable.

III.      DEFENDANTS' MOTION TO COMPEL PRODUCTION OF LIST SELECTION CRITERIA

       9. In discovery, the Defendants requested that Plaintiff produce the actual list selection criteria which the Plaintiff had submitted to ChoicePoint. A review of this selection criteria is needed in order for Defendants to investigate the cause of the significant decline in the Plaintiff's performance of its contractual obligations. Since the list criteria is *the* critical factor in the selection of the lists to be produced by ChoicePoint, such information would be relevant to the issue of whether Plaintiff adequately performed its obligations to the Defendants.

---

[1] In discovery we have uncovered that this competing venture was formed in October, 2003 and that at the end of December, 2003, just prior to Plaintiff's termination of its contract with Defendants on January 9, 2004, Plaintiff signed its own contract with ChoicePoint to purchase lists for Plaintiff's business.

10. The Plaintiff had flatly refused to provide this information and had redacted the selection criteria information from those documents which had been produced. The Plaintiff has claimed that the list criteria is proprietary and, thus, need not be produced. Redacted documents include those bearing Bates numbers 76, 78, 95, 99, 106-108, 114, 118, 123, 160, 162, 195-198, 201, 206-208, 214, 217-218.

11. In response, the Defendants had offered to sign a confidentiality agreement so as to protect any proprietary information which may be contained within the list criteria. The Plaintiff has flatly refused this request also.

12. After the Defendants filed their motion to compel discovery[2] and during a telephone conference with the Magistrate Judge held on June 2, 2006, the Plaintiff offered to produce unredacted versions of the requested records but only if the records were viewed by Defendants' counsel only. Thus, under this proposal, Defendants' counsel would not be able to consult with his client to determine the significance nor meaning of the selection criteria. As a substitute for counsel's being able to consult with the Defendants, Plaintiff kindly offered to answer defense counsel's questions relating to the interpretation and the significance of the documents to be produced. However, without talking with his clients, defense counsel would not be able to independently verify the accuracy of this information. Moreover, the very formulation of counsel's questions to Plaintiff would reveal the defense trial strategies.

---

[2] Defendants' motion was filed on May 26, 2006. On June 1, 2006, Plaintiff filed its motion for protective order (Doc #61).

13. Without waiving the pending motion to compel and while preserving the right to pursue that motion further, defense counsel agreed to this proposal as an interim accommodation. However, defense counsel also pointed out that if he is unable to determine the meaning or the significance of the information contained within the redacted records, he would have to pursue the motion to compel.

14. The Plaintiff then produced unredacted versions of most, but not all, of the previously withheld documents. As anticipated, defense counsel was unable to decipher the meaning and thus was unable to discern the significance of a large portion of the information contained within the requested records. On June 9, 2006, as previously instructed by the Magistrate Judge, defense counsel then advised the Court that he could not fully nor properly interpret the recently released documents. Defense counsel again proposed that the records be released under a protective order and suggested to the Court that counsel would have only one employee of the Defendants designated as the sole individual with whom counsel could consult regarding the released documents. Plaintiff objected to this proposal. The Magistrate Judge indicated that she would take the matter under advisement.

15. On June 13, 2006, the Magistrate Judge issued an order denying the Defendants' motion to compel based upon the conclusion that "the relevant issue is whether the lists were deficient, not how they may have become that way." Thus, the Magistrate Judge denied the motion on the basis that the requested documents were not relevant.

16. The Defendants respectfully appeal from the Magistrate Judge's Order for the following reasons. First, the Plaintiff did not object to the production of documents based upon any claim of irrelevance. <u>See</u> *Plaintiff's Motion for Protective Order* (Doc #61) ¶6 (redacted information is proprietary). This is because Plaintiff understands the relevance of these records.

17. The Rules of Evidence broadly define relevance as including any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.E. 401. Here, evidence of the selection criteria utilized by the Plaintiff would certainly have some bearing on whether the Plaintiff fulfilled its obligations under the parties' contract. If the selection criteria was deficient, defective or otherwise inadequate, the lists produced by ChoicePoint would suffer from quality issues. Thus, the selection criteria may also support a finding that the lists were, in fact, deficient. Since the Plaintiff has denied that lists were deficient and has denied that the Plaintiff was responsible for the poor performance of the lists, the issue of if and how the lists became deficient will be a centerpiece of the litigation. Therefore, the requested documents are clearly relevant.

18. Moreover, the Court has not prohibited the Plaintiff from testifying or offering evidence at trial to support the claim that Plaintiff's selection criteria was adequate or that the selection criteria was not the cause of the poor performance of the lists. The Court's denial of the

Defendants' motion to compel places Defendants at a significant disadvantage to contest or to refute any such evidence to be offered by Plaintiff.

19. As to the issue of the alleged proprietary and confidential nature of the selection criteria, in its June 13, 2006 Order the Magistrate Judge directed the parties to submit a proposed confidentiality and/or protective order. There is no reason why the asserted need for proprietary protection of the list selection criteria cannot be satisfied through the use of such a commonplace order.

WHEREFORE, Defendants respectfully request this Honorable Court issue an order reversing the decision and ruling of the Magistrate Judge of June 13, 2006 and directing that the Plaintiffs produce the requested documentation pursuant to the terms and conditions of the aforementioned protective order.

IV.         DEFENDANTS' MOTION FOR PROTECTIVE ORDER

20. The Defendants filed a Motion for the Issuance of a Protective Order (Doc #64) regarding three subpoenas duces tecum issued by the Plaintiff to non-parties, namely Direct Main Credit Data, Inc., d/b/a ChoicePoint Precision, Brazos Student Finance Corporation and AES/PHEAA.[3] The basis of the Defendants' request for a protective order was that the

---

[3] Brazos was the lender for whom Defendants solicited customers. Defendants continue to do work for Brazos. AES/PHEAA was the entity which worked on behalf of Brazos to service the new student loans.

subpoenaed documents would likely contain proprietary customer lists and other proprietary information.  Additionally, the subpoenas demanded production of documents without any reference to time frame.  Since the parties' contract was terminated by Plaintiff effective January 9, 2004, documents which are subsequent to the termination date are irrelevant.  *Defendants' Motion, Exhibit 2 (letter of Attorney Snyderman dated January 9, 2004)*.  Since Plaintiff is a competitor of the Defendants, this information should not be released.

       21.  In the Order of June 13, 2006, the Magistrate Judge denied the Defendants' motion for protective order on the ground that Defendants are "without standing" to seek a protective order.

       22.  Defendants respectfully disagree that they lack standing.  The Defendants' right to seek a protective order is clearly set forth in Rule 26(c) which states that upon "motion by a party <u>or</u> by the person from whom discovery is sought" the Court may issue a protective order.

       23.  Although Magistrate's Order of June 13, 2006 also indicated that a protective order would be issued, the details of which have not yet been determined, the Court did not address the merits of Defendants' request to limit the scope of the subpoenas.  Additionally, it is important that the Defendants affirm their standing to seek a protective order.

WHEREFORE, Defendants respectfully request this Honorable Court issue an order reversing the decision and ruling of the Magistrate Judge of June 13, 2006 and granting Defendants' motion for protective order.

    Respectfully submitted,

    ELDERKIN, MARTIN, KELLY & MESSINA

    By  /s/ Craig A. Markham, Esquire
        Craig A. Markham, Esquire
        Attorney for Defendants
        150 East Eighth Street
        Erie, Pennsylvania 16501
        (814) 456-4000