UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING | ) | |
| PARTNERS, LLC, a Delaware | ) | |
| limited liability company, | ) | |
| Plaintiff | ) | C.A. No.: 04 - 263 Erie |
| | ) | |
| v. | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, | ) | |
| INC., a Pennsylvania corporation, and | ) | |
| TELATRON MARKETING GROUP, | ) | |
| INC., a Pennsylvania corporation, | ) | |
| Defendants | ) | TRIAL BY JURY DEMANDED |

## AMENDED ANSWER AND COUNTERCLAIM

AND NOW, the Defendants, by and through their attorneys, ELDERKIN,

MARTIN, KELLY & MESSINA, file the following Amended Answer, respectfully representing

as follows:

### FIRST DEFENSE

1.  After reasonable investigation, the Defendants are without sufficient knowledge

or information to form a belief as to the truth of the averments of paragraph 1 of the Complaint

and the same are therefore denied.

2.  Denied as stated.


3.  Denied as stated.


4.  The averments of paragraphs 1 through and including 3 above are hereby incorporated by reference as if set forth fully herein.


5.  The averments of paragraph 5 of the Complaint are conclusions of law to which no response is required.


6.  Denied.  By Order dated August 31, 2004, the United States District Court for the District of Delaware ruled that personal jurisdiction could not be exercised over the Defendants because the events allegedly giving rise to the Plaintiff's asserted causes of action have an insufficient connection to Delaware.


7.  Denied as stated.  The Student Loan Origination and Marketing Agreement was signed by the parties in February, 2003.  The Agreement speaks for itself and that document, and all related exhibits, identifies the respective obligations and duties of the parties.  It is admitted that the Plaintiff was hired to perform certain specified services for the Defendants. There was no partnership formed or created between the parties.  It is denied that Plaintiff performed all of its obligations.

2.

8.  It is admitted that reference to the Agreement, and all exhibits thereto, must be made in order to properly determine the parties' respective obligations and duties.  It is denied that Plaintiff fulfilled all of its obligations and duties.

9.  Denied as stated.  The amount of compensation which could be earned by the Plaintiff is set forth in an exhibit to the Agreement, entitled Exhibit-001.  As a condition precedent to any payment, the Plaintiff was obligated to properly perform certain specified work and services.  It was specifically denied that the Plaintiff has properly performed all of its obligations and duties in this regard.  Moreover, the Plaintiff is also responsible for a share of startup expenses and other costs which are detailed in the Agreement and in Exhibit-001.  Furthermore, as an inducement to Defendants, the Plaintiff misrepresented material aspects of the loan financing process.  As a result, Defendants incurred a substantial increase in the expected costs and financial burden.

10.  The averments of paragraph 10 are conclusions of law to which no response is required.  To the extent that a response may be required, it is specifically denied that the Defendants have breached any fiduciary duty allegedly owed to the Plaintiff.

11.  Denied.

3.

12. The averments of paragraph 12 are conclusions of law to which no response is required. To the extent that a response is required, it is hereby asserted that the Plaintiff failed and refused to properly perform all of its obligations and duties under the parties' contract.

13. The averments of paragraph 13 are conclusions of law to which no response is required. To the extent that a response is required, it is hereby asserted that the Plaintiff failed and refused to properly perform all of its obligations and duties under the parties' contract.

14. The averments of paragraph 14 are conclusions of law to which no response is required. To the extent that a response is required, it is hereby asserted that the Plaintiff failed and refused to properly perform all of its obligations and duties under the parties' contract. It is admitted that the Defendants have paid the Plaintiff the sum of $755,007.45.

15. Denied as stated. It is denied that any additional amounts are now due to the Plaintiff under the terms of the parties' contract and under the facts of this case.

16. Denied.

17. Denied. The averments of paragraph 17 are conclusions of law to which no response is required. To the extent that a response may be required, it is specifically denied that Defendants have improperly diverted any funds which would be payable to the Plaintiff.

