IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELAWARE MARKETING PARTNERS,
LLC, a Delaware limited liability company,

       Plaintiff    CA No.:  04-263

    v.         JUDGE McLAUGHLIN AND
              MAGISTRATE JUDGE
CREDITRON FINANCIAL SERVICES,  SUSAN PARADISE BAXTER
INC, a Pennsylvania corporation, and,
TELATRON MARKETING GROUP,  TRIAL BY JURY DEMANDED
INC., a Pennsylvania corporation,
              **Electronically Filed**
       Defendants

**BRIEF IN SUPPORT OF MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIM**

AND NOW, comes Plaintiff, Delaware Marketing Partners, LLC, by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files the following Brief in Support of Motion to Dismiss as follows:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On January 22, 2004, Plaintiff filed a Complaint asserting various claims based upon a written contract between the parties. The contractual agreement which forms the basis of said claims became effective September 1, 2002. (See first paragraph of Student Loan Origination and Marketing Agreement, attached hereto as Exhibit "1"). On October 31, 2004, Defendants filed their Answer to the Complaint. On September 22, 2006, Defendants filed a Counterclaim setting forth various causes of action against Plaintiff, including breach of contract, mutual mistake of fact, fraud in the inducement and misappropriation of trade secrets. Because Defendants filed their Counterclaim after the running of the applicable statute of limitations, as

1

more fully discussed below, several claims within Defendants' Counterclaim should be dismissed. Further, the remainder of Defendants' Counterclaim should be dismissed for failure to state a claim upon which relief can be granted.

## II. ARGUMENT

### A. A MOTION TO DISMISS IS APPROPRIATE WHERE, ON THE FACE OF THE PLEADING, DEFENDANT'S COUNTERCLAIM SHOWS NONCOMPLIANCE WITH THE STATUTE OF LIMITATIONS PERIOD.

Defendants' Counterclaim raises various claims which are barred by the applicable statute of limitations. While the statute of limitations is more traditionally raised as an affirmative defense, the statute of limitations may be raised under a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the "complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir.1994) (citing *Trevino v. Union Pacific Railroad Co.,* 916 F.2d 1230 (7th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357). *See also*, *Sullivan v. Equifax, Inc.*, 2002 WL 799856, *4 (E.D. Pa. 2002).

### B. DISMISSAL OF COUNT III OF DEFENDANTS' COUNTERCLAIM

In Count III of Defendants' Counterclaim, Defendants alleged that Plaintiff's fraud and/or negligent misrepresentations "induced [Defendants] to enter into the parties' contract" and that but for these alleged misrepresentations, "Defendants would not have entered into the contract." (*See*, Paragraph 24 of Defendants' Counterclaim). Furthermore, Defendants alleged that said fraudulent statements and/or misrepresentations were made prior to the signing of the contractual agreement in February of 2003.

It is well settled that state law governs the time period for the running of a statute of limitations. *Schreiber v. Eli Lilly & Co.*, 2006 U.S.Dist.Lexis 13477, *24 n.12 (3d Cir. 2006)(citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). The contract at issue is governed by Pennsylvania law. (See paragraph 18 of the Student Loan Origination and Marketing Agreement) Under Pennsylvania law, Defendants' Counterclaim for fraudulent inducement is governed by a two-year statute of limitation and is thus barred.

The Pennsylvania statute sets forth the relevant time limitations within which to file a claim for fraud in the inducement:

> The following actions and proceedings must be commenced within **two years**:
> ...
> Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including **deceit or fraud**, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.Cons.Stat.Ann. §5524(7)(emphasis added). *See also*, *NYSE&G, Corp. v. Westinghouse Electric Corp.*, 564 A.2d 919, 928 (Pa. Super. Ct. 1989)(dismissing claim for fraudulent inducement in an amended pleading after two year statute of limitations had run, relying on 42 Pa.Cons.Stat.Ann. §5524); *Schnelling v. Prudential Securities, Inc.*, 2004 U.S.Dist.Lexis 15628, *5 (E.D. Pa. 2004)("claims of fraud, fraudulent inducement**,** and negligent misrepresentation are subject to a two-year statute of limitations in Pennsylvania."). The *Schnelling* court further addressed the issue of when claims, such as those in the present action, accrue for purposes of the statute of limitations. The *Schnelling* court held that "a claim accrues when a plaintiff is damaged, not when the precise amount or extent of the damage is realized." *Schnelling*, 2004 U.S. Dist. LEXIS 15628 at *6 ("The damage to PSCC occurred when it became aware that the escrow accounts were not created in June 2001.") (citing *Barnes v. Amer. Tobacco Co.*, 161 F.3d

3

127, 136 (3d Cir. 1998) "A claim under Pennsylvania law accrues at the occurrence of the final significant event necessary to make the claim suable.").

