IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELAWARE MARKETING PARTNERS, )
LLC, a Delaware limited liability company )
                                          )    CA No. 04-263
                    Plaintiff             )
                                          )
            v.                            )    JUDGE McLAUGHLIN AND
                                          )    MAGISTRATE JUDGE
CREDITRON FINANCIAL SERVICES,             )       SUSAN PARADISE BAXTER
INC., a Pennsylvania corporation and,     )
TELATRON MARKETING GROUP,                 )    TRIAL BY JURY DEMANDED
INC., a Pennsylvania Corporation,         )
                                          )
                    Defendants            )

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS COUNTERCLAIM

AND NOW, the Defendants, Creditron Financial Services, Inc., and Telatron

Marketing Group, Inc., by and through their attorneys, Elderkin, Martin, Kelly & Messina, file the

following Brief in Opposition to Plaintiff's Motion to Dismiss Defendants' Counterclaim, stating

the following in support thereof:

I.          FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a Student Loan Origination and Marketing Agreement

between Plaintiff and Defendants, executed on February 24, 2003 (the "Agreement").  Defendants

are in the business of, among other things, finding customers for a lender for purposes of issuing

new loans to consolidate existing multiple student loans.  Defendants perform this service by

engaging in telemarketing and mail solicitations of individuals who have outstanding student

loans.  Under the parties' Agreement, the Defendants hired the Plaintiff to perform two main

tasks.  First, Plaintiff was to obtain lists of names and telephone numbers to be used by

Defendants in the telemarketing efforts.  This involved the Plaintiff's development and submission

of list selection criteria to ChoicePoint, a business which collects and sells data from credit

bureaus. Second, Plaintiff was to perform the mail solicitations, which involved obtaining mailing

lists from ChoicePoint and dispatching the mail solicitations.

Plaintiff terminated the Agreement on January 9, 2004 and filed this action alleging

that it had fulfilled its obligations to Defendants but that it has not been paid in full. Defendants

filed an Answer and later, an Amended Answer and Counterclaim asserting that Plaintiff did not

perform as promised or as required and that Plaintiff had breached various provisions of the

Agreement, including the non-compete and confidentiality provisions.

In Count I of the Counterclaim, it was alleged that the Plaintiff committed

"various breaches of the contractual obligations owed by the Plaintiff to the Defendants."  Count

II alleged that the parties "were operating under a mutual mistake of fact regarding the revenues

to be generated by the mail campaigns such that the terms and conditions of the contract were not

enforceable against Defendants."  In Count III, it was alleged that the Defendants had been

induced into entering into the Agreement due to "Plaintiff's fraud and/or misrepresentations."

Count IV alleged that the Plaintiff had "secretly conspired, planned and assisted others to develop

and operate a business to compete directly with the Defendants" and that the Plaintiff had "utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and the Plaintiff had failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply."

Plaintiff had filed a motion to dismiss the counterclaim on the ground that it is barred by the statue of limitations and that it fails to state a claim upon which relief can be granted.  Defendants have filed an Appendix of relevant deposition testimony and do hereby submit the following brief in opposition.

II.          DISCUSSION

A.  STANDARD OF REVIEW

In considering a motion to dismiss, the court must "accept as true the facts alleged in [the pleading] and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  A motion to dismiss should only be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proven. Id.

## B.  DEFENDANTS' CLAIM OF FRAUD IN THE INDUCEMENT IS NOT BARRED BY THE STATUTE OF LIMITATIONS

### 1.  Defendants Learned of Plaintiff's Misrepresentation Within the Statutory Period

Plaintiff asserts that the statute of limitations bars Count III's claim of fraud in the inducement.  The elements of fraud in the inducement are as follows:

(1)    A representation;

(2)    Which is material to the transaction at hand;

(3)    Made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4)    With the intent of misleading another into relying on it;

(5)    Justifiable reliance on the misrepresentation; and

(6)    The resulting injury was proximately caused by the reliance.

Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa. Super. 2005) (quoting, Skurnowicz v. Lucci, 798 A.2d 788, 793 (Pa. Super. 2002)).

