IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELAWARE MARKETING PARTNERS,
LLC, a Delaware limited liability company,

                    Plaintiff         CA No.:  04-0263

              v.                      JUDGE McLAUGHLIN AND
                                  MAGISTRATE JUDGE
CREDITRON FINANCIAL SERVICES,   SUSAN PARADISE BAXTER
INC, a Pennsylvania corporation, and,
TELATRON MARKETING GROUP,     TRIAL BY JURY DEMANDED
INC., a Pennsylvania corporation,

                                  *Electronically Filed*
                  Defendants

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

      AND NOW, comes Delaware Marketing Partners, LLC, by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files the following Motion to Compel Discovery averring as follows:

      1.     This is a simple breach of contract action based on a Student Loan Origination and Marketing Agreement entered into between the parties. The Agreement states that the parties would "work together to perform student loan acquisition services."  Under the Agreement, each party had specific responsibilities to perform, and each party was to receive a specified percentage of all gross revenues, i.e., commissions, received by the defendants from the lenders who funded the student loans.

      2.     The Agreement provides exactly how the gross revenues are to be allocated between the parties and distributed:

> "For the services provided by the parties, Telatron [defendants] shall distribute commission funds received as follows:

    a. Delaware Marketing shall be paid 28.57% of the gross revenues. Such payment shall be accomplished within seven (7) days after commission funds are received from the lender(s). Telatron shall remit payment to Delaware Marketing by wire transfer. Telatron shall be entitled to 71.43% of the remaining gross revenues."

  3. Not once during the term of the Agreement did the defendants disclose to the plaintiff the actual amount of the gross revenues which had been received by the defendants. Not once during the term of the Agreement did the defendants pay to the plaintiff 28.57% of the gross revenues. And, despite discovery requests and Court Orders, not once during this litigation have the defendants produced the documents and records which show the actual amount of the gross revenues which the defendants received, and the disposition of these funds.

  4. Defendants have raised numerous affirmative defenses, and they recently filed a counterclaim seeking in excess of $16,000,000.00. In a nutshell, the defendants contend that they do not owe the plaintiff 28.57% of the gross revenues because the gross revenues were lower than the defendants had expected to receive based on alleged representations and warranties made by the plaintiff outside the four corners of the Agreement.

  5. Delaware Marketing Partners claims that the student loan acquisition program was extremely successful, and that the defendants improperly and unilaterally diverted Delaware Marketing Partners' share of the gross revenues to the defendants' affiliates, parent companies or subsidiaries for the purpose of defrauding Delaware Marketing Partners and hindering and delaying the collection of the monies owed to Delaware Marketing Partners. (Complaint, ¶ 17) Defendants deny these claims. (Answer, ¶ 17)

  6. Plaintiff's allegation of diversion of funds has been supported by recent deposition testimony where it was learned that the gross revenues which the defendants were obligated to share with the plaintiff were instead used by the defendants to pay debts owed by the

defendants and their affiliates, who it turns out were having serious cash flow problems and were faced with substantial federal and state tax liens for failure to pay payroll taxes.

7. Throughout the course of this lawsuit, Delaware Marketing Partners has requested documents and information relating to the defendants' receipt of gross revenues and the diverting of funds from Delaware Marketing Partners.  On September 14, 2005, Delaware Marketing Partners served Interrogatories and Requests for Production of Documents upon defendants requesting that defendants produce documents and information regarding the student loans which were funded; the date, amount, method of payment and source of each and every payment received by or on behalf of Academic Lending Center, the fictitious name for defendant Creditron Financial Services, Inc.; and the date, amount, method of payment and recipient of all monies disbursed by or on behalf of Academic Lending Center.  (Exhibit A, Interrogatory 1). Further, Delaware Marketing Partners requested copies of all books, records, writings and other documents which refer or relate in any way to the payments identified in Interrogatory 1. (Exhibit A, Interrogatory 2).  These discovery requests pertained not only to the loans that funded during the term of the Student Loan Origination and Marketing Agreement, but also to the loans which funded after the termination of the Agreement but which were nevertheless the result of Delaware Marketing Partners' efforts.

8. Plaintiff's discovery also requested that the defendants state the total amount of gross revenues received by Academic Lending Center or on its behalf with respect to the student loans, and requested the production of all records which relate or reflect this amount or upon which the amount is calculated.  (Exhibit A, Interrogatory 13).

9. After plaintiff filed its Motion to Compel on January 13, 2006, defendants produced documents which they claimed were responsive to plaintiff's discovery requests.

