UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No.: 04-263 Erie<br>)<br>) |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

### ANSWERS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANTS

1. Specifically identify each and every paper, writing and document which you intend to rely upon at trial to support your contention in paragraph 4 of the Counterclaim that the Plaintiff made written representations and promises to the Defendants regarding the revenue to be produced as a result of the Plaintiff's work and effort in the mailing campaigns.

> ANSWER: **Defendants have not yet determined the documents and records to be relied upon at the time of trial. The trial exhibits will be identified in the Defendants' pretrial narrative as required by the applicable Rules of Court. However, without waiving any rights to identify or submit other records in their pretrial narrative, or at the time of trial, the Defendants are aware of the following e-mails, the contents of which deal with the topic identified in this interrogatory:**
>
> Estes to T. Smith 12/02/02, 01/07/03, 01/10/03
> Estes to J.M. Covatto 12/19/02, 12/20/02, 12/30/02

# H

2.  With regard to the allegations in paragraph 5 of the Counterclaim, state the following:

(a) The date or dates the representations and warranties about the mailing campaigns were made by the Plaintiff;

ANSWER: See the answer and the documents set forth in response to interrogatory number 1 above. Terry Smith had telephone conferences with the Plaintiff in or around January, 2003 regarding this topic. In the late summer or the fall of 2002, the Plaintiff met with and/or had telephone conferences with Defendants during which this topic was discussed.

(b) The name of the person or persons to whom these representations and warranties were communicated;

ANSWER: Terry Smith, Al Covatto, Joyce Covatto.

(c) The name of the person or persons who made these representations and warranties on behalf of the Plaintiff;

ANSWER: Harry Metcalfe, Alan Estes.

(d) Please produce each paper, writing or document which in any way records or refers to each such representation and warranty;

ANSWER: See answer to interrogatory number 1 above.

2.

(e)   Please produce each paper, writing or document which you contend supports your allegation that the Plaintiff indicated that it would make the mailings on a monthly basis.

ANSWER:   **Defendants currently know of no writing which is responsive to this request.**

3.   With regard to the allegation in paragraph 6 of the Counterclaim that 95% of the names and telephone numbers that were provided by the Plaintiff prior to the signing of the contract were usable for the solicitation calls, state the following:

(a)   Define precisely what you mean by the word "usable;"

ANSWER:   **The term "usable" refers to those names/phone numbers which Defendant was able/allowed to dial in an attempt to reach a consumer for solicitation purposes and which were not suppressed due to any of the following reasons:**

1. **Bad phone numbers**
2. **Do not solicit states**
3. **Do not call lists**
4. **Duplicate record within the file**
5. **Duplicate/previously provided number**
6. **Duplicate/prior disposition as a sale or a refusal of sale**

(b)   The names of all persons having knowledge of the fact that 95% of the names and telephone numbers were usable for the solicitation calls; and

ANSWER:   **To the extent known to Defendants: Joyce Covatto, Terry Smith, Trish DeSanti-Boehm, Sean Bebko.**

3.

(c) The description of each paper, writing or document which in any way records or refers to your allegation that 95% of the names and telephone numbers were usable.

> **ANSWER:** **Source documents include tape dumps which are reports that list sales, status count, AM zone count, PM zone count, gender count, state count, area code count and the first two digits of a zip code count.**

4. With regard to the allegation in paragraph 6 of the Counterclaim that the Plaintiff represented and warranted to the Defendants that the lists which were provided by the Plaintiff prior to the signing of the contract were indicative of the quality of the lists that the Plaintiff would continue to provide, state the following:

(a) The date or dates these representations and warranties about the lists were made by the Plaintiff;

> **ANSWER:** **Specific dates cannot be recalled, although these representations occurred prior to the signing of the subject contract.**

(b) The name of the person or persons to whom these representations and warranties were communicated;

> **ANSWER:** **Joyce Covatto.**

4.

(c) The name of the person or persons who made these representations and warranties on behalf of the Plaintiff; and

ANSWER: **Harry Metcalfe.**

(d) Please produce each paper, writing or document which in any way records or refers to each such representation and warranty.

