UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, ) ) ) ) | |
| Plaintiff ) | C.A. No.: 04 - 263 Erie |
| ) | |
| v. ) ) | Judge McLaughlin |
| ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, ) INC., a Pennsylvania corporation, and ) TELATRON MARKETING GROUP, ) INC., a Pennsylvania corporation, ) | |
| Defendants ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO MOTION TO COMPEL DISCOVERY**

AND NOW, the Defendants, by and through their attorneys ELDERKIN, MARTIN, KELLY & MESSINA, file the following Response in Opposition to Motion to Compel Discovery, respectfully representing as follows:

1. Denied as stated. The Plaintiff claims that it did not receive all of the payments from the Defendants to which Plaintiff was entitled. Putting aside for the moment the defenses asserted in response to the Plaintiff's claims, the amounts owed to the Plaintiff would be calculated based upon gross revenues received by the Defendants from Brazos, the lender who paid Defendants commissions on loan applicants secured through Defendants' marketing efforts. Therefore, the question of what use the Defendants made of the revenues *after* the Brazos payments were received is completely irrelevant to the calculation of the amounts demanded by

Plaintiff. Simply stated, the amount owed to Plaintiff is not affected by banking routes traveled by, or by the final resting place of, the Brazos' payments. Plaintiff's inquiries regarding these issues are a costly and time-consuming diversion from the relevant issues.

The issues which are relevant to the Plaintiff's entitlement to any amount include the fact that Plaintiff failed to perform as it promised and as warranted and that the Plaintiff violated the non-compete provision of the parties' Agreement. Plaintiff has now admitted that it provided the Defendants with materially false calculations of the dollar amount of revenues to be generated by Plaintiff's work under the Agreement. Additionally, the Defendants have uncovered the fact that Plaintiff's three principals secretly plotted and conspired to create and operate a business which competes directly with the Defendants.

2. Admitted. The calculation of the amounts allegedly owed is not affected by the banking routes traveled by the revenues paid by Brazos or by Defendants' final disposition of the funds paid by Brazos.

3. Denied as stated. It is admitted that, due to the defenses and counterclaim raised in this matter, the Plaintiff is not entitled to receive and thus has not received a full 28.57% of the gross revenues which Defendants received from Brazos. *See Amended Answer and Counterclaim*. Defendants have produced records of the amounts received from Brazos and have produced witnesses and have provided deposition testimony regarding those receipts. Moreover, the Plaintiff has subpoenaed disbursement records from Brazos itself to confirm the amounts of the gross revenues received by the Defendants. In any event, the Defendants' disposition of the

revenues paid to Defendants by Brazos is completely irrelevant to the calculation of the amounts allegedly owed to the Plaintiff.

4. Denied as stated. The counterclaim is based on the fact that the Plaintiff has now conceded that it provided the Defendants with materially false calculations of the dollar amount of revenues to be generated by Plaintiff's work under the Agreement. Plaintiff has also admitted that, at a time when the Agreement was in full force and effect, and despite the Agreement's binding non-compete clause, the three principals of the Plaintiff secretly plotted, created and began operating a business to compete directly with the Defendants.

5. Denied as stated. The uses to which Defendants may have put the revenues which the Defendants received from Brazos is not relevant to the calculation of the amounts allegedly owed to the Plaintiff.

6. Denied as stated. Funds were not diverted by the Defendants but were properly expended for various business and operating costs and expenses. It is admitted that Defendants' cash flow suffered because of the Plaintiff's failure to perform its contractual obligations as promised and warranted. However, the alleged "diversion" of funds, the Defendants' cash flow problems and/or Defendants' use of the funds received from Brazos have no bearing on the calculation of the Plaintiff's alleged entitlement to payment.

7. It is admitted that although Plaintiff's recent discovery requests violated the clear limitations of F.R.C.P. 33(a)[1] and even though Plaintiff failed to seek or obtain leave of court as required, Defendants responded in good-faith and produced volumes of responsive records. It is denied that Plaintiff is entitled to any payment from revenues received after Plaintiff unilaterally terminated the Agreement. Moreover, as Plaintiff points out, many of its discovery requests are focused on the irrelevancies of the banking routes traveled by the payments made by Brazos.

8. It is admitted that although Plaintiff's recent discovery requests violated the clear limitations of F.R.C.P. 33(a) and even though Plaintiff failed to seek or obtain leave of court as required, the Defendants have produced the information requested. The Plaintiff has deposed six (6) of Defendants' employees and Plaintiff also issued a subpoena to Brazos to obtain records to confirm the amounts paid by Brazos to the Defendants.

