IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | |
| | CA No.: 04-263 |
| Plaintiff | |
| | JUDGE McLAUGHLIN AND |
| v. | MAGISTRATE JUDGE SUSAN PARADISE BAXTER |
| CREDITRON FINANCIAL SERVICES, INC, a Pennsylvania corporation, and, TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | TRIAL BY JURY DEMANDED |
| | **Electronically Filed** |
| Defendants | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes Delaware Marketing Partners, LLC, by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files this Motion for Summary Judgment as follows:

1. This is a breach of contract action arising out of certain revenues associated with a Student Loan Origination and Marketing Agreement entered into between the parties. Delaware Marketing Partners, LLC performed its duties under the contract between the parties but was not paid for its services.

**I.    Summary Judgment regarding the claims asserted in plaintiff's Complaint**

2. The parties entered into a Student Loan Origination and Marketing Agreement that was drafted by defendants. (Exhibit 1) The Agreement became effective September 1, 2002. (Exhibit 1, first paragraph).

3. It is not disputed that the parties are bound by the terms of the Agreement and that the Agreement defines the parties' relationship. (Exhibit 2, pp. 14-15)

4.  The agreement itself states: "This Agreement and any Exhibits hereto contain the entire agreement between **DELAWARE MARKETING** and **TELATRON** and may only be changed or altered by a written instrument specifically stating that it modifies this Agreement and signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought." (Exhibit 1, ¶ 24) No such change or alteration was made and none exists.

5.  Pursuant to the Agreement, each party had specific responsibilities to perform, and each party was to receive a specified percentage of all gross revenues, i.e., commissions, received by the defendants from the lenders who funded the student loans.

6.  The Agreement provides exactly how the gross revenues are to be allocated between the parties and distributed:

> **4.  ALLOCATION OF PROGRAM REVENUES**
>
> For the services provided by the parties, **TELATRON** [defendants] shall distribute commission funds received as follows:
>
> a. **DELAWARE MARKETING** shall be paid 28.57% of the gross revenues. Such payment shall be accomplished within seven (7) days after commission funds are received from the lender(s). **TELATRON** shall remit payment to **DELAWARE MARKETING** by wire transfer. **TELATRON** shall be entitled to 71.43% of the remaining gross revenues."

(Exhibit 1, Exhibit 001, ¶ 4)

7.  Under the contract, Delaware Marketing Partners, LLC was owed 28.57% of the gross revenues received by the defendants as payment for its efforts under the contract. Defendants have acknowledged this to be the case and the intent of the Agreement. (Exhibit 3, deposition of Alfred D. Covatto dated November 15, 2006, pp. 6-9; Exhibit 4, p. 28; Exhibit 2, p. 38)

8. Notwithstanding the clear terms of the agreement and the intent of the parties, defendants unilaterally decided to not pay Delaware Marketing Partners, LLC millions of dollars that would have otherwise been paid as a part of the 28.57% under the Agreement. (Exhibit 8, deposition of Trisha Desanti-Boehm dated November 14, 2006, p. 30). In fact, not once during the term of the Agreement did the defendants pay to Delaware Marketing Partners, LLC 28.57% of the gross revenues. (Exhibit 2, pp. 36, 39-40; Exhibit 5, pp. 42, 45)

9. Delaware Marketing Partners, LLC relied upon defendants to tell it proper information concerning the money defendants received. In fact, the only way that Delaware Marketing Partners, LLC would know the results of the parties' efforts under the Agreement was if defendants notified it of the same. (Exhibit 4, pp. 23-24) Further, defendants had an obligation to tell Delaware Marketing Partners, LLC the amount of money defendants received under the program from lenders such as Brazos. (Exhibit 2, p. 61)

10. However, not once during the term of the Agreement did the defendants disclose to the plaintiff the actual amount of the gross revenues which had been received by the defendants.

