IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | CA No.: 04-263 |
| Plaintiff | |
| v. | JUDGE McLAUGHLIN AND MAGISTRATE JUDGE SUSAN PARADISE BAXTER |
| CREDITRON FINANCIAL SERVICES, INC, a Pennsylvania corporation, and, TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | TRIAL BY JURY DEMANDED |
| | **Electronically Filed** |
| Defendants | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes Delaware Marketing Partners, LLC, by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files this Brief in Support of Motion for Summary Judgment as follows:

**I.   INTRODUCTION**

This is a simple breach of contract action arising out of certain revenues associated with a Student Loan Origination and Marketing Agreement entered into between the parties. Delaware Marketing Partners, LLC performed its duties under the contract between the parties but was not paid for its services. As a result, on or about January 16, 2004 it filed a Complaint in this matter seeking damages that it is contractually owed. Discovery has concluded in this matter and, based upon the facts that are discussed below, it is clear that Delaware Marketing Partners, LLC is entitled to summary judgment regarding the claims set forth in its Complaint.

In addition, on September 22, 2006 defendants, Creditron Financial Services, Inc. and Telatron Marketing Group, Inc., filed a Counterclaim alleging various causes of action and seeking damages. Discovery has also concluded with respect to this Counterclaim. For the reasons discussed herein, defendants' Counterclaim should be dismissed with prejudice.

## II. SUMMARY JUDGMENT REGARDING THE CLAIMS ASSERTED IN PLAINTIFF'S COMPLAINT

### A. Statement of facts pertaining to plaintiff's claims.

The claims asserted in Delaware Marketing Partners LLC's Complaint are based on a Student Loan Origination and Marketing Agreement entered into between the parties. (Exhibit 1) This Agreement was drafted by defendants, specifically Alfred D. Covatto, the Chief Executive Officer of Creditron Financial Corporation and Telatron Marketing Group, Inc., and the President of Academic Lending Center/Financial Services, Inc. (Exhibit 2, deposition of Alfred D. Covatto dated November 14, 2006, p. 11; Exhibit 4, deposition of Joyce Covatto, pp. 43-44) It was signed on behalf of defendants by Alfred D. Covatto, the President of Academic Lending Center/Financial Services, Inc. and by Joyce Covatto, the President of Telatron Marketing Group, Inc. (Exhibit 4, pp. 43-44) It became effective September 1, 2002. (Exhibit 1, first paragraph). Defendants do not dispute that Creditron Financial Services, Inc. and Telatron Marketing Group, Inc. are bound by the terms of the Agreement and that the Agreement defines the parties' relationship. (Exhibit 2, pp. 14-15) There are no other contractual agreements between the parties. (Exhibit 5, deposition of Trisha Desanti-Boehm dated May 24, 2006, p. 23) The agreement itself states: "This Agreement and any Exhibits hereto contain the entire agreement between **DELAWARE MARKETING** and **TELATRON** and may only be changed or altered by a written instrument specifically stating that it modifies this Agreement and signed

2

by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought." (Exhibit 1, ¶ 24)  No such change or alteration was made and none exists.

Pursuant to the Agreement, the parties would work together to perform student loan acquisition services.  Further, each party had specific responsibilities to perform, and each party was to receive a specified percentage of all gross revenues, i.e., commissions, received by the defendants from the lenders who funded the student loans.  The Agreement provides exactly how the gross revenues are to be allocated between the parties and distributed:

> **4.     ALLOCATION OF PROGRAM REVENUES**
>
> For the services provided by the parties, **TELATRON** [defendants] shall distribute commission funds received as follows:
>
> a. **DELAWARE MARKETING** shall be paid 28.57% of the gross revenues.  Such payment shall be accomplished within seven (7) days after commission funds are received from the lender(s). **TELATRON** shall remit payment to **DELAWARE MARKETING** by wire transfer.  **TELATRON** shall be entitled to 71.43% of the remaining gross revenues."

