UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff | ) ) | C.A. No.: 04 - 263 Erie |
| v. | ) ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | ) ) ) ) | |
| Defendants | ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


I.      BACKGROUND

　　　　This action arises out of a Student Loan Origination and Marketing Agreement between the Plaintiff and the Defendants, which was executed on February 24, 2003 (the "Agreement").  Defendants are in the business of, among other things, finding customers for lenders.  In particular, on behalf of lenders, Defendants solicit people who have multiple student loans for the purpose of persuading them to secure a consolidation loan through these lenders. Defendants performed this service by engaging in telemarketing and mail solicitations.  Under the parties' Agreement, the Defendants hired the Plaintiff to perform two main tasks.  First, the Plaintiff was to obtain usable lists of names and telephone numbers to be used by Defendants in the telemarketing efforts.  This involved the Plaintiff's development and submission of list

selection criteria to ChoicePoint, a business which collects and sells data from credit bureaus. Second, the Plaintiff was to perform the mail solicitations, which involved obtaining mailing lists from ChoicePoint and dispatching the mail solicitations. Prior to the execution of the Agreement, Plaintiff wrote to Defendants to specifically describe the rate of return which Plaintiff's mail solicitations would produce. This statement was then relied upon by Defendants and led to their decision to hire Plaintiff.

Plaintiff terminated the Agreement on January 9, 2004 and filed this action alleging that, although it had fulfilled all of its obligations to Defendants, Plaintiff has not been paid in full. Defendants filed an Answer and later, an Amended Answer and Counterclaim asserting that Plaintiff did not perform as promised or as required and that Plaintiff had breached various provisions of the Agreement, including the non-compete and confidentiality provisions.

In Count I of the Counterclaim, it was alleged that the Plaintiff committed "various breaches of the contractual obligations owed by the Plaintiff to the Defendants." Count II alleged that the parties "were operating under a mutual mistake of fact regarding the revenues to be generated by the mail campaigns such that the terms and conditions of the contract were not enforceable against Defendants." In Count III, it was alleged that the Defendants had been induced into entering into the Agreement due to "Plaintiff's fraud and/or misrepresentations." Count IV alleged that the Plaintiff had "secretly conspired, planned and assisted others to develop and operate a business to compete directly with the Defendants" and that the Plaintiff had "utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and

the Plaintiff had failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply."

On October 6, 2006, the Plaintiff filed a motion to dismiss Defendants' counterclaim [Doc. 72] on the grounds that the counterclaim is barred by the statute of limitations and that the counterclaim fails to state a claim upon which relief can be granted. Defendants filed opposition papers, including an appendix with relevant record evidence and a brief. [Doc. 74]. The Plaintiff's motion to dismiss the counterclaim has not yet been resolved by the court. Thus, Plaintiff has not yet filed an answer to the counterclaim.

Nevertheless, on March 29, 2006, the Plaintiff filed a motion for summary judgment seeking the entry of judgment in its favor on the causes of action asserted in the complaint and against the Defendants on the causes of action asserted in the counterclaim.

Defendants respectfully file this brief in opposition to the Plaintiff's motion for summary judgment.

II.     DISCUSSION

   A.  Summary Judgment Must Be Denied as to Plaintiff's Complaint

In order to prevail on its contract claim, Plaintiff must prove "that all conditions precedent for performance were satisfied, and that defendant breached the agreement." Girard

Bank v. John Hancock Mutual Life Ins. Co., 524 F. Supp. 884, 891 (E.D. Pa. 1981), aff'd 688 F.2d 820 (3rd Cir. 1982). See also Mellon Bank v. Aetna Business Credit, Inc., 619 F.2d 1001, 1007 (3rd Cir. 1980) ("The generally accepted rule is that the burden of proof in regard to a condition precedent is on the party alleging the breach").

Plaintiff's summary judgment motion is based upon the faulty premise that there is no dispute that Plaintiff has fulfilled all of its obligations under the parties' Agreement. However, the Plaintiff has not offered any evidence to support the claim that all conditions precedent entitling it to payment have been satisfied. In fact, Plaintiff has not even made the effort to file the required Concise Statement of Material Facts in support of its motion. See W.D. Pa. L.R. 56.1. Rather than provide the evidence necessary to support its motion, Plaintiff devotes most of its brief to a discussion of the undisputed fact that Plaintiff has not been paid the amounts it would have received if it had actually performed all of its obligations. Additionally, Plaintiff expounds unnecessarily on the irrelevant fact that since Plaintiff had not earned payment in full, Defendants applied the funds it received to offset ongoing debts and obligations.[1]

Even more surprising, it seems that Plaintiff has taken the remarkable position that there was no condition precedent to Plaintiff's entitlement to payment. *Plaintiff's brief, p. 3, fn. 1*. (The Agreement does "not contain such a condition"). Apparently, the Plaintiff would have

---

[1] Plaintiff also asserts that it has not received in discovery the records "which show the actual amount of the gross revenues which the defendants received." *Plaintiffs' brief, p. 5, fn. 2*. This is untrue. Not only have Defendants produced records, but Plaintiff has subpoenaed Brazos for those records and received a detailed accounting of the same.