4.

18.  Denied.  The averments of paragraph 18 are conclusions of law to which no response is required.  To the extent that a response may be required, it is specifically denied that Defendants have improperly diverted any funds which would be payable to the Plaintiff.

19.  Denied.  The averments of paragraph 19 are conclusions of law to which no response is required.  To the extent that a response may be required, it is specifically denied that the appointment of a receiver is appropriate or permissible under applicable law.

WHEREFORE, the Defendants respectfully request that this Honorable Court enter an order and a judgment in their favor and against the Plaintiff on all causes of action which have been asserted, plus awarding to Defendants attorney's fees and expenses incurred in the defense of this matter.

<u>SECOND DEFENSE</u>

The Plaintiff's claims are barred or must be offset by the Plaintiff's breach of its contractual obligations and duties owed to the Defendants.

<u>THIRD DEFENSE</u>

The Plaintiff has failed to fulfill and satisfy all of the conditions precedent to any entitlement to payment under the parties' contract.

5.

FOURTH DEFENSE

The Plaintiff's claims are barred by the applicable statute of limitations.

FIFTH DEFENSE

The Plaintiff's claims are barred or must be reduced due to the Plaintiff's material misrepresentations regarding the subject matter of the contract between the parties, the Plaintiff's abilities, the Defendants' obligations thereunder and the profits to be realized as a result of the services and work to be provided by the Plaintiff.

SIXTH DEFENSE

The Plaintiff has failed to state a claim upon which relief may be granted.

WHEREFORE, the Defendants respectfully request that this Honorable Court enter an order and a judgment in their favor and against the Plaintiff on all causes of action which have been asserted, plus awarding to Defendants attorney's fees and expenses incurred in the defense of this matter.

COUNTERCLAIM

1.  To the limited extent necessary to establish jurisdiction and venue, the

Defendants hereby incorporate by reference, as if set forth fully herein, those paragraphs of the

Complaint and of the original and the Amended Answer relating to and concerning personal

jurisdiction and venue.

2.  At the end of February, 2003, the Plaintiff and the Defendants signed a written

contract pursuant to which the Plaintiff was to provide certain work and services to the

Defendants relating to the Defendants' student loan origination business.  A copy of this contract

is attached hereto as Exhibit A and is incorporated herein by reference.  The Plaintiff unilaterally

terminated this contract by letter dated January 9, 2004.

3.  The work to be performed by the Plaintiff for the Defendants under this

contract included (a) obtaining lists of names, addresses and telephone numbers to be used by the

Defendants for telemarketing solicitations of borrowers for student loan consolidations and (b) the

planning, development and implementation of direct mail campaigns for solicitations of borrowers

for student loan consolidations, which work also included obtaining lists of names and addresses

to be used for the mailings.  Under the terms of this contract, the Plaintiff also was obligated to

manage a relationship with credit bureaus relative to obtaining solicitation lists and analyzing the

results of the mailing campaigns.

7.

4.  Prior to the signing of the contract at the end of February, 2003, the Plaintiff made certain written representations and promises to the Defendant regarding the revenue to be produced as a result of the Plaintiff's work and effort in the mailing campaigns.  These promises and representations were made by the Plaintiff in an effort to induce and convince the Defendants to enter into a contract with the Plaintiff.

5.  The Plaintiff represented and warranted that each of the mailing campaigns to be conducted by Plaintiff, consisting of 200,000 solicitations per campaign, would result in gross commission revenues of $1,977,025.00.  Attached hereto as Exhibit B is a copy of the Plaintiff's e-mail of January 7, 2003.  The Plaintiff told Defendants that this promise of revenue was "fairly conservative."  The Plaintiff also indicated that it would make such mailings on a monthly basis and would thus generate this gross income monthly.