In the action before this Court, and taking as true the allegations in Defendants' Counterclaim, the alleged misrepresentations which form the basis of Defendants' claim for fraud, fraud in the inducement, and/or negligent misrepresentation were made prior to the signing of the contract in February of 2003. Defendants' further allege that during 2003 Plaintiff failed to follow through on the representations made prior to the parties entering into the agreement. At the latest, Defendants' claim for fraud, fraudulent inducement and/or negligent misrepresentation accrued at the end of 2003. Based upon the allegations, Defendants would have been damaged no later than when Defendants became aware that Plaintiff allegedly failed to follow through, i.e. during the year 2003.

Defendants filed their Counterclaim alleging fraud, fraudulent inducement and negligent misrepresentation on September 22, 2006, more than two years after any alleged damage could have accrued. The applicable statute of limitations bars Defendants' claims and Count III of Defendants' Counterclaim should be dismissed.

C. **DISMISSAL OF COUNT IV OF DEFENDANTS' COUNTERCLAIM**

In Count IV of the Counterclaim, Defendants apparently allege a claim for misappropriation of trade secrets, alleging "Plaintiff utilized, disclosed and/or revealed confidential and proprietary information of the Defendants." (*See*, Paragraph 27 of Defendants' Counterclaim). Furthermore, Defendants allege that Plaintiff disclosed and/or provided critical proprietary and confidential information of the Defendants ...." (*See*, Paragraph 15 of Defendants' Counterclaim).

Pennsylvania law provides a two-year statute of limitations period for Defendants' claim for misappropriation of trade secrets, as set forth in 42 Pa.Cons.Stat.Ann. §5524. *See*, *Patient Transfer Systems, Inc. v. Patient Handling Solutions, Inc.*, 2001 U.S.Dist.Lexis 12215, *48 (E.D. Pa. 2001)("Under Pennsylvania law, a claim of misappropriation of trade secrets is subject to a two year statute of limitations.")(citing *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1455 (E.D. Pa. 1992)). *See also*, *Highland Tank and MFG., Co. v. PS International, Inc.*, 393 F.Supp.2d 348, 354 (W.D. Pa. 2005)("A trade secret claim is subject to a two year statute of limitations, based upon 42 Pa.C.S.A. § 5524(7).").[1]

Defendants' allege that Plaintiff's misappropriation occurred "at or around the time of the signing of the contract, and certainly no later than October, 2003". (*See*, Paragraph 14 of Defendants' Counterclaim). Furthermore, Defendants allege that <u>during the above mentioned time frame</u>, Plaintiff misappropriated certain information to create and develop a competing business entity. (*See*, Paragraph 15 of Defendants' Counterclaim). Defendants may argue that they did not know of the alleged misappropriation until taking discovery after the commencing of the lawsuit. However, this argument is without merit in light of the allegations set forth in their Counterclaim. Further, evidence revealed in this action prior to Defendants filing their Counterclaim establishes that Defendants knew of the facts which they have alleged to constitute a basis for their misappropriation claim, no later than the end of 2003. Terry Smith, who was employed by Telatron Marketing Groups, Inc. and who oversaw telemarketing production and

---

[1] Pennsylvania enacted the Uniform Trade Secrets Act, 12 Pa.C.S.A. § 5301 *et seq*., which provides a three year statute of limitations period. However, that act did not take effect until April, 19, 2004, and the Uniform Trade Secrets Act "does not apply to misappropriation occurring before the effective date of the act, including a continuing misappropriation that began before the effective date and continues after the effective date." *Highland Tank and MFG., Co.*, 393 F.Supp.2d at 353. (citing 2004 Feb. 19, P.L. 143 No. 14 § 4.). In their Counterclaim, Defendants allege that Plaintiff's misappropriation of Defendants' trade secrets began "[a]t or around the time of the signing of the contract [February, 2003], and certainly no later than October, 2003 ...." Based upon Defendants' allegations, Plaintiff's alleged misappropriations began prior to the enactment of the Pennsylvania Uniform Trade Secrets Act and therefore are governed by a two-year statute of limitations as provided for by 42 Pa.Cons.Stat.Ann. §5524. A three year statute of limitations does not apply in this matter.