In an effort to persuade Defendants to enter into the Agreement, Plaintiff presented a mathematical formula to calculate the revenues to be generated by Plaintiff's mailings. This formula convinced Defendants that the monthly gross revenues would be such as to make this project a resounding financial success.  *Counterclaim ¶¶ 4-7; Counterclaim Ex. B.*

It is now known to the Defendants that Plaintiff's formula failed to include a component which, if applied, would produce a 70% <u>reduction</u> in the gross revenue calculation. (Exhibit A to Defendants' Appendix, Estes depos., pp. 47-49). Thus, when Plaintiff applied its erroneous calculation to the monthly solicitation mailings, Defendants were led to believe that the revenues would be 70% higher than the true formula would reflect.

Plaintiff's misrepresentation was material to the transaction because Defendants would not have entered into the Agreement as written if they had known that their monthly gross revenues would be 70% lower than actually represented by Plaintiff. "A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation." <u>Eigen</u>, 874 A.2d at 1186. Therefore, Plaintiff's misrepresentation was material to the execution of the Agreement.

Under the third element of fraud in the inducement, it is asserted that Plaintiff was aware, or certainly should have been aware, that the formula was incorrect. *Counterclaim ¶ 24.* Alan Estes, a founding member of Plaintiff, testified that he drafted the email containing the formula and that the calculation was missing the 70% reduction. (Estes depos., pp. 47-49). This mathematical formula supposedly was based on Estes' avowed experience with mail campaigns and his work in financial services marketing. (Estes depos., p. 48). Harry Metcalfe, another founding member, also testified that he recognizes that the formula was missing the 70% reduction. (Exhibit B to Defendants' Appendix, Metcalfe depos., pp. 72-73). Therefore, it is

asserted that Plaintiff either knew or should have known of the gross inaccuracy of the formula based on its experience and supposed expertise in the industry.

It is also clear that Plaintiff made the misrepresentation with the intent of having Defendants rely upon the erroneous revenue calculation. In fact, the calculation was presented to Defendants prior to execution of the Agreement in order to convince Defendants of the claimed profitability of the contract. The jury could reasonably conclude that Plaintiff intended for Defendants to rely on the miscalculation.

Under the fifth element, Defendants' reliance upon Plaintiff's misrepresentation was justifiable and reasonable. "To be justifiable, reliance upon the representation of another must be reasonable." Eigen, 874 A.2d at 1189. Defendants' reliance upon Plaintiff's misrepresentation was reasonable because Plaintiff held itself out as an expert with superior knowledge of the business of mail solicitations.

As a result of Defendants' reliance on Plaintiff's misrepresentation, Defendants were injured to the extent that any money was paid and/or is payable to Plaintiff under the Agreement, as well as to the extent of the difference between the revenue promised and the revenues received.

Plaintiff argues that Defendants' claim for fraud in the inducement accrues "when a plaintiff is damaged, not when the precise amount or extent of the damage is realized." Schnelling

v. Prudential Securities, Inc., 2004 WL 1790175 (E.D.Pa. 2004). Plaintiff also argues that in 2003 Defendants suffered their damages when the revenues were far below that which Plaintiff had expressly promised and that this experience commenced the running of the statute of limitations.

Although Defendants experienced lower-than-expected revenues in 2003, they did not, at that time, recognize the nature of Plaintiff's initial misrepresentations. In fact, Defendants did not learn that Plaintiff's formula was seriously flawed until May 18, 2006, during the depositions of Mr. Metcalfe and Mr. Estes. It was not until these depositions that Defendants became aware that they had been duped into entering into the Agreement.

Clearly, "a bare suspicion or an opportunity to learn the truth through the exercise of reasonable diligence does not constitute knowledge of fraud sufficient to prevent recovery." Hartford-Empire Co. v. Glenshaw Glass Co., 47 F.Supp. 711 (W.D.Pa. 1942) (finding there was no duty to investigate the truth of representations made by plaintiff). At the least, the date upon which the statute of limitations began to accrue here is a question of fact and is not proper for a motion to dismiss. Miller v. Philadelphia Geriatric Center, 463 F.3d 266 (3d Cir. 2006); DIRECTV, Inc. v. Rodkey, 369 F.Supp.2d 587, 600 (W.D.Pa. 2005).

Thus, Plaintiff's Motion to Dismiss Count III of Defendants' Counterclaim must be denied, because the issue of whether the claim is barred by the statue of limitations is a question of fact to be determined by the jury.