3

However, thereafter on May 24, 2006 during the depositions of Joyce Covatto and Trish DeSanti-Boehm, these witnesses acknowledged that defendants had not fully answered Plaintiff's First Set of Interrogatories and Requests for Production of Documents numbers 1(k) and 2. Ms. DeSanti-Boehm agreed on the record to produce the documents in question.

10. Counsel for Delaware Marketing Partners contacted counsel for defendants in an attempt to obtain these documents. (*See*, letter faxed to Attorney Markham on Friday, May 26, 2006 and attached hereto as Exhibit B). The documents and information were not provided, and so on May 30, 2006, Delaware Marketing Partners was forced to file another Motion to Compel in an effort to obtain the requested information.

11. On May 31, 2006, Delaware Marketing Partners served a Second Set of Interrogatories and Requests for Production upon defendants. (Exhibit C). These Interrogatories and Requests for Production requested that defendants provide documents and information reflecting communications to and/or from defendants' financial control group, as well as Joyce Covatto, relating to the gross revenues received and the disbursement of these funds. (Exhibit C, Interrogatory 8). These Interrogatories and Requests for Production also requested that defendants provide the amount and method of payment for all loans generated between January 9, 2004 and September 1, 2004 from lists provided by Delaware Marketing Partners to defendants. (Exhibit C, Interrogatory 9).

12. On June 2, 2006, this Court held a hearing with respect to Delaware Marketing Partners' May 30, 2006 Motion to Compel. After argument, this Court ordered that defendants produce the financial documents that were responsive to Interrogatories and Requests for Production of Documents numbers 1(k) and 2. (Exhibit D). This included identifying the recipient of all monies disbursed by or on behalf of Academic Lending Center and copies of all

4

books, records, writings and other documents which refer or relate in any way to those payments. This also included bank documents relating to Academic Lending Center, as well as documents, records, and information kept by defendants.

13. On August 23, 2006, defendants served their Answers to Delaware Marketing Partners' Second Set of Interrogatories and Requests for Production. (Exhibit E). With regard to Interrogatory 8, defendants responded that all documents responsive to the request had been previously produced. (Exhibit E, Interrogatory 8). With regard to Interrogatory 9, defendants objected that Delaware Marketing Partners was not entitled to such information, had no claim to payment for work performed after January 9, 2004 and that defendants had no records to permit them to respond. (Exhibit E, Interrogatory 9).

14. On September 8, 2006, counsel for Delaware Marketing Partners wrote a letter to counsel for defendants indicating that after reviewing the documents produced by defendants, counsel had not seen any documents that were communications from defendants' financial control group. Counsel for Delaware Marketing Partners also requested that defendants identify the documents that they would rely upon at trial that would fall within the scope of Interrogatory 8 relating to the gross revenues received by the defendants and the disbursement of those funds. (Exhibit F). Delaware Marketing Partners has not yet received a response to this request.

15. On September 8, 2006, counsel for Delaware Marketing Partners wrote a second letter to counsel for defendants indicating that counsel had not yet received documents responsive to Interrogatory 2 of Delaware Marketing Partners First Set of Interrogatories which Judge Baxter had ordered defendants to produce, and that the scope of the request includes bank

statements which had not yet been produced. (Exhibit G). Delaware Marketing Partners has not yet received a response to this request.[1]

16.     On October 6, 2006, Delaware Marketing Partners served its Third Set of Interrogatories and Requests for Production Directed to Defendants. Interrogatory 18 of these Interrogatories and Requests for Production of Documents requested that defendants provide, for each loan that funded between September 11, 2002 and September 1, 2004, the funded loan amount, the date the loan funded, and the total fee (gross revenues) received by the defendants. Interrogatories 20 and 21 requested that defendants provide the date, amount and documents or computer data indicating the names provided by Delaware Marketing Partners with respect to each wire transfer (gross revenue) received by defendants between January 9, 2004 and September 1, 2004. On November 6, 2006 defendants responded to the request and stated that the documents produced by defendants were responsive to this request; however, no such responsive documents were produced. (Exhibit H, Interrogatory 21).

17.     In response to repeated requests and Court orders, the defendants have produced a list that purports to show each of the wired funds, i.e., gross revenues, which defendants received. This list was not kept in the usual course of defendants' business but was instead prepared in connection with this litigation. Defendants' failure to provide the requested information, documents and business records is prejudicial to plaintiff because it means that the plaintiff is unable to verify the accuracy of the gross revenues which defendants say that they received.