ANSWER: **See answer to interrogatory number 3 above.**

5. Describe with particularity each of the capital investments referred to in paragraph 9 of the Counterclaim, and as to each such capital investment, state the following:

(a) The date the capital investment was made;

ANSWER: **Exact dates are unknown, but the largest number of purchases would have occurred in Sept.-Oct. 2002 and June-August, 2003**

(b) The dollar amount of the capital investment;

ANSWER: **See documents previously produced in response to requests for records of expenditures.**

(c) The identity of the individual or individuals who made the decision on behalf of the Defendants to make the capital investment;

ANSWER: **Defendants are currently uncertain whether all of these decisions were made by one or more persons. Final authorization of expenditure requests would have been given by Mr. Al Covatto.**

(d) Which of the Defendants actually paid for the capital investment; and

ANSWER: It is believed that final payment would have been made by Creditron Financial Services, Inc.

(e) Produce the documents you intend to introduce at trial in support of your contention that each of these capital investment was made.

ANSWER: Defendants have not yet determined the documents and records to be relied upon at the time of trial. The trial exhibits will be identified in the Defendants' pretrial narrative as required by the applicable Rules of Court. However, without waiving any rights to identify or submit other records in their pretrial narrative, or at the time of trial, see documents previously produced relating to expenditures.

6. Regarding the allegations in paragraph 9 of the Counterclaim, state the following:
(a) Describe exactly what levels of production and what levels of revenue you claim were promised by the Plaintiff;

ANSWER: The level of production and the levels of revenue concern the representations of the Plaintiff relating to the mail campaigns and the quality of the solicitation lists as described in response to interrogatories 1 through 5 above and the documents identified therein.

(b) State the date or dates Plaintiff make these promises regarding levels of production and levels of revenue, and describe how these promise were communicated to the Defendants;
ANSWER: See answers to interrogatories 1 through 5 above and the documents identified therein.

(c) Describe each document which you contend contains a promise regarding levels of production or levels of revenue.
ANSWER: See answers to interrogatories 1 through 5 above and the documents identified therein.

6.

  (d) Identify by name each individual who you contend was hired and trained in reliance upon the Plaintiff's representations and promises, and as to each such individual, state the following:

    (1) The date of hire;
  ANSWER: **See documents produced herewith.**

    (2) The name of the individual's employer for W-2 purposes;
  ANSWER: **Creditron Financial Corporation d/b/a Telatron Marketing Group, Inc.**

    (3) The date the individual's employment was terminated;
  ANSWER: **See documents produced herewith.**

    (4) Such individual's present or last known address.
  ANSWER:

  7. With regard to each individual who was paid by the Defendants for work or services performed relating to the telemarketing calls to individuals whose names were provided by the Plaintiff, produce your records that will show on a daily, weekly, or monthly basis which individuals worked at any given time and how many specific hours they worked. (These records are referenced on page 20 of the deposition of Joyce Covatto).

  ANSWER: **The documents responsive to this request are so voluminous that their identification and production would be unduly burdensome and costly. Defendants will make these records available for inspection at a mutually convenient time. Without waiving the foregoing, produced herewith are documents relating to November, 2003 through January, 2004. These documents were much more easily identified and copied than records relating to earlier time frames.**

  8. Regarding the allegations contained in paragraph 14 of the Counterclaim, state the following:
  (a) All of the facts upon which they are based;

  ANSWER: **See Amended Answer and Counterclaim. In October, 2003, the Plaintiff and/or the principals of the Plaintiff corporation secretly formed a business to compete with the Defendants. Presumably, this had been in process for some period before the registration documents were prepared and filed. A website for the new business was launched in October, 2003. This corporation, K2 Financial, LLC,**

7.

engaged in the business of list procurement and/or analysis for student loan consolidation work, as well as telemarketing and/or mail solicitations. K2 Financial signed a contract with ChoicePoint in December, 2003 and obtained a signed contract with its customer or customers before the end of 2003. It is believed that the Plaintiff wrongfully used and/or permitted the use of Defendants' business and proprietary information and list information and analysis obtained during the course of the contract with the Defendants so as to enable and/or assist the competing efforts of K2 Financial. In any event, this competition was a violation of the parties' contract. When K2 had its organization in place and its customer contract(s) signed, Plaintiff then terminated its contract with Defendants without any prior warning, thus intentionally leaving Defendants in a competitive disadvantage.