9. It is admitted that, on January 13, 2006, Defendants produced documents which they had concluded were responsive to the Plaintiffs' request. The Plaintiff then waited until the depositions of Defendants' employees, which were held on May 24, 2006, to suggest, for the first time, that the Defendants had misinterpreted the document request. As a result of that discussion, additional documents and records relating to disbursements have been produced.

---

[1] Plaintiff's most recent written discovery was its third set and by itself consisted of 31 interrogatories, many of which had numerous subparts.

10. It is admitted that approximately only six days after the issue was first raised during the May 24, 2006 depositions and only four days after Plaintiff's counsel issued its letter of May 26 requesting more documentation, the Plaintiff filed a motion to compel.

11. The written discovery requests speak for themselves.

12. Denied as stated. The Court granted the Plaintiff's motion but the document request at issue does not specifically request bank records. The Defendants previously explained that the Brazos payments were deposited into an account into which other unrelated payments were also deposited. This account was also used to pay expenses and invoices for work and activities completely unrelated to the parties' Agreement. Because of this, disbursements from this account could not be traced back to any specific Brazos deposit. Thus, Defendants could not identify the disbursements "from the payments" received from Brazos as requested by these interrogatories. Although Defendants could not attribute disbursements to a particular Brazos receipt, the Defendants produced volumes of documents reflecting the bills and expenses for which payments were disbursed from this account.

Of course, Plaintiff's discovery demands which relate to the banking pathways traveled by the Brazos' payments is a time-consuming and costly diversion from the relevant issues. Simply stated, the banking routes traveled by and the ultimate resting place of the Brazos' payments will be of no assistance in calculating the amounts allegedly owed to the Plaintiff.

13. These discovery requests and responses thereto speak for themselves. In paragraph 13 of its motion to compel, Plaintiff has not fully nor completely recited Defendants' response to interrogatory number 9.

14. It is admitted that by letter dated September 15, 2006, defense counsel responded to the Plaintiff's inquiry. A copy of the September 15, 2006 letter is attached hereto as Exhibit 1. After the letter of September 15, 2006, no further comment nor communication was received from the Plaintiff which would have indicated either that the Plaintiff was dissatisfied with the Defendants' response or that any other issues remained unresolved. Plaintiff made no further inquiry before the filing of the instant motion to compel. In this regard, the Plaintiff has not attempted to further resolve this issue and has failed to file a discovery dispute certificate as required by Local Rule 37.1.

15. In the conference of September 18, 2006, Judge McLaughlin stated that the Brazos payment records which would be produced in response to the subpoena served on Brazos by the Plaintiff would satisfy completely the Plaintiff's inquiry regarding the amount of gross revenues paid by Brazos to the Defendants. At that time, Plaintiff's counsel stated that he agreed with this statement. After that conference, no further communication was received from the Plaintiff which would have indicated that Plaintiff had now reversed its position and now wanted records in addition to the Brazos documents. As stated previously, records relating to Defendants' disbursements are not relevant and, in fact, would not permit Plaintiff to achieve the purported goal of tracing disbursements back to the deposit of Brazos' payments.

16. Denied. It is admitted that although Plaintiff's recent discovery requests violated the clear limitations of F.R.C.P. 33(a) and even though Plaintiff failed to seek or obtain leave of court as required, responsive documents were produced by Defendants.

17. Denied. In addition to the records produced by the Defendants, the Plaintiff has subpoenaed records from Brazos itself regarding the amounts Brazos paid to the Defendants. Plaintiff offers no explanation as to why it has now decided that additional documentation is needed to determine the amounts paid by Brazos. In the conference of September 18, 2006, Judge McLaughlin stated that the Brazos payment records, which would be produced in response to the subpoena served on Brazos by the Plaintiff, would satisfy completely the Plaintiff's inquiry regarding the amount of gross revenues paid by Brazos to the Defendants. At that time, Plaintiff's counsel stated that he agreed with this statement. After that conference, no further communication was received from the Plaintiff which would have indicated that Plaintiff had reversed its position and now wanted records in addition to the Brazos documents

18. Denied as stated. Responsive documents were produced. In depositions held on November 13 and 14, 2006, Defendants' employees testified as to what they understood to be a capital expenditure and confirmed that documents reflecting the same had been produced. As to interrogatory number 7, and regarding the employee records currently available, the available records do not identify which employees were performing work for Academic Lending Center project in 2002 and 2003, except for the period of November, 2003 to January, 2004. The records for this period (Nov.'03-Jan.'04) have been produced. There are thousands of pages of other records which have been archived for 2002 and 2003, but these records do not identify which employees worked for ALC or and they do not state the amounts of time each employee worked. Rather, these records are in the nature of payroll records. Nevertheless, these records were presented to Plaintiff's counsel on November 29, 2006.