11. Delaware Marketing Partners, LLC provided services from the beginning of the contract through November 2003 under the assumption that it would be paid 28.57% of the gross revenues as compensation for its services. (Exhibit 5, pp. 12-13) At no time prior to November 2003 did defendants tell Delaware Marketing Partners, LLC that it would not be paid for services rendered, even though defendants claim they were experiencing problems with the services provided by Delaware Marketing Partners as early as March of 2003. (Exhibit 3, pp. 29-30; Exhibit 4, pp. 12-13)

12. Defendants improperly and unilaterally diverted Delaware Marketing Partners, LLC's share of the gross revenues to the defendants' affiliates, parent companies or subsidiaries. For example, rather than paying monies to Delaware Marketing Partners, LLC, defendants paid payroll expenses and other defendants' production costs. (Exhibit 4, pp. 14-15, 66-67; Exhibit 5, pp. 35-36) Further, Mr. Covatto testified that it was his decision to pay or not pay Delaware Marketing Partners, LLC or other defendants' expenses as he saw fit. (Exhibit 2, pp. 58-59; Exhibit 3, pp. 17, 43)

13. The evidence shows that on numerous occasions, Telatron pays for the expenses, debts and other costs of Creditron and its division, Academic Lending Center, and vice versa (Exhibit 6, deposition of Katherine Lombardozzi, pp. 11-13; 15-17; 20; 24-28; and 38-40); that such transfers/diversions of funds and repayment of funds from one entity to another are directed by Al Covatto (Exhibit 6, pp. 13-14; 29-30; 33; 53; 65); that funds generated under the parties' Agreement, at Mr. Covatto's discretion, would be diverted to either Creditron's, Telatron's or Academic Lending Center's individual bank accounts (Exhibit 6, pp. 18-20; 61-62; 64); and that expenses of one of the defendant entities, on various occasions, were paid by another defendant entity at the direction of Al Covatto and that documentation existed to show such transfers of funds (Exhibit 7, pp. 17-18).

14. Under the Agreement, Delaware Marketing Partners, LLC agreed to pay $142,850.00 in start up costs. (Exhibit 1, Exhibit 001 ¶4) Delaware Marketing Partners, LLC has incurred more than this amount and seeks reimbursement for the same.

15. The terms of the Agreement require that Delaware Marketing Partners be paid 28.57% of the gross revenues received by defendants.

16. Delaware Marketing Partners, LLC should be reimbursed for start up expenses.

17. Delaware Marketing Partners, LLC incorporates the attached Exhibits and its Brief in Support of this Motion.

WHEREFORE, Delaware Marketing Partners, LLC respectfully requests that its Motion for Summary Judgment be granted and judgment be entered against defendants for 28.57% of all gross revenues received by defendants in connection with the student loan program after October 31, 2002, together with prejudgment interest and post judgment interest.  Further, defendants should be required to reimburse plaintiff for the start up costs that it improperly incurred.

**II.     Summary Judgment regarding the claims asserted in defendants' Counterclaim**

18. On September 22, 2006, defendants filed a Counterclaim setting forth various causes of action against Delaware Marketing Partners, LLC, including breach of contract, mutual mistake of fact, fraud in the inducement and misappropriation of trade secrets seeking damages in excess of $16,000,000.00.

19. In paragraphs 4 and 5 of the Counterclaim defendants allege that Delaware Marketing Partners, LLC represented and warranted that each of the mail campaigns performed by it would consist of 200,000 solicitations, would result in gross revenues of $1,977,025.00, and that such mailings would be made on a monthly basis. (Counterclaim, ¶¶ 4, 5)  Defendants admit that the binding document between the parties is the Agreement itself. (Exhibit 8, p. 29) Nowhere in the written agreement does plaintiff represent or warrant that its mail campaigns would consist of 200,000 solicitations monthly; that gross revenues would amount to approximately $2 million per month; or that the telemarketing solicitation lists would remain at a 95% usability quality.  In addition, defendants approved the direct mail campaigns prior to the mailings being sent. (Exhibit 8, p. 35)

20. In paragraph 6 of the Counterclaim, defendants allege that Delaware Marketing Partners, LLC provided defendants with solicitation lists to be used for telemarketing, that Delaware Marketing Partners, LLC represented and warranted that the lists were of such a quality that 95% of the names on the lists were usable for calls, and that Delaware Marketing Partners, LLC represented that this would be indicative of the lists that would be provided in the future. (Counterclaim, ¶ 6) However, defendants have no documentation regarding representations and warrantees made by Delaware Marketing Partners, LLC with respect to quality of lists. (Exhibit 8, pp. 5-7) Further, nowhere in the Agreement between the parties does Delaware Marketing Partners, LLC state that the lists would remain at 95% usable quality. (Exhibit 1)