(Exhibit 1, Exhibit 001, ¶ 4)

It is clear that based upon this contractual term, Delaware Marketing Partners, LLC was owed 28.57% of the gross revenues received by the defendants as payment for its efforts under the contract.  Defendants, during deposition, also acknowledge this to be the case and the intent of the Agreement.[1]  Mr. Covatto and Mrs. Covatto testified that under the Agreement Delaware Marketing Partners, LLC was entitled to 28.57% of the gross revenues received by defendants from lenders and that defendants were entitled to 71.43%.  (Exhibit 3, deposition of Alfred D. Covatto dated November 15, 2006, pp. 6-9; Exhibit 4, p. 28)  Delaware Marketing Partners was

---

[1] The defendants now argue that there exists a condition precedent in the contract regarding performance that precludes the payment of the 28.57%, even though the terms of the contract, that defendants drafted, do not contain such a condition. (Exhibit 5, pp. 29-30)

3

entitled to 28.57% of every wire transfer that was received by defendants beginning in October of 2002. (Exhibit 2, p. 38)

Notwithstanding the clear terms of the agreement and the intent of the parties, defendants, and specifically Mr. Covatto, unilaterally decided to not pay Delaware Marketing Partners, LLC any of the gross revenues. In fact, not once during the term of the Agreement did the defendants pay to Delaware Marketing Partners, LLC 28.57% of the gross revenues. (Exhibit 2, pp. 36, 39-40; Exhibit 5, pp. 42, 45) Mr. Covatto, the person who drafted the Agreement, admits that under the terms of the contract defendants do not have the right to refuse to pay the 28.57% of gross revenue to Delaware Marketing Partners, LLC. (Exhibit 3, p. 29) Defendants admit that they did not pay Delaware Marketing Partners millions of dollars that would have otherwise been paid as a part of the 28.57% under the Agreement. (Exhibit 8, deposition of Trisha Desanti-Boehm dated November 14, 2006, p. 30) Simply put, the clear language of the contract drafted by defendants requires that defendants pay to Delaware Marketing Partners, LLC 28.57% of the gross revenues received under the student loan program and defendants did not do so.

Defendants understood that Delaware Marketing Partners, LLC was expecting 28.57% of the gross revenues received by defendants under the program and was relying upon defendants to tell it proper information concerning the money defendants received. In fact, the only way that Delaware Marketing Partners, LLC would know the results of the parties' efforts under the Agreement was if defendants notified it of the same. (Exhibit 4, pp. 23-24) Defendants had an obligation to tell Delaware Marketing Partners, LLC the amount of money defendants received under the program from lenders such as Brazos. (Exhibit 2, p. 61) However, defendants did not create a mechanism for reporting this information to Delaware Marketing Partners, LLC.

4

(Exhibit 4, pp. 24)  In fact, not once during the term of the Agreement did the defendants disclose to the plaintiff the actual amount of the gross revenues which had been received by the defendants.[2]

Defendants admit that Delaware Marketing Partners, LLC provided services from the beginning of the contract through November 2003 under the assumption that it would be paid 28.57% of the gross revenues as compensation for its services.  (Exhibit 5, pp. 12-13)  At no time prior to November 2003 did defendants tell Delaware Marketing Partners, LLC that it would not be paid for services rendered, even though defendants claim they were experiencing problems with the services provided by Delaware Marketing Partners as early as March of 2003.  (Exhibit 3, pp. 29-30; Exhibit 4, pp. 12-13)  Further, even though defendants had the right to terminate the agreement, they did not do so and caused Delaware Marketing Partners, LLC to continue to perform services and believe that it would be paid the 28.57%.  (Exhibit 3, p. 34)  In fact, Mrs. Covatto specifically testified that she knew, as President of Telatron Marketing Group, Inc., that Delaware Marketing Partners was performing work under the contract under the impression that it would be paid, but that defendants had no intention of paying Delaware Marketing Partners for the work it performed.  (Exhibit 4, pp. 12-13)

In reality, defendants improperly and unilaterally diverted Delaware Marketing Partners, LLC's share of the gross revenues to the defendants' affiliates, parent companies or subsidiaries for the purpose of defrauding Delaware Marketing Partners, LLC and hindering and delaying the collection of the monies owed to Delaware Marketing Partners, LLC.  Defendants, in fact, were diverting funds generated and received under the student loan program that should have been shared with Delaware Marketing Partners, LLC to pay for defendants' expenses.  For example,

---

[2] It should be noted that despite discovery requests and Court Orders, not once during this litigation have the defendants produced the documents and records which show the actual amount of the gross revenues which the defendants received, and the disposition of these funds.