4.

this Court believe that there was no requirement that Plaintiff perform any services or, at least, that it perform any services of value in order to earn its payment.

It is clear, however, that it is the Defendants' position that the Agreement does impose substantial obligations upon Plaintiff and that the Plaintiff has not fulfilled those obligations which would entitle the Plaintiff to receive its full payment under the terms of the Agreement.

> As a condition precedent to any payment, Plaintiff is obligated to properly perform certain specified work and services. It is specifically denied that the Plaintiff has properly performed all of its obligations and duties in this regard.

*Amended Answer, ¶9. See also Amended Answer, ¶¶12-14 ("Plaintiff failed and refused to properly perform all of its obligations and duties under the parties' contract"); Third Defense ("the Plaintiff has failed to fulfill and satisfy all of the conditions precedent to any entitlement to payment under the parties' contract").*

The Agreement between the parties describes generally the work which the Plaintiff was required to perform in order to earn its payments. For instance, the Agreement states "Delaware Marketing shall be responsible for developing potential loan prospects through list sources, direct mail campaigns and advertising." *Agreement, ¶2*. Exhibit -001 of the Agreement provides additional detail regarding the work which Plaintiff would have to satisfactorily perform in order to earn its fee.

5.

>Delaware Marketing shall be responsible for the following:
>
>(1) "Prospect Lead Acquisition."  This includes the identification of name list sources for the purpose of FFELP student loan consolidations.
>
>(2) "Direct Mail Campaigns."  Delaware Marketing shall plan, develop, and implement direct mail campaigns consisting of name list procurement, data processing services (this includes list hygiene and suppressions), data append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.
>
>(3) "Credit Bureau Relationships."  Management of relationship with credit bureaus relative to prospect lead acquisition.
>
>(4) "Analyst Recommendations."  Campaign response analysis and recommendations.
>
>(5) "Marketing Plan Recommendations."  Delaware Marketing shall suggest and recommend methods and approaches relative to the academic lending overall marketing plan.
>
>(6) "Marketing Management Assignments."  Delaware Marketing shall accept and perform other reasonable marketing assignments from Telatron.

*Agreement, Ex. -001, ¶2.  See also Appendix Ex. 1, Trish DeSanti-Boehm depos., p. 23 (Plaintiff was hired by Defendants to perform "list acquisition analysis, direct marketing campaigns, advertise for ALC program"); p. 35 (This is the "work and services that Delaware Marketing Partners was obligated to perform as a condition precedent to their receiving 28.5% of the funds that academic lending sent or received").*

Defendants have alleged that the Plaintiff did not perform its work as promised or as required and that this lack of performance has resulted in substantial losses to the Defendants. For a detailed explanation of the calculation of these losses and of Plaintiff's failure to perform. *See* Appendix Ex. 2, Defendants' Answers to Plaintiff's Third Set of Interrogatories, No. 10.

The evidence of record also establishes the following details regarding Plaintiff's failure to satisfy its obligations under the Agreement.

> The prospect lead acquisition, it's true that they [Plaintiff] gave us leads. Our concern was that, beginning in April, 2003, the quality of those leads began to diminish. Additionally, as we hit around the September, October, November, December time frame, the quality of the leads deteriorated quite rapidly and quite significantly. So that would have been one issue.
>
> The second was the direct mail campaigns. We did two direct mail campaigns, neither of which came anywhere near the target that was projected to us. So, of course, that was an issue. As was the fact that there was no other direct marketing initiatives that took place after that.

*Trish DeSanti-Boehm depos., p. 25. See also Appendix Ex. 3, Alfred D. Covatto depos., p. 36 ("We didn't pay the 28.57% [to Plaintiff] because we didn't get – they [Plaintiff] didn't provide the services properly"); p. 48 ("On the direct mail campaign alone, they [Plaintiff] were short about $1.5 million" dollars); p. 96 ("Because the results were lower than was forecasted [by Plaintiff] . . . Defendants are not obligated to pay 28.5% of all gross revenue").*

7.

The Defendants also have provided specific information on the Plaintiff's failure to perform with regard to the procurement of marketable solicitation lists.