6.  Prior to signing the contract at the end of February, 2003, the Plaintiff had also provided the Defendants with solicitation lists to be used for telemarketing purposes.  These lists were of such a quality that 95% of the names and telephone numbers were usable for the solicitation calls.  The Plaintiff represented and warranted to the Defendants that these lists were indicative of the quality of the lists Plaintiff would continue to provide to Defendants if the parties entered into a contract.

7.  Based upon the Plaintiff's representations and warranties, as stated above, and based upon the performance and the quality of the initial telemarketing lists which had been

8.

provided by the Plaintiff, the Defendants agreed to enter into an agreement with the Plaintiff and, on that basis, did sign the agreement attached hereto as Exhibit A.

8.  Under the terms of that contract, the Defendants agreed to pay the Plaintiff an amount calculated as 28.57% of gross revenues.  Defendants' agreement to pay this amount to Plaintiff was based upon the promises, representations and performance of the Plaintiff as set forth above.

9.  In reliance upon the Plaintiff's representations and promises, the Defendants also made capital investments and hired and trained personnel based upon the levels of production and the levels of revenue promised by the Plaintiff.

10.  After the parties signed the contract at the end of February, 2003, the Plaintiff did not fulfill any of the foregoing promises and representations.

11.  The Plaintiff did not make monthly mailings of written solicitations as promised.  To the contrary, the Plaintiff made only two mailings during the period of February, 2003 through January 9, 2004, at which time the Plaintiff unilaterally terminated the contract. The first mailing was made in March, 2003 and Plaintiff sent out only 129,760 individual solicitations instead of the promised 200,000 solicitations.  Nevertheless, using the Plaintiff's revenue formula as described in Exhibit B attached hereto, this mailing should have produced gross revenues of approximately $1,282,693.80.  However, this mailing only produced gross

revenues calculated as approximately $326,604.00.  The Plaintiff made its second mailing in June, 2003 consisting of only 70,000 pieces, not 200,000 pieces.  Using the Plaintiff's formula, this mailing nevertheless should have produced revenues of approximately $691,958.76 but it actually produced revenues calculated as approximately $152,880.00.

12.  From March, 2003 through December, 2003, the Plaintiff had promised to make and should have made a total of ten mailings with each generating gross revenues of approximately $1,977,025.00 for total combined gross revenues of approximately $19,770,250.00.  Defendants' net gross revenues, after paying Plaintiff 28.57%, would have been approximately $14,121,889.00.  Instead, Plaintiff's mailings produced gross revenues calculated as only approximately $479,484.00 ($326,604.00 + $152,880.00) during this period of time.  Of this amount, Defendants' net revenue after paying Plaintiff would be approximately $342,495.00. Thus, Defendants lost approximately $13,779,394.00 in combined net revenues for all of the promised mailings.

13.  The Plaintiff also breached its promises and obligations with regard to the quality of the telemarketing lists by providing to Defendants deficient lists of poor quality such that the usable names and telephone numbers declined from a pre-contract average of approximately 95% to a post-contract result of 53.3% for the list supplied in April, 52.9% for the list supplied in May, 57.5% for the list supplied in July, 70% for the list supplied in August, 35.2% for the list supplied in September, 66.8% for the list supplied in October and 40.5% for the list supplied in December, 2003.  If the quality of these lists supplied by Plaintiff were of the same

10.

as they were in the pre-contract time frame, the gross revenues from these lists would have been in the combined total of approximately $7,903,633.00. Defendants' net revenues, after paying Plaintiff, would then have been approximately $5,645,565.00. In contrast, as a result of the substantial drop in usable names, the actual combined revenue of these lists is calculated to have been approximately $4,390,446.00 resulting in a deficit of approximately $3,513,187.00 in gross revenues. Of this deficit, Defendants lost approximately $2,509,469.50 in expected net revenues after deducting the percentage which would have been payable to Plaintiff.

14. At or around the time of the signing the contract, and certainly no later than October, 2003, Plaintiff began taking steps and measures to compete with the Defendants and/or to help and assist others to compete with Defendants in direct violation of the parties' agreement.