client services, testified during her deposition that Defendants had suspicions and concerns that Plaintiff was improperly using information regarding Defendants training materials, call scripting materials and do not call materials in 2003, that Defendants had conversations with Plaintiff about other business programs that did not materialize prior thereto, and an apparent correlation between Plaintiff requesting this information and the conversations. (Exhibit 2, Deposition of Terry Smith, pp. 41-44) These events raised concerns that were discussed by Defendants in 2003. *Id.* Defendants' claims for misappropriation of trade secrets found in Count IV of their Counterclaim are barred by the applicable two-year statute of limitations and should be dismissed.

### D.    DISMISSAL OF COUNT I OF DEFENDANTS' COUNTERCLAIM

In Count I of the Counterclaim Defendants allege two breach of contract claims by incorporating various allegations set forth in other parts of the Counterclaim. The first of those claims focuses upon certain alleged acts and omissions of Plaintiff and the other focuses upon allegations of Plaintiff improperly competing with Defendants.

Defendants' Counterclaim alleges that "Plaintiff's acts and omissions ... constitute various breaches of the contractual obligations owed by the Plaintiff to the Defendants." (*See*, Paragraph 20 of Defendants' Counterclaim.) The "acts and omissions" Defendants rely upon for their breach of contract claims stem from representations made prior to the signing of the contract. (*See*, Paragraph 4 of Defendants' Counterclaim.) Defendants allege that prior to the signing of the contract, Plaintiff represented that its monthly mail campaigns would consist of 200,000 solicitations and that Plaintiff predicted "fairly conservative" gross revenues of nearly $2 million per month. (*See*, Paragraph 5 of Defendants' Counterclaim.) In further support of its breach of

contract claim, Defendants rely upon alleged representations of Plaintiff, made prior to the signing of the contract, concerning the quality of solicitation lists for telemarketing. Defendants claim Plaintiff represented that lists provided prior to the signing of the contract were "indicative of the quality of the lists Plaintiff would continue to provide to Defendants...." (*See*, Paragraph 6 of Defendants' Counterclaim.)

Defendants claim that Plaintiff breached the contractual agreement by not fulfilling on the above promises. (*See*, Paragraph 10 of Defendants' Counterclaim.) Defendants allege that Plaintiff's mailing list did not consist of 200,000 solicitations, did not conduct the mail campaigns every month, and that the "fairly conservative" gross revenues were not realized. (*See*, Paragraph 11 of Defendants' Counterclaim.) Additionally, Defendants claim that Plaintiff breached the contract because the quality of the telemarketing lists did not remain at the "pre-contract average of approximately 95% ...." (*See*, Paragraph 11 of Defendants' Counterclaim.)

Pennsylvania law provides that the intent of the parties to a written contract is contained in the writing itself. *Krizovensky v. Krizovensky*, 425 Pa. Super. 204, 624 A.2d 638 (1993) (citing *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982)). "When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. (Citation omitted). Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Id*. (citing *D'Huy v. D'Huy*, 390 Pa. Super. 509, 568 A.2d 1289 (1990). *See also*, *Gemini Equip. v. Pennsylvania Supply*, 407 Pa. Super. 404, 413, 595 A.2d 1211, 1215 (1991) ("[T]he written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements

are admissible to explain or vary the terms of such a contract.").[2]  Furthermore, it is also well established that courts construe contracts against the drafting party.  *Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1203 (3d Cir. 1995) (if agreement is ambiguous it is to be construed "most strongly" against the party who drafted it); *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986); *See also J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 682 (Pa. Super. 2002).  In this instance, the contract at issue was drafted by Defendants.