2. Count III of the Counterclaim Is a Claim for Recoupment and Is Not Subject to the Statute of Limitations

In the alternative, Count III of the Counterclaim is not barred by the statute of limitations because it is a claim for recoupment, which is not subject to the statute of limitations.

A counterclaim "may include a setoff and/or a recoupment." Harmer v. Hulsey, 467 A.2d 867, 869 n.2 (Pa. Super. 1983).

> Under [the doctrine of recoupment], a defendant is entitled to claim, by way of deduction, all just allowances or demands, accruing to him in respect of the same transaction that forms the ground of the action… [Recoupment] lessens or defeats any recovery by the plaintiff. It goes to the existence of the plaintiff's claim, and is limited to the amount thereof…

Household Consumer Discount Co. v. Vespaziani, 415 A.2d 689, 694 (Pa. 1980)(finding defendant's counterclaim for nonpayment was in recoupment because it arose out of same transaction as plaintiff's claim).

A counterclaim is construed as one in recoupment where, "the plaintiff's and defendant's claims are deemed to have arisen from a single aggregate of operative fact, giving rise to both [party's] claims." Id, at 695. Such a defense does not seek affirmative relief from the plaintiff, instead a claim for recoupment seeks a reduction or offset on any recovery by the

plaintiff. <u>Kaiser by Taylor v. Monitrend Investment Management</u>,  672 A.2d 359, 363 (Pa.

Commw. 1996).  The defense of recoupment "is never barred by the statute of limitations so long

as the main action itself is timely." <u>Household Consumer Discount Co.</u>, 415 A.2d at 694.  <u>See</u>

<u>also</u> <u>Wells v. Rockefeller</u>, 728 F.2d 209, 213-214 (3rd Cir. 1984) (a defendant's plea of

recoupment "is not generally barred by the statute of limitations").


       The Pennsylvania Supreme Court has explained that the policy considerations

underlying the statute of limitations do not apply to claims for recoupment and thus, such claims

are not be barred by the statute of limitations.


> [T]he basic policy behind statues of limitations has
> no relevance to the situation here.  The purpose of
> such statutes is to keep stale litigation out of the
> courts. They are aimed at lawsuits, not at the
> consideration of particular issues in lawsuits.  Here
> the action was already in court and held to have
> been brought in time.  To use the statute of limitations
> to cut off the consideration of a particular defense
> in the case is quite foreign to the policy of preventing
> the commencement of stale litigation.  We think it
> would be incongruous to hold that once a lawsuit
> is properly before the court, decision must be made
> without consideration of all the issues in the case
> and without the benefit of all the applicable law.
> If this litigation is not stale, then no issue in it
> can be deemed stale.

<u>Household Consumer Discount Co.</u>, 415 A.2d at 695

In <u>Kaiser</u>, the court found that defendant's counterclaim was in recoupment because (1) plaintiff's and defendant's claims arose out of the same contract; and, (2) defendant did not seek affirmative relief, but requested an offset of plaintiff's relief based on negligent conduct. Since defendant has asserted a recoupment, the court held that the counterclaim was not barred by the statue of limitations. <u>Id.</u>, 672 A.2d 363-364. *See* <u>Kline v. Blue Shield of Pa.</u>, 556 A.2d 1365, 1368-1369 (Pa. Super. 1989) (in plaintiff's suit against defendant for payment of fees owed by defendant, defendant's claim against Plaintiff for overbilling was a recoupment not barred by statute of limitations).

In the instant case, both Plaintiff's and Defendants' causes of action arose out of the same Agreement. Although, Defendants do seek the entry of judgment against Plaintiff, if the cause of action for fraud in the inducement is barred by the statute of limitations, the underlying facts of that claim support a claim of recoupment. <u>See</u> Defendants' Second Defense which avers that "Plaintiff's Claims are barred or must be offset by the Plaintiff's breach of its contractual obligations and duties owed to the Defendants." (Amended Answer and Counterclaim, p. 5); Defendants' Counterclaim is not barred by the statute of limitations because it is a claim for recoupment, which is not subject to the statute. Thus, Plaintiff's motion to dismiss must be denied.

## C.  COUNT IV OF THE COUNTERCLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff has mischaracterized Count IV of the Counterclaim as asserting only a tort claim for misappropriation of trade secrets which is governed by a two-year statute of limitations.