---

[1]     On September 18, 2006 the Court held a settlement conference before Judge McLaughlin. Although Judge McLaughlin pointed out, and Delaware Marketing Partners' counsel conceded, that information provided by Brazos would be helpful for providing a response to the question of what funds Defendants received from Brazos, this information still would not indicate how Defendants improperly diverted and transferred those funds from Delaware Marketing Partners.

18.     Defendants claim that they spent a large amount of money on capital investments based upon Delaware Marketing Partners' alleged representations and warranties. Delaware Marketing Partners, in its Third Set of Interrogatories, requested that defendants provide information regarding each capital investment, including the date and dollar amount of each investment, the identity of the person who decided to make the investment, the entity that actually paid for the investment and documentation that would be used at trial to support defendants' claims. (Exhibit H, Interrogatory 5). Defendants responded by stating that they either did not know answers to the Interrogatories, or referred to documents that were previously produced. (Exhibit H, Interrogatory 5). Documents that have been previously produced, however, are not responsive to these Interrogatories. Further, Delaware Marketing Partners requested documents showing the identity and number of hours worked for each person paid by defendants for telemarketing services regarding individuals whose names were provided by Delaware Marketing Partners. (Exhibit H, Interrogatory 7). Defendants responded by stating the records were so voluminous that identification and production would be unduly burdensome, but that defendants would make them available for inspection. This response is inconsistent because if the documents are available for inspection, they are certainly identifiable and could be produced.

19.     Further, defendants claim that the lists of individuals provided by Delaware Marketing Partners were of poor quality and this was a cause of lower gross revenues received from telemarketing efforts. In its Third Set of Interrogatories, Delaware Marketing Partners requested that defendants identify the names that they contended were not usable, and to explain why the names were not usable. Defendants responded by referring to documents produced, but no responsive documents were produced. (Exhibit H, Interrogatory 30).

20.     Finally, defendants have failed to supply simple information regarding the organization of their companies by refusing to identify their directors, officers and shareholders. (Exhibit H, Interrogatory 15).

21.     On November 13, 2006 and November 14, 2006, two of the defendants' employees were deposed in this matter. These individuals were Katherine Lombardozzi, Vice President of Financial Control, and Mark Kisiel, Assistant Vice President of Financial Control.

22.     Ms. Lombardozzi testified that on numerous occasions, Telatron pays for the expenses, debts and other costs of Creditron and its division, Academic Lending Center, and vice versa (Exhibit I, pp. 11-13; 15-17; 20; 24-28; and 38-40); that such transfers/diversions of funds and repayment of funds from one entity to another are directed by Al Covatto (Exhibit I, pp. 13-14; 29-30; 33; 53; 65); that the gross revenues which were generated under the parties' Agreement were wired directly into Creditron's bank account and that Mr. Covatto knew when these funds arrived (Exhibit I, pp. 18-19; 54; 71-72); that such funds provided by Brazos, at Mr. Covatto's discretion, would be diverted to either Creditron's, Telatron's or Academic Lending Center's individual bank accounts (Exhibit I, pp. 18-20; 61-62; 64); and that documentation, in the form of both paper and electronic format, existed, still exists, and reflects the above transactions (Exhibit I, pp. 13; 15-17; 20; 27-29; 31-32; 47; 50-51; 52-53; 54; 60-61; 63-64; 65; 75-76). The following excerpt from Ms. Lombardozzi's deposition transcript (Exhibit I, pp. 18-20) shows what we are dealing with here:

> Q.     All right. Do you see your job as the vice president in charge of the financial control group of Telatron as being responsible to make sure that your company's financial books and records are handled properly?
>
> A.     Yes.
>
> Q.     All right. And as a part of that responsibility that you recognize, does it concern you that you're being directed by Mr. Covatto to write checks out

8

|   |   |
|---|---|
|   | of Telatron's money to pay for expenses that were incurred by Academic Lending Center? |
| A. | Yes. |
| Q. | All right. And when it concerns you like that, you recognize that there could be repercussions for doing something like that, correct? |
| A. | Yes. |
| Q. | And what do you do about it to avoid those repercussions? Do you, for example, keep documentation to cover yourself, that on such a such date I was directed from Mr. Covatto to write a check out of Telatron or wire funds out of Telatron to cover an expense of ALC? |
| A. | Everything is documented. |
| Q. | All right. And where is that documentation? |
| A. | It's at Telatron. |
| Q. | And it's within your control? |
| A. | Yes. |

23. Based on Ms. Lombardozzi's testimony, it is clear that defendants have in their sole possession, custody and control, financial documents which can be retrieved, and which are the only evidence of how this money was transferred and/or spent by defendants. Plaintiff believes that these records will show that the defendants' affirmative defenses and counterclaim are without merit, as it was the defendants' desperate need for working capital, and not the so-called poor results of the venture with the plaintiff, that motivated the defendants to withhold from the plaintiff its share of the gross revenue.