(b) The names of all persons having knowledge of any of the facts set out in answer to subparagraph (a) hereof; and

ANSWER: To the extent currently known:
Al Covatto
Joyce Covatto
Trish DeSanti-Boehm
Harry Metcalfe
Brian Nelson
Monica Estes
Alan Estes
Charles Snyderman, Esquire

(c) The description or designation of each paper, writing or document which in any way records or refers to any of the facts set out in answer to subparagraph (a) hereof;

ANSWER: To the extent currently known:
Documents reflecting the creation of K2 Financial, LLC.
Affidavit of Karen E. Keller, Esquire.
Contract between K2 Financial and ChoicePoint.
Contract between K2 Financial and its customer(s).

9. Please produce each document, paper or writing which you intend to introduce at trial in support of your allegation in paragraph 13 of the Counterclaim that the telemarketing lists provided to the Defendants were of poor quality such that the usable names and telephone numbers declined to each of the percentages set forth in paragraph 13.

8.

ANSWER: The Defendants have not yet determined the documents and/or writings which will be produced at the time of trial in support of any allegation made in the counterclaim. However, the Defendants may offer any of the source documents which have been produced herewith, including but not limited to the tape dump reports and the production reports.

10. Provide a detailed explanation of the calculations which support your demand for $16,288,863.00.

ANSWER: From March, 2003 through December, 2003, the Plaintiff had promised to make and should have made a total of ten mailings with each generating gross revenues of approximately $1,977,025.00 for total combined gross revenues of approximately $19,770,250.00. Defendants' net gross revenues, after paying Plaintiff 28.57%, would have been approximately $14,121,889.00. Instead, Plaintiff's mailings produced gross revenues calculated as only approximately $479,484.00 ($326,604.00 + $152,880.00) during this period of time. Of this amount, Defendants' net revenue after paying Plaintiff would be approximately $342,495.00. Thus, Defendants lost approximately $13,779,394.00 in combined net revenues for all of the promised mailings.

The Plaintiff also breached its promises and obligations with regard to the quality of the telemarketing lists by providing to Defendants deficient lists of poor quality such that the usable names and telephone numbers declined from a pre-contract average of approximately 95% to a post-contract result of 53.3% for the list supplied in April, 52.9% for the list supplied in May, 57.5% for the list supplied in July, 70% for the list supplied in August, 35.2% for the list supplied in September, 66.8% for the list supplied in October and 40.5% for the list supplied in December, 2003. If the quality of these lists supplied by Plaintiff were of the same as they were in the pre-contract time frame, the gross revenues from these lists would have been in the combined total of approximately $7,903,633.00. Defendants' net revenues, after paying Plaintiff, would then have been approximately $5,645,565.00. In contrast, as a result of the substantial drop in usable names, the actual combined revenue of these lists is calculated to have been approximately $4,390,446.00 resulting in a deficit of approximately $3,513,187.00 in gross revenues. Of this deficit, Defendants lost approximately $2,509,469.50 in expected net revenues after deducting the percentage which would have been payable to Plaintiff.

9.

The total losses, therefore, is the sum of $2,509,469.50 and $13,779,394.00, which is $16,288,863.50.

11. Describe with particularity the proprietary and confidential information of the Defendants which you allege in paragraph 15 of the Counterclaim Plaintiff disclosed and/or provided to others.

ANSWER: **Business operations, processes and procedures; Lists procured for purposes of telemarketing and/or mail campaigns and the analysis of these lists and the selection criteria used to secure the lists.**

12. Prior to signing the contract with the Plaintiff, did the Defendants create or receive any written projections of the expenses they would or might incur and/or the revenues that would or might be generated by the telemarketing calls to the individuals whose names and telephone numbers would be provided by the Plaintiff? If your answer to this interrogatory is "yes," please produce all documents which contain these written projections. If you no longer have these documents, state what happened to them..