19. Denied. It is admitted that although Plaintiff's recent discovery requests violated the clear limitations of F.R.C.P. 33(a) and even though Plaintiff failed to seek or obtain leave of court as required, the Defendants have produced responsive documents. In response to interrogatory number 3, Defendants have provided a detailed explanation of what was meant by "usable" names and phone numbers and Defendants have produced a CD containing copies of responsive records.

20. Denied. Detailed information relating to these matters was provided in the deposition of Mr. Covatto.

21. Admitted. At that time, the Plaintiff had a full and complete opportunity to question these witnesses in order to obtain all of the information about which the Plaintiff is now complaining.

22. The deposition testimony speaks for itself. It is admitted that the Plaintiff had a full and complete opportunity to question these witnesses in order to obtain all of the information about which the Plaintiff is now complaining. Moreover, this line of inquiry regarding the banking routes traveled by the Brazos' payments is a costly waste of time and resources because the question of what use the Defendants made of the revenues *after* the Brazos payments were received is completely irrelevant to the calculation of the amounts demanded by Plaintiff. Simply stated, the amount owed to Plaintiff is not affected by the banking routes traveled by the Brazos payments or by final resting place of those payments.

23. The records regarding fund transfers between entities have not been requested previously. Plaintiff's prior requests for disbursement records were understood to focus on the payments made to vendors, suppliers and utilities in satisfaction of similar business obligations. Documents reflecting these costs were previously provided. Of course, Plaintiff's discovery demands relating to the banking routes traveled by the Brazos' payments is a time-consuming and costly diversion from the relevant issues. Simply stated, the routes traveled and the ultimate resting place of the Brazos' payments will be of no assistance in calculating the amounts allegedly owed to the Plaintiff.

24. Admitted. Plaintiff's unreasonable discovery demands relating to the banking routes traveled by the Brazos' payments is a time-consuming and costly diversion from the relevant issues. Simply stated, the routes traveled and the ultimate resting place of the Brazos' payments will be of no assistance in calculating the amounts allegedly owed to the Plaintiff. Defendants have produced documents and testimony regarding the amounts of the Brazos' receipts and Plaintiff has obtained payment information directly from Brazos.

25. Denied as stated. Although Plaintiff's recent discovery requests violated the clear limitations of F.R.C.P. 33(a) and even though Plaintiff failed to seek or obtain leave of court as required, the Defendants have produced responsive documents. The records regarding fund transfers between entities have not been expressly requested previously. Plaintiff's prior requests for disbursement records were understood to focus on the payments made to vendors, suppliers and utilities in satisfaction of similar business obligations. Documents reflecting these costs were previously provided. Of course, Plaintiff's discovery demands relating to the banking routes traveled by the Brazos' payments is a time-consuming and costly diversion from the relevant

issues. Simply stated, the routes traveled and the ultimate resting place of the Brazos' payments will be of no assistance in calculating the amounts allegedly owed to the Plaintiff.

26. The Plaintiff's motion to compel is premature because Plaintiff had not previously requested the internal transfer documentation. Moreover, those documents are completely irrelevant to the central issue of the amounts, if any, which are owed to Plaintiff. The Defendants have worked in good faith to produce all of the documents previously demanded by the Plaintiff and will continue to do so to the extent required by the applicable Rules of Court. However, the requests identified in paragraph 26 of the motion and the proposed Order of Court fail to provide the specificity needed in order for the Defendants to respond further. For instance, in the proposed order, the Plaintiff seeks to compel the Defendants to "produce *the* information identified during the depositions of Catherine Lombardozzi and Mark Kissell" but the Plaintiff has failed to specifically identify what "information" it is now seeking. When the Defendants have in the past attempted, in good faith, to interpret such imprecise and ambiguous demands, the Plaintiff invariably complains that Defendants' interpretation was incorrect and accuses the Defendants of intentionally refusing to cooperate. The fact of the matter is that the documents which had been adequately identified by Plaintiff have been produced (despite the absence of any relevancy of many of those requests) and that Defendants are striving to respond accurately and completely.

WHEREFORE, the Defendants respectfully request this Honorable Court issue an order denying the Plaintiff's motion to compel.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By   /s/ Craig A. Markham
       Craig A. Markham, Esquire
       Attorney for Defendants
       150 East Eighth Street
       Erie, Pennsylvania 16501
       (814) 456-4000