21. In paragraph 9 of the Counterclaim, defendants allege that they made capital investments and hired and trained personnel based upon promises made by Delaware Marketing Partners, LLC. (Counterclaim, ¶ 9) However, defendants cannot ascertain what capital investments were made; cannot provide the date that any capital investment was made; and are not able to provide the amount of any capital investments. (Exhibit 8, pp. 8-9) Defendants are not even certain which defendant incurred any alleged capital investment. (Exhibit 8, pp. 12-13) With respect to hiring and training personnel, defendants are unable to identify persons that they allege they hired to perform telemarketing of student loan consolidations in reliance upon Delaware Marketing Partners, LLC's alleged representations. (Exhibit 8, p. 24)

22. In paragraphs 11 and 12 of the Counterclaim, defendants allege that they were harmed because Delaware Marketing Partners, LLC did not make monthly direct mail campaigns and that the two mail campaigns that were made did not consist of 200,000 mail solicitations. (Counterclaim, ¶¶ 11, 12) However, the Agreement between the parties does not obligate

Delaware Marketing Partners, LLC to send mail campaigns on a monthly basis. Further, defendants approved the mail campaigns and during performance of the contract defendants did not question Delaware Marketing Partners, LLC why such mailings did not occur on a monthly basis. (Exhibit 8, pp. 35, 55-57)

23. In paragraphs 14, 15, 16 and 17 of the Counterclaim, defendants allege that Delaware Marketing Partners, LLC took steps to improperly compete with defendants in violation of the Agreement between the parties by the development of a competing business entity, by disclosing and utilizing proprietary and confidential information of defendants in furtherance thereof, and by abruptly terminating the Agreement between the parties. (Counterclaim, ¶¶ 14, 15, 16, 17) Defendants admit, however, that the contract does not prohibit Delaware Marketing Partners, LLC or its principals from forming another company to compete with defendants, that defendants do not know of any confidential or proprietary information that Delaware Marketing Partners, LLC disclosed or provided to others, and that defendants, in fact, voluntarily provided to Delaware Marketing Partners, LLC telemarketing scripts and training manuals (the information which defendants claim is confidential and proprietary). (Exhibit 8, pp. 30-33, 41) Defendants stated they have nothing more than speculation and assumptions regarding their claims pertaining to wrongful use of confidential and proprietary business information. (Exhibit 8, p. 33)

24. Defendants also acknowledge that Delaware Marketing Partners, LLC terminated the Agreement between the parties in January of 2004 because millions of dollars, that were owed and derived from the 28.57% under the parties' Agreement, had not been paid to Delaware Marketing Partners, LLC, that defendants did not make a good faith effort in the fall of 2003 to

pay monies owed, and that Delaware Marketing Partners, LLC terminated the contract because monies had not been paid to it. (Exhibit 8, pp. 30-31, 57-61)

25. In paragraph 26 of the Counterclaim defendants allege that Delaware Marketing Partners, LLC conspired with others to develop and operate a business to compete with defendants. In discovery defendants stated that they have no documents or other evidence to support the same. (Exhibit 8, pp. 48-51)

26. The terms of the contract prohibit defendants' Counterclaim.

27. There is no evidence of record to support the allegations in the Counterclaim.

28. Delaware Marketing Partners, LLC incorporates the attached Exhibits and its Brief in Support of this Motion.

WHEREFORE, Delaware Marketing Partners, LLC respectfully requests that its Motion for Summary Judgment be granted and defendants' Counterclaim be dismissed.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.


By  s/ Steven W. Zoffer
   Steven W. Zoffer, Esq.
   PA. I.D. #62497
   szoffer@dmclaw.com
   Brett W. Farrar, Esq.
   PA. I.D. #79217
   bfarrar@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(412) 281-7272 Telephone
(412) 392-5367 Fax

Attorneys for Plaintiff