Mrs. Covatto and Mrs. Desanti-Boehm testified that rather than paying monies to Delaware Marketing Partners, LLC, defendants paid payroll expenses and other defendants' production costs. (Exhibit 4, pp. 14-15, 66-67; Exhibit 5, pp. 35-36) Further, Mr. Covatto testified that it was his decision to pay or not pay Delaware Marketing Partners, LLC or other defendants' expenses as he saw fit. (Exhibit 2, pp. 58-59; Exhibit 3, pp. 17, 43) In fact, monies that Brazos was forced to pay to the IRS on behalf of defendants (regarding payroll taxes) were considered by defendants to be gross revenues received by Telatron, and should presumably otherwise be part of the monies payable to Delaware Marketing Partners, LLC. (Exhibit 3, pp. 13-14)

      Katherine Lombardozzi, Vice President of Financial Control, and Mark Kisiel, Assistant Vice President of Financial Control also testified regarding this issue. Ms. Lombardozzi testified that on numerous occasions, Telatron pays for the expenses, debts and other costs of Creditron and its division, Academic Lending Center, and vice versa (Exhibit 6, deposition of Katherine Lombardozzi, pp. 11-13; 15-17; 20; 24-28; and 38-40); that such transfers/diversions of funds and repayment of funds from one entity to another are directed by Al Covatto (Exhibit 6, pp. 13-14; 29-30; 33; 53; 65); that the gross revenues which were generated under the parties' Agreement were wired directly into Creditron's bank account and that Mr. Covatto knew when these funds arrived (Exhibit 6, pp. 18-19; 54; 71-72); and that such funds provided by Brazos, at Mr. Covatto's discretion, would be diverted to either Creditron's, Telatron's or Academic Lending Center's individual bank accounts (Exhibit 6, pp. 18-20; 61-62; 64) Mr. Kisiel testified that the amount of the funds received from Brazos were compiled and totaled monthly in the Defendants' Cash Book, and that he managed a computer file reflecting these funds (Exhibit 7, pp. 9-10; 13-14; 36-37); that statements and balance sheets which showed these gross revenues were prepared monthly and provided to Al Covatto and Joyce Covatto (Exhibit 7, pp. 20-24; 31-

33); and that expenses of one of the defendant entities, on various occasions, were paid by another defendant entity at the direction of Al Covatto and that documentation existed to show such transfers of funds (Exhibit 7, pp. 17-18).

Finally, Delaware Marketing Partners, LLC paid more than its share of start up costs in connection with the Agreement. Under the Agreement, Delaware Marketing Partners, LLC agreed to pay $142,850.00 in start up costs. (Exhibit 1, Exhibit 001 ¶4) Defendants agree with the terms of the Agreement. (Exhibit 5, p. 47) However, Delaware Marketing Partners, LLC has incurred more than this amount and seeks reimbursement for the same.

Based upon the facts described above, plaintiff's Motion for Summary Judgment should be granted and judgment should be entered in favor of plaintiff and against defendants for 28.57% of all gross revenues received by defendants in connection with the student loan program after October 31, 2002, together with prejudgment interest and post judgment interest. Further, defendants should be required to reimburse plaintiff for the start up costs that it improperly incurred.

    **B.**     **Argument**

    **1.**     **The terms of the Agreement require that Delaware Marketing Partners be paid 28.57% of the gross revenues received by defendants.**

Pennsylvania law provides that the intent of the parties to a written contract is contained in the writing itself. *Krizovensky v. Krizovensky*, 425 Pa. Super. 204, 624 A.2d 638 (1993) (citing *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982)). "When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. (Citation omitted). Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Id*. (citing *D'Huy v. D'Huy*, 390 Pa. Super. 509, 568 A.2d 1289 (1990). *See also*, *Gemini Equip. v.*

7

*Pennsylvania Supply*, 407 Pa. Super. 404, 413, 595 A.2d 1211, 1215 (1991) ("[T]he written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements are admissible to explain or vary the terms of such a contract.").[3]  Furthermore, it is also well established that courts construe contracts against the drafting party.  *Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1203 (3d Cir. 1995) (if agreement is ambiguous it is to be construed "most strongly" against the party who drafted it); *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986); *See also  J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 682 (Pa. Super. 2002).  In this instance, the contract at issue was drafted by defendants.