> The Plaintiff also breached its promises and obligations with regard to the quality of the telemarketing lists by providing to Defendants deficient lists of poor quality such that the usable name and telephone numbers declined from a pre-contract average of approximately 95% to a post-contract result of 53.3% for the lists supplied in April, 52.9% for the lists supplied in May, 57.5% for the lists supplied in July, 70% for the lists supplied in August, 35.2% for the lists supplied in September, 66.8% for the lists supplied in October and 40.5% for the lists supplied in December, 2003.

*Defendants' Ex. 2, Defendants' Answers to Plaintiff's Third Set of Interrogatories, No. 10.*

The evidence establishes that Plaintiff did not provide the nature or quality of services promised. At best, there clearly remains a genuine dispute of material fact regarding the Plaintiff's performance. Therefore, in either event, the motion for summary judgment must be denied.

Contrary to the Plaintiff's arguments, proof of the existence of conditions precedent are not barred by the parol evidence rule. As stated above, it cannot reasonably be disputed that the Plaintiff was required to perform substantial work in order to earn its payments under the Agreement. The contract itself identifies and describes the nature of the work which had to be faithfully and satisfactorily undertaken by the Plaintiff. Likewise, the Plaintiff's failure

to adequately and satisfactorily perform its work is not dependent upon proof which would be barred by the parol evidence rule.  For instance, although the contract is silent regarding the precise quality of the solicitation lists and the solicitation mailings to be performed by the Plaintiff, there were significant and undisputed pre-contract discussions regarding this very issue.  In fact, in an effort to persuade Defendants to enter into the agreement, Plaintiff presented a mathematical formula to calculate the revenues to be generated by Plaintiff's mailings.  This formula convinced Defendants that the monthly gross revenues would be such as to make this project a resounding financial success.  *Counterclaim, ¶¶4-7; Counterclaim Ex. B*.  It is now known, however, that Plaintiff's formula failed to include a component which, if applied, would have produced a 70% in the Plaintiff's gross revenue calculation.  *Appendix Ex. 4, Estes depos., pp. 47-49; Appendix Ex. 5, Metcalf depos. pp. 75-76*.  Thus, the Plaintiff informed the Defendants of its calculation of revenues, the Defendants were wrongly led to believe that the revenues would be 70% higher than the true and accurate formula would reflect.

       This type of evidence is not barred by the parol evidence rule because it does not *conflict* with any terms of the written Agreement.  The parol evidence rule is designed to prohibit the use of pre-contract communications to *contradict* the written words of the parties' contract.

> [W]here parties to an agreement commit their undertakings to a writing with intention that it shall formally and comprehensively evidence terms of their agreement, the writing, when executed, cannot thereafter be made subject to parol <u>alteration</u>, <u>contradiction</u> or <u>variance</u> by way of agreements or understandings had prior to or contemporaneously with the execution.

<u>International Milling Co. v. Hacmeister, Inc.</u>, 110 A.2d 186, 190 (Pa. 1955) (emphasis added).

Although the evidence establishes that the parties discussed such details, the written agreement between the parties is completely silent with regard to the specific characteristics which would make the Plaintiff's products and services of a marketable quality. Clearly, the parties intended for there to be some benchmark for the Plaintiff's performance. The parties' discussions served to fill in these details. See <u>Debackment Co. v. Anthony Pintto, Inc.</u>, 1993 WL 64620 (E.D. Pa. 1993) (parol evidence permitted where contract was silent on issue of price and profit margin); <u>Moyer v. Heilveil</u>, 49 A.2d 514, 515 (Pa. Super. 1946) (where "writing is silent, it is permissible to prove prior oral agreement which is 'not inconsistent with the writing and unaffected by it'"); <u>Yinger v. Youngman</u>, 30 Pa. Super. 139 (1905) (evidence of contemporaneous oral agreement is admissible where it relates to the matter concerning which the writing is silent). Thus, since proof of the Plaintiff's pre-contract representations and promises would not alter, contradict or vary any terms of the written agreement, such evidence is not barred. Therefore, summary judgment must be denied.

B.  Summary Judgment Must Be Denied as to the Counterclaim

Plaintiff's summary judgment motion on the Defendants' counterclaim does not present any arguments different than the arguments presented in the Plaintiff's motion to dismiss [Doc. 72].  Since Plaintiff's motion to dismiss has not been resolved by the Court and since the Plaintiff has not yet filed an answer to the counterclaim, the motion for summary judgment should be denied.  To the extent that the Court decides to consider this motion for summary judgment, Defendants hereby incorporate by reference their response and their brief in opposition to the motion to dismiss.  Based upon the authority and arguments set forth therein, the motion for summary judgment must be denied.

        Respectfully submitted,

        ELDERKIN, MARTIN, KELLY & MESSINA

        By   /s/ Craig A. Markham
            Craig A. Markham, Esquire
            Attorney for Defendants
            150 East Eighth Street
            Erie, Pennsylvania 16501
            (814) 456-4000