15. During this time, the Plaintiff was aware of and/or participated in the acts of the Plaintiff's only shareholders relating to the creation and development of a competing business entity. With the intent and plan of assisting these shareholders and/or assisting the competing business entity which the Plaintiff and these individuals were developing, Plaintiff disclosed and/or provided critical proprietary and confidential information of the Defendants, permitted these individuals and/or the competing business to take and utilize this information and Plaintiff actively assisted them in their efforts to form and operate this competing business. Plaintiff failed to inform or alert Defendants of this wrongful activity. In a further effort and plan to damage and weaken the Defendants' competitive advantage, the Plaintiff then abruptly and without warning terminated the parties' contract on January 9, 2004.

11.

16.   Based upon information and belief, it is hereby alleged that the Plaintiff's breach of its promises and representations, as detailed above, were deliberate and were designed to place the Defendants at an economic disadvantage while, at the same time enabling the Plaintiff, and/or its shareholders and/or its new business, to obtain confidential and proprietary information needed to operate its competing business.

17.   Upon information and belief, it is asserted that the formation of the competing business entity was a sham and a wrongful subterfuge of the Plaintiff to attempt to avoid the non-compete prohibitions of the parties' contract.

18.   The foregoing acts and omissions of the Plaintiff constitute a breach of the Plaintiff's obligations and duties owed to the Defendants.

<u>COUNT I</u>

19.   Paragraphs 1 through 18 above are hereby incorporated by reference as if set forth fully herein.

20.   The Plaintiff's acts and omissions, all as described above, constitute various breaches of the contractual obligations owed by the Plaintiff to the Defendants.

12.

WHEREFORE, Defendants demand judgment against the Plaintiff in the amount of $16,288,863.00, plus reimbursement of record costs and all other relief deemed just by the Court.

## COUNT II

21. Paragraphs 1 through 20 above are hereby incorporated by reference as if set forth fully herein.

22. In the alternative, the parties were operating under a mutual mistake of fact regarding the revenues to be generated by the mailing campaigns and/or the telemarketing calls such that the terms and conditions of the contract are not enforceable against Defendants.

WHEREFORE, Defendants demand judgment against the Plaintiff in the nature of a declaration or ruling that the contract is not enforceable against the Defendants or alternatively the Defendants request the entry of judgment against Plaintiff in the amount of $16,288,863.00, plus reimbursement of record costs and all other relief deemed just by the Court.

## COUNT III

23. Paragraphs 1 through 22 above are hereby incorporated by reference as if set forth fully herein.

24. The Defendants were induced to enter into the parties' contract based upon the Plaintiff's fraud and/or misrepresentations, which misrepresentations were either negligently made or intentionally made with the expectation and knowledge that Defendants would rely upon the same. But for the Plaintiff's fraud and/or misrepresentations, Defendants would not have entered into the contract, or, if a contract would have been formed, Defendants would not have agreed to the payment terms described therein.

WHEREFORE, Defendants demand judgment against the Plaintiff declaring the contract null and void, or in the alternative entering judgment in the amount of $16,288,863.00, plus reimbursement of record costs and all other relief deemed just by the Court.

<u>COUNT IV</u>

25. Paragraphs 1 through 24 above are hereby incorporated by reference as if set forth fully herein.

26. The Plaintiff secretly conspired, planned and assisted others to develop and operate a business to compete directly with the Defendants.

27. As part of this conspiracy, the Plaintiff utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and the Plaintiff failed to supply to the

14.

Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply.

WHEREFORE, Defendants demand judgment against the Plaintiff in the amount of $16,288,863.00, plus reimbursement of record costs and all other relief deemed just by the Court.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By  /s/ Craig A. Markham
     Craig A. Markham, Esquire
     Attorney for Defendants
     150 East Eighth Street
     Erie, Pennsylvania 16501
     (814) 456-4000