Turning to the contract itself (Student Loan Origination and Marketing Agreement and Exhibit 001 to same) none of Defendants' allegations regarding the 200,000 solicitations per month, the estimated gross revenues or the quality of the telemarketing solicitation lists are stated, or even referred to, by the terms of the contract.  Nowhere in the written agreement does Plaintiff represent or warrant that its mail campaigns would consist of 200,000 solicitations monthly; that gross revenues would amount to approximately $2 million per month; or that the telemarketing solicitation lists would remain at a 95% usability quality.  Simply put, all of the alleged promises and representations that Defendants rely upon for their breach of contract claim are beyond, and not contained within, the express language of the contractual agreement and are not duties attributed to Plaintiff under the clear terms of the contract.  Defendants' allegations to

---

[2]A contract will be found to be ambiguous:

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.  A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Krizovensky*, 624 A.2d at 642 (citing *Z&L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (1985)).

8

the contrary have no basis in the contract between the parties, should not be enforced and cannot form the basis for a breach of contract claim.

Defendants' breach of contract claim is further precluded by the integration clause in the parties' agreement, as well as the parole evidence rule. The written agreement contains an integration clause which states that the written contract and any exhibits "contain the entire agreement ...." (*See*, Paragraph 24 of the Student Loan Origination and Marketing Agreement). Such clauses are enforced under Pennsylvania law. *National Cash Register Co. v. Modern Transfer Co.*, 302 A.2d 486, 489 (Pa. Super. 1973) ("Our Supreme Court has upheld 'integration' or 'merger' clauses in contracts, and have refused to admit parol or prior written agreements where the language of the contract is clear and unambiguous."); *McGuire v. Schneider, Inc.*, 534 A.2d 115, 117 (Pa. Super. 1987) ("The effect of an integration clause is to make the parol evidence rule particularly applicable.")

Additionally, "[t]he parol evidence rule 'forbids the introduction of parole evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purposes of varying or contradicting the terms of the a contract which both parties intended to represent the definite and complete statement of their agreement.'" *Davis v. Davis*, 422 Pa. Super. 410, 619 A.2d 743, 746 (1993). "[P]arol evidence is inadmissible to show a contemporaneous oral agreement which, if made, would naturally and normally have been contained in the written agreement between the parties." *Gemini*, 595 A.2d at 1215. Where the parties' agreement has been reduced to a writing, the actual intent of the parties is not relevant unless it has been expressed in the writing. An unexpressed understanding of one of the parties to the agreement has no legal significance and cannot be utilized to defeat what is actually manifested in the written contract. *Krizovensky*, *supra*. (*citing Paull v. Pivar*, 53 A.2d 826

9

(1947); *Warren v. Greenfield*, 595 A.2d 1308 (1991). Parol evidence is not admissible to show an agreement which normally is found in the written instrument. *See*, *Gemini*, *supra*. Evidence as to preliminary negotiations or oral agreements and as to a prior or contemporaneous oral promise, representation or agreement are not admissible if it adds to, modifies, contradicts or conflicts with a written agreement which purportedly contains the entire agreement between the parties. *Lefkowitz v. Hummel Furniture Co.*, 385 Pa. 244, 247, 122 A.2d 802, 804 (1956).

In the action before this Court, the parties entered into a written contract which contains clear and unambiguous terms governing the parties' relationship. The promises and representations that Defendants allege occurred prior to the signing of the contract are not contained in the written contract. Nowhere in the written agreement does Plaintiff represent or warrant that its mail campaigns would consist of 200,000 solicitations monthly; that gross revenues would amount to approximately $2 million per month; or that the telemarketing solicitation lists would remain at a 95% usability quality - all of which form the basis for Defendants' breach of contract claim.[3]

The alleged promises, representations and warranties Defendants rely upon for their first breach of contract claim that focuses upon certain alleged acts and omissions of Plaintiff are beyond the scope of the clear terms of the contract and any of Plaintiff's duties under the contract. Further, any such evidence is contrary to the terms of the agreement and cannot be used to contradict or modify the clear, unambiguous terms of the written agreement itself. Such

---

[3] It is anticipated that Defendants will argue that the e-mail attached as Exhibit B to their Counterclaim somehow evidences certain warranties made by Plaintiff regarding the performance of mail campaigns to be provided under the agreement. Even when reading this e-mail, which Plaintiff contends is parole evidence and should not be considered, the information contained therein is not a warranty. The e-mail states that the information therein is an estimate based upon personal belief. No warranties were provided to Defendants, contrary to Defendants allegations.

10

claims for breach of contract found in Count I of the Counterclaim fail to state a claim for which relief can be granted and should be dismissed.