The Counterclaim itself does not label, nor limit, Count IV to a tort cause of action for misappropriation of trade secrets.  Count IV also includes allegations that Plaintiff was competing against Defendants which conduct  violated the Agreement's non-compete clause and violated its confidentiality clause.  Therefore, this is a breach of contract claim which is subject to a four-year statute of limitations.

Second, to the extent Count IV also asserts a tort claim for misappropriation of trade secrets, the statute of limitations did not begin to run until the Defendants' discovery of Plaintiff's wrongdoing.  Defendants learned of this during the depositions of May 18, 2006.  Third, and in the alternative, this claim is in the nature of a recoupment and is not barred by the statute of limitations.

1.  Defendants Learned of Plaintiff's Use and Disclosure of Confidential Information on or about May 18, 2006

Plaintiff argues that the statute of limitations on a tort claim of misappropriation of trade secrets claim began to accrue no later than the end of 2003. In response, Defendants aver that they did not learn of the nature or extent of these breaches until May 18, 2006, when depositions were held. It was not until these depositions of Mr. Metcalfe and Mr. Estes, that Defendants learned of Plaintiff's violation of the non-compete provisions of the Agreement and thus, of the wrongful use of confidential information. (Estes depos., pp. 4-10).

Plaintiff argues that the deposition testimony of Defendants' employee, Terry Smith, reflected an awareness in late 2003 of Plaintiff's improper use of confidential information. Ms. Smith testified that some of Plaintiff's inquiries and requests for proprietary information in late 2003 had raised some suspicions ("red flags") among Defendants' employees. (Defendants' Appendix, Exhibit C, Smith, depos. pp. 41-44). ("There were great suspicions there were other things going on." *Terry Smith depos., p. 41*).

It must first be noted that Defendants are not limiting Count IV to the misuse of the type of information which was the subject of Ms. Smith's testimony. In fact, Ms. Smith did not testify that Defendants actually released to Plaintiff the information requested in late 2003. Moreover, in regard to the statute of limitations, Plaintiff responded immediately to Ms. Smith's concerns by proffering the explanation that these requests for inside information were completely appropriate and entirely innocent. (Smith depos., p. 43).

A [Terry Smith]:  Harry [Metcalfe] was asking for things that were sending up some major red flags.

Q:    What did he ask for?

A:    He asked for our training materials, our scripting, access to the do not call.  Different things that appear -- he said he was bringing someone else on, and we knew we were having problems paying them as it was, and I went to Mrs. Cavotto and shared the concern, and so that was all part of this...

                *        *        *

Q:    Just so I know, tell me what your thought process was that told you that these were red flag issues?

A:    That Harry would be requesting these types of things this far into the relationship, we became suspicious something else was going on.  There were other conversations about other programs that didn't materialize, and then he was coming and asking for these things.  So I did go to Mrs. Cavotto and say I was concerned.

Q:    Did you ask Harry why he was asking for these things?

A:    I don't know if I asked him or he told me.

                *        *        *

A:    He [Harry] told me that they were bringing on another person and he wanted our training materials and our scripts, to train them.

Smith depos. pp. 43-44.


Thus, at the time that these particular "red flags" were being raised, Plaintiff was affirmatively acting to dispel Defendants' concerns. The Plaintiff's employees testified that in late 2003, contrary to the above-noted explanation to Ms. Smith, Plaintiff had undertaken to secretly organize and begin operating K2 Financial, a company which is a direct competitor of Defendants. K2 Financial was formed on October 13, 2003. (Estes depos., pp. 4-10). At that time, K2 immediately began developing contractual relationships with telemarketing vendors and list providers in December 2003. (Metcalfe depos., p. 7). At that time, Plaintiff also developed and organized a structure to process applications. (Id). On January 9, 2004, with K2 firmly in place, Plaintiff unilaterally and without any warning to Defendants terminated its contract with Defendants. Defendants aver that the statute of limitations on a claim for misappropriation of trade secrets claim did not begin to accrue until Plaintiff's depositions, when Defendants first learned the truth about Plaintiff's breach of the its obligations to maintain the confidentiality of Defendants' business information.