24. Mr. Kisiel testified consistently with the testimony provided by Ms. Lombardozzi. In addition, he testified that the amount of the funds received from Brazos were compiled and totaled monthly in the Defendants' Cash Book, and that he managed a computer file reflecting these funds (Exhibit J, pp. 9-10; 13-14; 36-37); that statements and balance sheets which showed

9

these gross revenues were prepared monthly and provided to Al Covatto and Joyce Covatto (Exhibit J, pp. 20-24; 31-33); that expenses of one of the defendant entities, on various occasions, were paid by another defendant entity at the direction of Al Covatto and that documentation existed to show such transfers of funds (Exhibit J, pp. 17-18); and that reports which exist in spread sheet form show details for loans that were funded by Academic Lending Center (Exhibit J, pp. 28-30; 31-33).

25. As a result of the testimony provided on November 13 and 14, 2006, it has been established that defendants have withheld information and records which are in their possession, custody and/or control and which are responsive to Delaware Marketing Partners' discovery requests and this Court's prior Order. Defendants should be compelled to produce this information and these records to Delaware Marketing Partners.

26. Specifically, Delaware Marketing Partners requests that defendants be compelled to produce the following items identified and described in the testimony of Ms. Lombardozzi and Mr. Kisiel:

    a.    the Cash Book, in both paper and electronic format;

    b.    the Cash Register/Journal, in both paper and electronic format;

    c.    the General Ledger Transactions Book/Journal;

    d.    the Transaction Detail documents;

    e.    the Wire Transfer Book;

    f.    the Chart of Accounts;

    g.    the Fixed Assets Ledger;

    h.    Academic Lending Center's excel file that reflects funds transferred to Defendants by Brazos;

     i.     the information in Defendants' data base that reflects funds transferred to Defendants by Brazos;

     j.     statements and balance sheets given to Al Covatto and Joyce Covatto reflecting monies provided to Defendants by Brazos;

     k.     spread sheets, both manual and electronic, that report loans funded by Academic Lending Center;

     l.     bank account records for each individual account of Creditron Financial Services, Inc., Telatron Marketing Group, Inc. and Academic Lending Center;

     m.     check book records and checks for each individual account of Creditron Financial Services, Inc., Telatron Marketing Group, Inc. and Academic Lending Center; and

     n.     documents reflecting Mr. Covatto directing the financial control department to transfer funds from one Defendant to another entity for purposes of paying the other's expenses.

27.    Without the requested information and records noted through out this Motion, Delaware Marketing Partners will be seriously prejudiced in its ability to prepare and present the case for trial.

WHEREFORE, Delaware Marketing Partners, LLC respectfully requests this Honorable Court to enter an Order compelling Defendants to produce said information within 15 days or suffer sanctions as this Court may deem appropriate.

                            Respectfully submitted,
                            DICKIE, McCAMEY & CHILCOTE, P.C.

                            By   *s/ Brett W. Farrar*
                               Steven W. Zoffer, Esq. (PA. I.D. #62497)
                               szoffer@dmclaw.com
                               Brett W. Farrar, Esq. (PA. I.D. #79217)
                               bfarrar@dmclaw.com
                            Two PPG Place, Suite 400
                            Pittsburgh, PA  15222-5402
                            (412) 281-7272 Telephone
                            (412) 392-5367 Fax
                            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing **MOTION TO COMPEL DISCOVERY** has been served this 20th day of November, 2006, through the Court's electronic delivery system to the counsel listed below:

Craig A. Markham, Esquire
Elderkin, Martin, Kelly & Messina
150 East Eighth Street
Erie, PA  16501-1819
*Counsel for Defendants*

Charles Snyderman, Esquire
Charles Snyderman, P.A.
Stoney Batter Office Building
5301 Limestone Road, Suite 214
Wilmington, DE  19808

DICKIE, McCAMEY & CHILCOTE, P.C.

By    s/ *Brett W. Farrar*
Steven W. Zoffer, Esq.
PA. I.D. #62497
szoffer@dmclaw.com
Brett W. Farrar, Esq.
PA. I.D. #79217
bfarrar@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
(412) 281-7272 Telephone
(412) 392-5367 Fax

Attorneys for Plaintiff