ANSWER: **Other than the documents identified in response to interrogatory number 1, the Defendants are aware of no other records or writings. During one or more of the meetings held in Erie, PA, Plaintiff provided such projections and used a chalk board to illustrate the same.**

13. With regard to each list of names provided by the Plaintiff, as well as the individual names on such lists, state precisely what activity you tracked from the time you received the names until the final disposition of these lists and individuals. By way of explanation, this interrogatory is intended to determine whether you kept track of the activity as to each individual, or whether you kept track of activity for an entire list. This Interrogatory is further intended to determine the information you tracked, such things as the date you received the name, the date and time you called the individual, the name of the employee who made the call, the results of the call, the mailing of an application, follow-up calls, receipt of a signed application, the loan application process, approval of the loan, funding of the loan, receipt of payment from Brazos, etc.

ANSWER: **If a name provided did not result in a sale, the Defendants currently maintain information regarding the date on which that record was received, the first and last name of the individual, the final sales status, the final enroll date and the ID number of the agent who placed the last call.**

10.

If the records provided resulted in a sale, the Defendants have records that would identify the date of the sale, the employee ID of the agent who secured the sale, the date of the mailing of the application, the date the application was returned, the date the LVCs were sent, the date the application was sent to PHEAA, the date the application was funded and if the application was canceled, the cancellation date.

14. With regard to your answer to Interrogatory No. 6 of Plaintiff's Second Set of Interrogatories and Requests for Production, state the following:

(a) Please explain why the Defendants did not preserve the requested information in a format which would permit production;

ANSWER: **Data was discarded in the normal course of businsess.**

(b) Do you currently have data from which the information requested can be ascertained?

ANSWER: **No. However, Defendants have produced herewith, in response to interrogatory number 16, data which is nevertheless partially responsive to this request.**

15. Identify the directors, officers, and shareholders/owners of each of the following companies:

**Defendants are currently searching their records to provide the most accurate and up-to-date information. This response will be supplemented shortly.**

(a) Creditron Capital Corporation;
ANSWER:

(b) Creditron Financial Corporation;
ANSWER:

(c) Creditron Financial Services, Inc.
ANSWER:

11.

(d)    Academic Lending Center; and
ANSWER:    **Fictitious name.**


(e)    Teletron Marketing Group, Inc.
ANSWER:


16.    Please produce all of the reports which you generated to show all tracked activity for each name provided by the Plaintiff to the Defendants from the time the name was received until the final disposition for that named individual. Please also produce all of the reports which you generated to show all tracked activity for each list of names provided by the Plaintiff to the Defendants from the time the list name was received until the final disposition for the names on the list. If you no longer have these reports or are unable to produce them, state why you no longer have these reports and why you are unable to produce them.
ANSWER:    **Documents responsive to this request are produced herewith.**


17.    Regarding the allegations contained in paragraph 26 of the Counterclaim, state the following:
(a)    All of the facts upon which they are based;
ANSWER:    **See answer to number 8 above and documents produced herewith.**

(b)    The names of all persons having knowledge of any of the facts set out in answer to subparagraph (a) hereof; and
ANSWER: **See answer to number 8 above and documents produced**

(c)    The description or designation of each paper, writing or document which in any way records or refers to any of the facts set out in answer to subparagraph (a) hereof;
ANSWER:    **See answer to number 8 above and documents produced**


18.    For each loan funded between September 11, 2002 and September 1, 2004, from names provided by the Plaintiff, state the following:
(a)    The funded loan amount;
ANSWER:    **Documents responsive to this request are produced herewith**

12.