  The parties have entered into a written contract which contains clear and unambiguous terms governing the parties' relationship.  This contract clearly provides that defendants were required to pay Delaware Marketing Partners, LLC 28.57% of all gross revenues that were received by defendants pursuant to the Agreement.  Defendants have acknowledged this to be the case, that this reflects the intent of the parties when entering the Agreement and that Delaware Marketing Partners was entitled to 28.57% of every wire transfer that was received by defendants beginning in October of 2002.

---

[3]  A contract will be found to be ambiguous:

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.  A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Krizovensky*, 624 A.2d at 642 (citing *Z&L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (1985)).

However, notwithstanding the clear terms of the agreement and the intent of the parties, defendants unilaterally decided to not pay Delaware Marketing Partners, LLC any of the gross revenues. In fact, not once during the term of the Agreement did the defendants pay to Delaware Marketing Partners, LLC 28.57% of the gross revenues. Mr. Covatto, the person who drafted the Agreement, admits that under the terms of the contract as written, defendants do not have the right to refuse to pay the 28.57% of gross revenue to Delaware Marketing Partners, LLC. Choosing to ignore the terms of the contract that defendants drafted, defendants simply did not pay Delaware Marketing Partners, LLC millions of dollars that would have otherwise been paid as a part of the 28.57% under the Agreement. Further, defendants caused Delaware Marketing Partners to perform work under the contract under the impression that it would be paid, even though defendants, in fact, had no intention of paying Delaware Marketing Partners for the work it performed. It is beyond dispute that defendants breached their Agreement with Delaware Marketing Partners, LLC and Delaware Marketing Partners, LLC is entitled to 28.57% of all gross revenues received by defendants in connection with the student loan program after October 31, 2002, together with prejudgment interest and post judgment interest regarding the same.

It is apparent that defendants will attempt to circumvent the clear terms of the contract with the intent to prevent this Court from entering summary judgment by introducing parole evidence. However, the relevance and introduction of such evidence is precluded by the integration clause in the Agreement, as well as the parole evidence rule. The written Agreement contains an integration clause which states that the written contract and any exhibits "contain the entire agreement ...." (Exhibit 1, ¶ 24) Such clauses are enforced under Pennsylvania law. *National Cash Register Co. v. Modern Transfer Co.*, 302 A.2d 486, 489 (Pa. Super. 1973) ("Our Supreme Court has upheld 'integration' or 'merger' clauses in contracts, and have refused to

admit parol or prior written agreements where the language of the contract is clear and unambiguous."); *McGuire v. Schneider, Inc.*, 534 A.2d 115, 117 (Pa. Super. 1987) ("The effect of an integration clause is to make the parol evidence rule particularly applicable.")

Additionally, "[t]he parol evidence rule 'forbids the introduction of parole evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purposes of varying or contradicting the terms of the a contract which both parties intended to represent the definite and complete statement of their agreement.'" *Davis v. Davis*, 422 Pa. Super. 410, 619 A.2d 743, 746 (1993). "[P]arol evidence is inadmissible to show a contemporaneous oral agreement which, if made, would naturally and normally have been contained in the written agreement between the parties." *Gemini*, 595 A.2d at 1215. Where the parties' agreement has been reduced to writing, the actual intent of the parties is not relevant unless it has been expressed in the writing. An unexpressed understanding of one of the parties to the agreement has no legal significance and cannot be utilized to defeat what is actually manifested in the written contract. *Krizovensky*, *supra*. (*citing Paull v. Pivar*, 53 A.2d 826 (1947); *Warren v. Greenfield*, 595 A.2d 1308 (1991). Parol evidence is not admissible to show an agreement which normally is found in the written instrument. *See*, *Gemini*, *supra*. Evidence as to preliminary negotiations or oral agreements and as to a prior or contemporaneous oral promise, representation or agreement are not admissible if it adds to, modifies, contradicts or conflicts with a written agreement which purportedly contains the entire agreement between the parties. *Lefkowitz v. Hummel Furniture Co.*, 385 Pa. 244, 247, 122 A.2d 802, 804 (1956).