Defendants also allege that "[a]t or around the time of the signing of the contract, and certainly no later than October, 2003, Plaintiff began taking steps and measures to compete with the Defendants ... ." (*See*, Paragraph 14 of Defendants' Counterclaim)  Defendants also allege that Plaintiff assisted, created, developed and/or formed a competing business entity in breach of the agreement between the parties.  (*See*, Paragraphs 15, 17 and 20 of Defendants' Counterclaim)

As the Court is aware, this litigation has been proceeding for several years.  With respect to these breach of contract claims, there is no evidence to substantiate these claims and Plaintiff denies that they engaged in or rendered services to any business in violation of the agreement between the parties.

### E.    DISMISSAL OF COUNT II OF DEFENDANTS' COUNTERCLAIM

In Count II of Defendants' Counterclaim, Defendants seek a declaration that the contract between the parties is unenforceable due to mutual mistake of fact regarding the revenues to be generated by the mailing campaigns and/or the telemarketing calls.

Pennsylvania follows the Restatement (Second) of Contracts in determining whether mutual mistake exists so as to rescind a contract. *Travelers Indem. Co. v. Ballantine*, 436 F.Supp.2d 707, 711 (M.D. Pa. 2006).  Under the Restatement, an inquiry into mutuality of mistake requires: (1) whether the mistake goes to the basis of the bargain; (2) whether it materially affects parties' performances; and (3) it must not be one as to which the injured party bears the risk. *Hartford Accident & Indemnity Co. v. West Chester Electric & Electronics Co., Inc.*, 1998 U.S.Dist.Lexis 5326, *6 (E.D. Pa. 1998). Furthermore, "[m]utual mistake exists where the parties were mistaken as to an existing material fact at the time their contract was executed."

*Adapt of Phila. v. Phila. Hous. Auth.*, 2005 U.S. Dist. LEXIS 25785, *72 (E.D. Pa. 2005). *See also*, *CNA Ins. Group v. Nationwide Mut. Ins. Co.*, 2000 U.S. Dist. LEXIS 3094, *28 (E.D. Pa. 2000) ("'A mutual mistake exists only where "both parties to a contract [are] mistaken as to existing facts at the time of execution.'" (citations omitted)).

Defendants' claim that "the parties were operating under a mutual mistake of fact regarding the revenues to be generated by the mailing campaigns and/or the telemarketing calls ...." (*See*, Paragraph 22 of Defendants' Counterclaim). As the basis for this claim, Defendants rely upon the allegations that Plaintiff estimated commission revenues of $1,977,025 in an email from Plaintiff's representative. (*See*, Paragraph 5 of Defendants' Counterclaim). Defendants also rely upon allegations that Plaintiff indicated the quality of solicitation lists would remain constant. (*See*, Paragraph 5 of Defendants' Counterclaim). However, "'a party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake'....'" *Hartford Accident & Indemnity Co.*,1998 U.S.Dist.Lexis 5326 at *7 (quoting *Restatement (Second) of Contracts* §151, Comment (a)).  Even assuming for argument the truth of Defendants' allegations, which Plaintiff denies, Plaintiff's predictions estimating commission revenues or quality of solicitation lists are not "mistakes" as defined in the Restatement (Second) of Contracts and controlling case law and are not a basis to rescind the contract for mutual mistake. Count II of Defendants' Counterclaim should be dismissed.

### III.   CONCLUSION

Counts I, II, III and IV of Defendants Counterclaim should be dismissed. Counts III and IV were filed after the expiration of the applicable two-year statute of limitations and are barred. Counts I and II fail to state a claim for which relief can be granted.  Plaintiff respectfully requests

that this Honorable Court enter an Order dismissing, with prejudice, Counts I, II, III and IV of Defendants' Counterclaim.

    Respectfully submitted,

    DICKIE, McCAMEY & CHILCOTE, P.C.

    By   /s/ Steven W. Zoffer
       Steven W. Zoffer, Esq.
       PA. I.D. #62497
       szoffer@dmclaw.com
       Brett W. Farrar, Esq.
       PA. I.D. #79217
       bfarrar@dmclaw.com

    Two PPG Place, Suite 400
    Pittsburgh, PA  15222-5402
    (412) 281-7272 Telephone
    (412) 392-5367 Fax

    Attorneys for Plaintiff