Additionally, Plaintiff's deception in proffering a false, but facially innocent, explanation for its requests for inside information in late 2003 extends the statute of limitations. Ward v. Rice, 828 A.2d 1118, 1123 (Pa. Super. 2003) aff'd 870 A.2d 850 (Pa. 2005) (the act of lulling a party into a false sense of security tolls the statute of limitations). In providing a false explanation for its 2003 inquiries, Plaintiff lulled Defendants into a false sense of security. At the least, the issue of when the statute of limitations began to accrue on a claim for misappropriation

of trade secrets claim is a question of fact to be determined by the jury and Plaintiff's motion to dismiss Count IV of the Counterclaim must be denied.

2.  Count IV Asserts a Breach of Contract Claim, Subject to the Four-year Statute of Limitations

In the alternative, Count IV should not be construed as asserting only a tort claim for misappropriation of trade secrets, but it also asserts a claim for breach of the non-competition and confidentiality clauses contained in the Agreement.  See Paragraphs 3 and 17 of the Agreement.

During the term of the Agreement, Plaintiff and/or Plaintiff's principals organized and secretly began operating K2 Financial, a direct competitor of Defendants. (Estes depos., pp. 4-10).  It is averred that, in its operation of K2 Financial, Plaintiff used and disclosed confidential and proprietary information obtained from Defendants.  Plaintiff's actions in this regard are direct violations of the non-competition and confidentiality clauses of the Agreement and must be construed as a breach of the Agreement.

A claim for breach of contract is subject to a four-year statute of limitations, pursuant to 42 Pa.C.S.A. § 5525.  Therefore, Count IV is not barred by the statute of limitations and Plaintiff's motion to dismiss must be denied.

-15-

3.  Alternatively, Count IV is a Claim for Recoupment and Is Not Subject to the Statute of Limitations

In the alternative, Count IV is not subject to any statute of limitations because it is a claim for recoupment.  As discussed in Section II (B)(2) above, a claim in recoupment arises when a defendant responds to a plaintiff's cause of action with a counterclaim, (1) which arises out of the same transaction as plaintiff's claim; and, (2) where the defendant requests an offset of plaintiff's alleged damages.  <u>Household Consumer Discount Co.</u>, 415 A.2d at 694-695.  Such claims for recoupment are never barred by the statute of limitations, as they are defensive in nature. <u>Id</u>, at 694.

In the instant case, both Plaintiff's and Defendants' causes of action arose out of the same Agreement. Count IV of the Counterclaim should be read as a claim for an offset, in the same manner asserted in the Second Defense of the Amended Answer which avers that "Plaintiff's Claims are barred or must be offset by the Plaintiff's breach of its contractual obligations and duties owed to the Defendants." (Amended Answer and Counterclaim, p. 5).  Therefore, Defendants' Counterclaim is not barred by the statute of limitations because it is a claim for recoupment, which is not subject to the statute and Plaintiff's motion to dismiss must be denied.

### D.  COUNT I CANNOT BE DISMISSED UNDER THE PAROL EVIDENCE RULE

Plaintiff contends that the entirety of Count I must be dismissed based upon the application of the evidentiary bar of the parol evidence rule.  Count I of the Counterclaim alleges

that Plaintiff breached the parties' Agreement in several different ways, including by failing to provide the type and quality of services promised. Plaintiff argues that the breach of contract claim is wholly dependent upon pre-contract statements made by Plaintiff which are inadmissible at trial under the parol evidence rule.

Irrespective of the resolution of the parol evidence rule, Count I cannot be dismissed because proof of Plaintiff's failure to provide the nature and quality of services required by the contract is not wholly dependent upon pre-contract communications. Moreover, Defendants have alleged other breaches of contract including the Plaintiff's violation of the confidentiality and the non-compete provisions of the Agreement. These other separate contract claims are not dependent upon proof of Plaintiff's pre-contract communications. Therefore, Count I cannot be dismissed.

As to the issues relating to the Plaintiff's pre-contract representations, Plaintiff had warranted to Defendants that they could expect telemarketing lists with a 95% usability rate, that 200,000 solicitation mailings per month would be made by Plaintiff, and that Defendants would receive a certain gross revenue per month from the mailings, based on a mathematical formula provided by Plaintiff. Plaintiff argues that these particular representations and warranties cannot be proven under the parol evidence rule because they were not an express part of the written Agreement.