 (b) The date of funding; and
ANSWER: **Documents responsive to this request are produced herewith**

 (c) The total fee paid by Brazos.
ANSWER: **Documents responsive to this request are produced herewith**

 19. With respect to each of the wire transfers listed on Exhibit 1 to the deposition of Trish Desanti Boehm, produce all documents which show the date you first notified the Plaintiff that you had received the wire transfer, the date you received it, and the amount you received.
ANSWER: **Defendants are continuing their search of records relating to notifications provided to the Plaintiff regarding the date on which Defendants first notified Plaintiff.**

 20. With respect to each wire transfer that you received from Brazos between January 9, 2004 and September 1, 2004, state the following:
 (a) The date of the wire transfer;
ANSWER: **See documents produced herewith.**

 (b) The amount of the funds transferred; and
ANSWER: **See documents produced herewith.**

 (c) Produce all documents which would reveal which if any of the loans that these wire transfers related to were for individuals whose names were provided by the Plaintiff to the Defendants.
ANSWER: **Defendants have no such documents.**

 21. If in response to the preceding interrogatory you state that you do not have records that would contain the information requested, please produce the computer data that will enable the Plaintiff to determine which of the names it provided to the Defendants had loans which funded and resulted in commissions being paid to the Defendants during the time period in question.

    ANSWER:    See documents produced herewith.

22. Have the Defendants used any of the names or lists of names provided by the Plaintiff in a way to generate compensation other than from the sale of student loans to Brazos? If your answer to this interrogatory is "yes," state the following:
(a) The funded loan amount;
ANSWER: **No data which was provided by the Plaintiff to Defendants was used to generate revenue other than the revenue received from Brazos.**

(b) The date of funding;
ANSWER:

(c) The identity of the source; and
ANSWER:

(d) The total fee received from the source.
ANSWER:

23. Please produce the reports you generated or maintained, or that are available to you, that show the total outbound dialer hours spent on each list of names provided by the Plaintiff to the Defendants.
ANSWER: **There are no generated dialer reports available.**

24. Produce the corporate chart referred to by Joyce Covatto at page 7 of her deposition.
ANSWER: **The corporate chart referred to no longer exists as it has been updated and modified numerous times since January, 2004.**

25. Did the Defendants at any time provide the names supplied by the Plaintiff to any organization other than Brazos? If your answer to this interrogatory is yes, state the following:
(a) Identify who you supplied the names to;
ANSWER: **No.**

14.

(b) State the date or dates when this occurred;
ANSWER:

(c) Identify the specific names which you provided; and
ANSWER:

(d) State the amount of compensation which you received as a result of providing these names.
ANSWER:

26. Did you perform any student loan consolidation work or services for Sun Trust Bank or its affiliates and/or subsidiaries between September 11, 2002 and January 9, 2004?
ANSWER: **No.**

27. State the name of each individual who assisted in the preparation of the answers to these interrogatories.
ANSWER: **Trish DeSanti-Boehm**
**Terry Smith**
**Mark Kisiel**

28. Please produce the production reports referred to by Joyce Covatto at pages 18 and 19 of her deposition for the period September 11, 2002 to January 9, 2004.
ANSWER: **See documents produced herewith.**

29. Exhibit 4 from the deposition of Trish Desanti-Boehm contains a Revenue Analysis for the period September 2002 to October 2003.
ANSWER: **This question is not intelligible.**

30. For each list of names provided by the Plaintiff to the Defendants, identify which of the names you contend were not usable, and explain the specific reason or reasons why each of these names was not usable.
ANSWER: **See documents produced herewith.**

15.

31.  Please produce all documents which you intend to introduce at trial in support of your contention that the names identified in response to the preceding interrogatory were not usable.

ANSWER:  **Defendants have not yet determined the documents and records to be relied upon at the time of trial. The trial exhibits will be identified in the Defendants' pretrial narrative as required by the applicable Rules of Court. However, without waiving any rights to identify or submit other records in their pretrial narrative, or at the time of trial, see the documents produced in response to interrogatory 30.**

Answers respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By _/s/ Craig A. Markham_
Craig A. Markham, Esquire
Attorney for Defendants
150 East Eighth Street
Erie, Pennsylvania 16501
(814) 456-4000

16.