Further, because defendants drafted the contract at issue, any ambiguity, if one exists, will be construed very strongly against defendants. *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa.

1986); *See also  J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 682 (Pa. Super. 2002).

Defendants assert that a condition precedent exists in the Agreement (Exhibit 1, Exhibit 001, ¶ 4) whereby payment to Delaware Marketing Partners, LLC is conditioned upon certain performance results that were not met, i.e., Delaware Marketing Partners, LLC allegedly not performing work according to certain standards, as well as certain amounts of monies not being generated under the Agreement through direct mail campaigns and customer lists.  (Exhibit 2, pp. 36, 37; Exhibit 3, p. 34; Exhibit 4, pp. 3, 13; Exhibit 5, pp. 29-30)  Such a condition precedent is not found anywhere in the Agreement.  This is admitted by Mr. Covatto, the person who authored the Agreement.  Now, because defendants, sophisticated business entities who entered into an arms length transaction with Delaware Marketing Partners, LLC, do not like the terms of the contract which they drafted, improperly seek to avoid the contract's obligations.  Defendants' assertions should be rejected and are not supported by the facts and law.  Judgment should be entered in favor of Delaware Marketing Partners, LLC.

  **2.  Delaware Marketing Partners, LLC should be reimbursed for start up expenses.**

Under the Agreement, Delaware Marketing Partners, LLC agreed to pay $142,850.00 in start up costs.  Defendants do not dispute these terms of the Agreement.  However, Delaware Marketing Partners, LLC paid more than this amount in start up costs in connection with the loan program.  Defendants are required to reimburse Delaware Marketing Partners, LLC for the start up costs that it improperly incurred and, for the reasons set forth above, judgment should be entered in favor of Delaware Marketing Partners, LLC.

### III. SUMMARY JUDGMENT REGARDING THE CLAIMS ASSERTED IN DEFENDANTS' COUNTERCLAIM

#### A. Statement of facts pertaining to defendants' Counterclaim.

On September 22, 2006, defendants filed a Counterclaim setting forth various causes of action against plaintiff, including breach of contract, mutual mistake of fact, fraud in the inducement and misappropriation of trade secrets. Defendants are seeking damages in excess of $16,000,000.00.

Defendants make many allegations in their Counterclaim which are not supported by the evidence that has been discovered in this matter. In fact, based upon the evidence, including the deposition of defendants' corporate representative for purposes of the Counterclaim, it is apparent that defendants' Counterclaim is based upon nothing more than irrelevant evidence beyond the terms of the Agreement between the parties, assumption and speculation and should be dismissed.

In paragraphs 4 and 5 of the Counterclaim defendants allege that Delaware Marketing Partners, LLC represented and warranted that each of the mail campaigns performed by it would consist of 200,000 solicitations, would result in gross revenues of $1,977,025.00, and that such mailings would be made on a monthly basis. (Counterclaim, ¶¶ 4, 5) However, discovery has revealed that defendants have no documents evidencing that the mailings would be done on a monthly basis. (Exhibit 8, p. 4) Defendants admit that the binding document between the parties is the Agreement itself. (Exhibit 8, p. 29) Further, defendants acknowledge that the contract does not require that mailings be made monthly. (Exhibit 8, p. 56) In addition, the entirety of the allegations found in this paragraph set forth duties that do not exist in the Agreement between the parties. Defendants admit that the documentation they claim contains pertinent

representations and warranties is not part of the Agreement between the parties. (Exhibit 8, pp. 17-18)

In paragraph 6 of the Counterclaim, defendants allege that Delaware Marketing Partners, LLC provided defendants with solicitation lists to be used for telemarketing, that Delaware Marketing Partners, LLC represented and warranted that the lists were of such a quality that 95% of the names on the lists were usable for calls, and that Delaware Marketing Partners, LLC represented that this would be indicative of the lists that would be provided in the future. (Counterclaim, ¶ 6) Defendants, however, in deposition were asked about the allegations in paragraph 6 of the Counterclaim and interrogatory answers regarding the same, and stated that defendants have no documentation regarding representations and warrantees made by Delaware Marketing Partners, LLC with respect to quality of lists. (Exhibit 8, pp. 5-7) Further, the no where in the Agreement between the parties does Delaware Marketing Partners, LLC state that the lists would remain at 95% usable quality. (Exhibit 1)