It is Defendants' position that the parol evidence rule has no application here because the Plaintiff's pre-contract representations do not conflict with any term of the Agreement.  In fact, these representations must be considered as part of the Agreement under the doctrine of necessary implication and under Plaintiff's implied duty of good faith.

When interpreting a contract, the must ascertain and give effect to the intention of the parties. Amerikohl Mining, Inc. v. Mount Pleasant Tp., 727 A.2d 1179, 1181-1182 (Pa. Commw. 1999).  When the parties' intention is expressed in a writing, the parol evidence rule prohibits the use of pre-contract communications to contradict the written words of the parties' contract.

> [W]here parties to an agreement commit their undertakings to a writing with intention that it shall formally and comprehensively evidence terms of their agreement, the writing, when executed, cannot thereafter be made subject to parol alteration, contradiction or variance by way of agreements or understandings had prior to or contemporaneously with the execution.

International Milling Co. v. Hachmeister, Inc., 110 A.2d 186, 190 (Pa. 1955) (emphasis added).

The written Agreement between Plaintiff and Defendants is completely silent with regard to the required quality and quantity of Plaintiff's products and services.  Although the integration clause of the Agreement reflects an attempt by the parties to have the writing clearly

and completely express their agreement, it does not appear that the parties were entirely

successful.  See The Bachman Co. v. Anthony Pintto, Inc., 1993 WL 64620 (E.D. Pa. 1993)

(parol evidence permitted where contract was silent on issue of price and profit margin).  See also

Moyer v. Heilveil, 49 A.2d 514, 515 (Pa. Super. 1946) (where "writing is silent" it is permissible

to prove prior oral agreement which is "not inconsistent with the writing and unaffected by it").

Yinger v. Youngman, 30 Pa. Super. 139 (1905) (evidence of contemporaneous oral agreement is

admissible where it relates to a matter concerning which the writing is silent).  Thus, proof of

Plaintiff's pre-contract representations and promises would not alter, contradict or vary any terms

of the Agreement.  In fact, Plaintiff's representations of quality and quantity of products and

services must be considered as part of the Agreement under the doctrine of necessary implication

and Plaintiff's implied duty of good faith.


       The doctrines of necessary implication and good faith, collectively, are exceptions

to the parol evidence rule and allow evidence of the parties' intentions, even though the written

contract is not ambiguous.  Gallagher v. Upper Darby Township, 539 A.2d 463, 473 (Pa.

Commw. 1988) (even though contract stated that *the* purpose was to replace a pipe, parol

evidence was admissible on issue of  whether the contract's purpose was to diagnose and cure

plaintiff's sewer problem).  "Both the implied covenant of good faith and the doctrine of

necessary implication are principles for courts to harmonize the reasonable expectations of the

parties with the intent of the contractors and the terms in their contract." John B. Conomos, Inc.

v. Sun Company, Inc., 831 A.2d 696, 707 (Pa. Super. 2003).

The court will apply the doctrine of necessary implication where "it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions" even if the written contract is not ambiguous. <u>Slater v. Pearle Vision Center, Inc.</u>, 546 A.2d 676, 679 (Pa. Super. 1988). The purpose of the doctrine is to "allow the court to enforce the clear intentions of the parties and avoid injustice." <u>Id.</u>

The Agreement between the parties here does not contain any quality or quantity standards. Evidence of Plaintiff's representations on this issue would not contradict any provision of the written contract, but would serve as an essential gap-filler. Therefore, this Court may consider the Plaintiff's statements to ascertain the true intention of the parties. Thus, the Plaintiff's motion must be denied.

E.  THE AGREEMENT MUST BE RESCINDED DUE TO A MUTUAL MISTAKE OF FACE

A mutual mistake of fact "exists where both parties to a contract are mistaken as to existing facts at the time of execution." <u>Consolidated Rail Corp. v. Portlight, Inc.</u>, 188 F.3d 93, 96 (3d Cir. 1999) (<u>quoting</u>, <u>Holt v. Dep't of Public Welfare</u>, 678 A.2d 421, 423 (Pa. Commw. 1996)). A mutual mistake of fact exists where the erroneous factual matter (1) was the basis of the bargain, (2) was material to the issue of performance, and (3) was not a mistake of which the injured party bore the risk. <u>Id</u>; <u>Loyal Christian Ben. Ass'n v. Bender</u>, 493 A.2d 760, 762 (Pa. Super. 1985). If the injured party meets each element of the three-part test, that party may seek to have the contract reformed or rescinded. <u>Id.</u>