In paragraph 9 of the Counterclaim, defendants allege that they made capital investments and hired and trained personnel based upon promises made by Delaware Marketing Partners, LLC. (Counterclaim, ¶ 9) However, when questioned about the capital investments specifically, defendants stated that they could not ascertain what capital investments were made and only provide what they "might be;" that defendants cannot provide the date that any capital investment was made; and that defendants were not able to provide the amount of any capital investments. (Exhibit 8, pp. 8-9) In fact, defendants are not even certain which defendant incurred any alleged capital investment. (Exhibit 8, pp. 12-13) Defendants testified that possibly any purchase made could be a capital investment. (Exhibit 8, pp. 12-13) With respect to hiring and training personnel, defendants stated that, in reality, persons identified in discovery

to support this allegation were not in fact hired and trained to work solely in connection with telemarketing of student loan consolidations, but were hired to perform other functions as well. (Exhibit 8, pp. 18-25)  In fact, some of the persons identified by defendants to support their allegations were not hired and trained based on Delaware Marketing Partners, LLC's alleged representations.  Finally, defendants admit they are unable to identify the persons to support the allegations in their Counterclaim regarding these claims.  (Exhibit 8, p. 24)

In paragraphs 11 and 12 of the Counterclaim, defendants allege that they were harmed because Delaware Marketing Partners, LLC did not make monthly direct mail campaigns and that the two mail campaigns that were made did not consist of 200,000 mail solicitations. (Counterclaim, ¶¶ 11, 12)  When questioned about these allegations in discovery, defendants' representative stated that defendants, in fact, approved the direct mail campaigns prior to the mailings being sent, that the Agreement between the parties does not obligate Delaware Marketing Partners, LLC to send mail campaigns on a monthly basis, and that during performance of the contract defendants did not question Delaware Marketing Partners, LLC why such mailings did not occur on a monthly basis.  (Exhibit 8, pp. 35, 55-57)

In paragraphs 14, 15, 16 and 17 of the Counterclaim, defendants allege that Delaware Marketing Partners, LLC took steps to improperly compete with defendants in violation of the Agreement between the parties by the development of a competing business entity, by disclosing and utilizing proprietary and confidential information of defendants in furtherance thereof, and by abruptly terminating the Agreement between the parties.  (Counterclaim, ¶¶ 14, 15, 16, 17) During discovery, defendants admit, however, that the contract does not prohibit Delaware Marketing Partners, LLC or its principals from forming another company to compete with defendants, that defendants do not know of any confidential or proprietary information that

14

Delaware Marketing Partners, LLC disclosed or provided to others, and that defendants, in fact, voluntarily provided to Delaware Marketing Partners, LLC telemarketing scripts and training manuals (the information which defendants claim is confidential and proprietary). (Exhibit 8, pp. 30-33, 41) Defendants admit that they have no evidence, and nothing more than speculation and assumptions, with respect to their claims pertaining to wrongful use of confidential and proprietary business information. (Exhibit 8, p. 33) Defendants also acknowledge that Delaware Marketing Partners, LLC terminated the Agreement between the parties in January of 2004 because millions of dollars, that were owed and derived from the 28.57% under the parties' Agreement, had not been paid to Delaware Marketing Partners, LLC, that defendants did not make a good faith effort in the fall of 2003 to pay monies owed, and that Delaware Marketing Partners, LLC terminated the contract because monies had not been paid to it. (Exhibit 8, pp. 30-31, 57-61)

Finally, in paragraph 26 of the Counterclaim defendants allege that Delaware Marketing Partners, LLC conspired with others to develop and operate a business to compete with defendants. However, during deposition, defendants stated that they have no documents or other evidence to support the same. (Exhibit 8, pp. 48-51)

Based upon these facts found in discovery, it is clear that the factual underpinnings of defendants' Counterclaim are not supported by the evidence in this case. Defendants' Counterclaim should be dismissed.