Prior to the execution of the Agreement, Plaintiff provided Defendants with a mathematical formula to calculate gross revenues from the solicitation mailings. *Counterclaim Exhibit B*. Plaintiff now concedes that this formula was in error because Plaintiff failed to apply a reduction factor of 70% to the calculation. (Estes depos., pp. 47-49). During the deposition of Alan Estes, one of Plaintiff's founders, he testified that due to an alleged oversight, the mathematical component of the calculation was missing. (Estes depos., p. 49). Mr. Estes testified that the missing factor could reduce number of qualified responses only to 20-30% of that projected and that he did not realize his mistake until the day of his deposition. (Estes depos., p. 49).

Plaintiff's formula permitted a calculation of a specific dollar amount of monthly income, which would arise from 200,000 solicitation mailings per month. This was a statement of fact, upon which Defendants relied to enter into the Agreement. In this way, the erroneous calculation was a basis of the bargain.

Under the second prong of the mutual mistake test, the calculation and the receipts guaranteed by Plaintiff were material to the issue of the parties' performance. Defendants relied upon the calculation and revenue projections provided by Plaintiff to hire additional workers, set-up additional telephone lines and make other arrangements in order to process the expected returns.

Under the final element of the test, Defendants did not bear the risk of the mistake because Plaintiff set itself out as having superior expertise in the area of solicitation mailings. In fact, Defendants agreed to enter into the Agreement with Plaintiff based on Plaintiff's supposed expertise. Therefore, Defendants have met their burden of proving that Plaintiff's calculation, which Defendants relied on in executing the Agreement, was a mutual mistake of fact for which the Agreement must be rescinded.

Plaintiff argues that, under the district court's analysis in Hartford Accident & Indemnity v. West Chester Electric, 1988 WL 61732 (E.D.Pa. 1988), the flawed mathematical formula was a mere prediction and cannot therefore be considered as a mistaken fact for the purpose of the doctrine of mutual mistake. In Hartford, the plaintiff filed suit to enforce the terms of a settlement agreement pursuant to which plaintiff and defendant had agreed to each pay 50% of future medical bills to be incurred by defendant's employee. Defendant wanted to rescind the contract based upon the claim that it had been mistaken about the amount of future expenses to be incurred by the employee. The defendant claimed its "belief as to [what the employee's] reasonable expenses were going to be in the future was due to the fact that it did not have a complete and accurate understanding of the limitations on all possible expenses." Id, at 2. The court ruled that one party's expectation of future events is not a mutual mistake of fact sufficient to rescind the contract. Hartford is one of many cases that stand for the proposition that a "party who underestimates the future severity of [the victim's] injuries will not be permitted to avoid the consequences of a settlement agreement based on mutual mistake." Consolidated Rail, 188 F.3d

at 96.  This principle supports the policy of giving effectiveness to settlement agreements where the extent of the injuries is not fully known.

The case at bar is entirely different from <u>Hartford</u>.  Plaintiff's representation here is a mathematical formula which Plaintiff represented as a reliable method of calculating returns.  It was the formula itself which was in error.  Defendants relied on the accuracy of Plaintiff's formula in signing the Agreement and agreeing to the amount of Plaintiff's compensation thereunder.  Thus, the analysis of <u>Hartford</u> does not apply here because the mutual mistake of fact was that both parties were working with a defective mathematical equation. Therefore, Plaintiff's motion must be denied.

III.        <u>CONCLUSION</u>

Based on the aforementioned facts and arguments, the causes of action in Defendants' Counterclaim are neither barred by the statute of limitations, nor fail to state a claim upon which relief can be granted and Plaintiff's motion to dismiss must be denied.

WHEREFORE, Defendants respectfully request that this Honorable Court enter an Order denying Plaintiff's Motion to Dismiss.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

-23-

By    /s/ Craig A. Markham
        Craig A. Markham, Esquire
        Laura Steehler Nelson, Esquire
        Attorneys for Defendants
        150 East Eighth Street
        Erie, Pennsylvania 16501
        (814) 456-4000