 **B.**   **Argument**

  **1.**   **The terms of the contract prohibit defendants' Counterclaim.**

Pennsylvania case law regarding the enforcement of contractual provisions has been discussed herein at length at section II (B) (1) of this brief. Applying those principles it is

apparent that defendants cannot pursue their claims. Turning to the contract itself (Exhibit 1 and Exhibit 001 thereto) none of defendants' allegations regarding the 200,000 solicitations per month, the estimated gross revenues or the quality of the telemarketing solicitation lists are stated, or even referred to, by the terms of the contract. Nowhere in the written agreement does plaintiff represent or warrant that its mail campaigns would consist of 200,000 solicitations monthly; that gross revenues would amount to approximately $2 million per month; or that the telemarketing solicitation lists would remain at a 95% usability quality. In addition, defendants approved the direct mail campaigns prior to the mailings being sent. Simply put, the alleged promises and representations that defendants rely upon for their breach of contract claim are beyond, and not contained within, the express language of the contractual agreement and are not duties attributed to plaintiff under the clear terms of the contract. Defendants' allegations to the contrary have no basis in the contract between the parties, should not be enforced and cannot form the basis for a claim.

## 2. There is no evidence of record to support the allegations in the Counterclaim.

It is well established that a party cannot merely rely upon the allegations in his pleading to survive a motion for summary judgment and must set forth evidence showing there is a genuine issue for trial. Federal Rule of Civil Procedure 56(e); *Allianz Insurance Company v. Pennsylvania Orthopedic Associates, Inc. et al.*, 6 F.Supp.2d 424 (E.D. Pa. 1998); *Donahey v. Wellman*, 687 F.Supp. 195 (W.D. Pa. 1988). In this case, defendants have not provided any evidence with respect to the factual allegations and Delaware Marketing Partners, LLC's Motion for Summary Judgment should be granted.

Discovery has revealed that defendants are unable to identify or provide the amount of any capital investments made in reliance upon Delaware Marketing Partners LLC's alleged

representations. Further, defendants cannot even identify which defendant may have incurred a capital investment. Defendants' damages for capital investments should not be permitted and claims based upon the same should be dismissed.

In addition, defendants are unable to identify persons that they allege they hired to perform telemarketing of student loan consolidations in reliance upon Delaware Marketing Partners, LLC's alleged representations. In fact, defendants, in response to discovery requests, identified persons that they hired to perform tasks <u>not</u> associated with telemarketing of student loan consolidations to support their claims. Defendants' damages based upon costs for hiring and training persons should not be permitted and claims based upon the same should be dismissed.

Further, defendants admit that they have no evidence, and nothing more than speculation and assumptions, with respect to their claims pertaining to Delaware Marketing Partners, LLC's alleged wrongful use of confidential and proprietary business information. In addition, defendants admit that the parties' contract does not prohibit Delaware Marketing Partners, LLC or its principals from forming another company to compete with defendants, that defendants do not know of any confidential or proprietary information that Delaware Marketing Partners, LLC disclosed or provided to others, and that defendants, in fact, voluntarily provided to Delaware Marketing Partners, LLC telemarketing scripts and training manuals (the information which defendants claim is confidential and proprietary). Defendants also acknowledge that Delaware Marketing Partners LLC did not terminate the parties' contract to weaken defendants' competitive advantage. Defendants' damages based upon wrongful use of confidential and proprietary business information and unfair competition should not be permitted and claims based upon the same should be dismissed.

Further, defendants admit that they have no evidence to support the allegations that Delaware Marketing Partners, LLC conspired with others to develop and operate a business to compete with defendants. Defendants' damages based upon conspiracy should not be permitted and claims based upon the same should be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, Delaware Marketing Partners, LLC's Motion for Summary Judgment should be granted. Delaware Marketing Partners, LLC is entitled to 28.57% of all gross revenues received by defendants after October 31, 2002 in connection with the Student Loan Origination and Marketing Agreement between the parties, together with prejudgment interest and post judgment interest. Further, defendants should be required to reimburse Delaware Marketing Partners, LLC for the start up costs that it improperly incurred.

In addition, defendants' Counterclaim should be dismissed with prejudice.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By   s/ *Steven W. Zoffer*
  Steven W. Zoffer, Esq.
  PA. I.D. #62497
  szoffer@dmclaw.com
  Brett W. Farrar, Esq.
  PA. I.D. #79217
  bfarrar@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(412) 281-7272 Telephone
(412) 392-5367 Fax

Attorneys for Plaintiff