**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELAWARE MARKETING** | ) | |
| **PARTNERS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **C.A. No. 04-263 Erie** |
| | ) | **District Judge McLaughlin** |
| **CREDITRON FINANCIAL SERVICES,** | ) | **Magistrate Judge Baxter** |
| **et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION____**

It is respectfully recommended that Plaintiff's motion to dismiss Defendants' counterclaim [Document # 72] be granted in part and denied in part. Specifically, the motion to dismiss should be:

A)    granted as to the portion of Count I - breach of contract pertaining to the frequency of mailing and the quality of the solicitation lists, but denied as to the violations of the confidentiality clause and the covenant not to compete;

B)    granted as to Count II - mutual mistake for failure to state a claim;

C)    granted as to Count III - fraudulent inducement as the claim is time-barred; and

D)    denied as to both the contract and tort prongs of Count IV - misappropriation of trade secrets.

It is further recommended that Plaintiff's motion for summary judgment [Document # 86] be granted in part and denied in part. More specifically, the motion should be:

A)    denied as to the single count alleged in the complaint; and

B)    granted as to the claims alleged in Defendants' counterclaim.

The only claim remaining after the resolution of these pending motions is the single count alleged in the complaint.

1

**II.    REPORT**

    **A.    Relevant Procedural History**

This is a breach of contract action arising out of a Student Loan Origination and Marketing Agreement (the "Agreement") executed between Plaintiff and Defendants on February 23, 2003.[1]  Defendants Creditron Financial Services and Telatron Marketing Group are in the business of locating customers for lenders  for the purpose of issuing new consolidation loans on existing student loans.  Under the Agreement, the work to be performed by Plaintiff included:

> a) obtaining lists of names, addresses and telephone numbers to be used by the Defendants for telemarketing solicitations of borrowers for student loan consolidations and b) the planning, development and implementation of direct mail campaigns for solicitation of borrowers for student loan consolidations, which work also included obtaining lists of names and addresses to be used for the mailings.  Under the terms of the contract, the Plaintiff also was obligated to manage a relationship with credit bureaus relative to obtaining solicitation lists and analyzing the results of the mailing campaigns.

Document # 70, Counterclaim, ¶ 3.

Plaintiff unilaterally terminated the Agreement by letter on January 9, 2004 [Document # 70, ¶ 15] and filed this breach of contract action a week later on January 16, 2004, alleging nonpayment by Defendants.  As relief, Plaintiff seeks approximately $834,000 under the contract.  Plaintiff filed the complaint in the instant action in the U.S. District Court for the District of Delaware.  Thereafter, the case was transferred to this Court.

On October 13, 2004, Defendants filed an Answer [Document # 31] and almost two years later, on September 22, 2006, Defendants filed an Amended Answer with a Counterclaim. Document # 70.  At Count I of the Counterclaim, Defendants allege that Plaintiff committed "various breaches of the contractual obligations owed by the Plaintiff to the Defendants." Document # 70, ¶ 20.  At Count II, pled alternatively to Count I, Defendants allege that the parties "were operating under a mutual mistake of fact regarding the revenues to be generated by

_____

[1]  The record reflects that the parties had dealings with each other as early as October of 2002.  Document # 86-5, Deposition of Joyce Covatto, page 5.

the mail campaigns such that the terms and conditions of the contract were not enforceable against Defendants." Id. at ¶ 22.  At Count III, Defendants allege that they were induced into entering into the Agreement due to "Plaintiff's fraud and/or misrepresentations." Id. at ¶ 24.  At Count IV, Defendants allege that Plaintiff "secretly conspired, planned, and assisted others to develop and operate a business to compete directly with the Defendants" and that Plaintiff had "utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and the Plaintiff had failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply." Id. at ¶¶ 26, 27.  As relief, Plaintiff seeks over sixteen million dollars in damages and/or rescission of the contract.

**B.    Current Procedural Posture**

This case is currently in an unusual procedural posture.  There are two dispositive motions both filed by Plaintiff presently pending before this Court.  First is Plaintiff's motion to dismiss (or alternatively for summary judgment) against the counterclaim based on statute of limitations and failure to state a claim [Document # 72], to which  Defendants have filed an Opposition Brief [Document # 74].  Because the parties have submitted evidence in support of and in opposition to the motion to dismiss, this Court has converted parts of the motion to a motion for summary judgment.  Also pending is Plaintiff's motion for summary judgment [Document # 86] to which Defendants have filed an Opposition Brief [Document # 88]. Defendants have not cross-moved for summary judgment.

In the interests of judicial economy and for the convenience of the parties, this Court is issuing a joint Report and Recommendation on the two pending motions.

**C.    The Standards of Review**

**1.    Motion to dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

complaint must be accepted as true. <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. <u>Neitzke</u>; <u>Scheuer v. Rhodes</u>, 419 U.S. 232 (1974). Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. <u>Neitzke</u>; <u>Scheuer</u>. Under this "notice pleading," the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

### 2.    Motion for summary judgment

Because the parties have submitted exhibits in support of and in opposition to the pending motion to dismiss, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. <u>See</u> <u>Burns v. Harris County Bail Bond Bd.</u>, 139 F.3d 513, 517 (5th Cir.1998) ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); <u>Greer v. Smith</u>, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the

4

District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion

for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

> **D.**     **Plaintiff's motion to dismiss (or alternatively for summary judgment) relating to  the Counterclaim**
>
> **1.**     **Count I - breach of contract**

Count I of the counterclaim is a breach of contract claim made up of two separate and distinct components.  Defendants allege that Plaintiff breached the contract: 1) by not conducting a monthly mailing of 200,000 solicitations and by producing solicitation lists of an inferior quality; and 2) by entering into direct competition against it in the formation of a new business.  The motion to dismiss only addresses the first prong of this Count.

The contract itself [2]  is silent as to the frequency of mailings or the quality of the

---

[2]  In pertinent part, the contract reads:

>  1.a.    Delaware Marketing shall be responsible for the following:
>
>  (1) Prospect Lead Acquisition.  This includes the identification of name list sources for the purpose of FFELP Student Loan Consolidations.

solicitation lists.   Ordinarily, Pennsylvania law provides that the intent of the parties to a written contract is contained within the writing itself.[3]  Krizovensky v. Krizovensky, 624 A.2d 638 (Pa. Super. 1993).  "Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement."  The York Group, Inc. v. Yorktowne Caskets, Inc., ___ A.2d ___, ___, 2007 WL 1176192, at * 11 (Pa.Super. April 23, 2007) quoting Glassmere Fuel Service, Inc. v. Clear, 900 A.2d 398, 402 (Pa.Super. 2006).  Further, "all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence."  Id.

In order for this so-called parol evidence rule to apply to an agreement, "there must be a writing that represents the 'entire contract between the parties.'"  Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority, 916 A.2d 1183, 1189 (Pa.Super., January 30, 2007) quoting Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-37 (Pa. Supreme 2004).  The Pennsylvania Supreme Court has specifically held that  "an integration clause which states that a writing is meant to represent the parties' entire agreement is ... a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and

---

<blockquote>(2)Direct Mail Campaigns.  Delaware Marketing shall plan, develop, and implement direct mail campaigns consisting of name list procurement, data processing services (This includes list hygiene and suppressions), date append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.</blockquote>

Document # 72-2, page 10.

[3]  Because Defendants drafted the contract at issue, ambiguity, to the extent it exists, will be construed against the Defendants, as the drafters.  See Rusiski v. Pribonic, 515 a2 507, 510 (Pa. 1986); J.W.S. Delavau, Inc., v. Eastern America Transport and Warehousing Inc., 810 a2 672, 682 (Pa. Super. 2002).

agreements made prior to its execution." Id. "Once a writing is determined to be the parties'
entire contract, the parol evidence rule applies and evidence of any previous oral or written
negotiations or agreements involving the same subject matter as the contract is almost always
inadmissible to explain or vary the terms of the contract." Id.[4]

The contract at issue here contains such an integration clause, which specifically states
that "this instrument and any exhibits hereto contain the entire agreement between the parties."
Document # 72-2. This integration clause expresses the intent and agreement of the parties to be
bound by the terms of the written contract and this Court will honor that intent. Nowhere in the
written agreement does Plaintiff represent that its mail campaigns would consist of 200,000
solicitations per month or that the telemarketing solicitation lists would be at a 95% usability
quality. None of the alleged representations that Defendants rely upon for this breach of
contract claim are contained within the contractual agreement and under the parol evidence rule,
this Court cannot look outside the four corners of the written agreement.

Defendants attempt to argue that this Court should apply the doctrine of necessary
implication and good faith, an exception to the parol evidence rule. The doctrine of necessary
implication provides that "in the absence of an express provision, the law will apply an
agreement by the parties to a contract to do and perform those things that according to reason
and justice they should do in order to carry out the purpose for which the contract was made and
to refrain from doing anything that would destroy or injure the other party's right to receive the
fruits of the contract." Glassmere Fuel Service, Inc. v. Clear, 900 A.2d 398, 402-03 (Pa. Super.
2006). Further,

> A court may imply a missing term in a parties' contract only when it is necessary
> to prevent injustice and it is abundantly clear that the parties intended to be
> bound by such term. A court should only imply a term into a contract where it is

---

[4] "Only where a contract's language is ambiguous may extrinsic or parol evidence be
considered to determine the intent of the parties." Ferrer v. Trs. of the Univ. of Pa., 825 A.2d
591, 608 (2002). "[W]hen the language is ambiguous and the intention of the parties cannot be
reasonably ascertained from the language of the writing alone, the parol evidence rule does not
apply to the admission of oral testimony to show both the intent of the parties and the
circumstances attending the execution of the contract." Dewitt v. Kaiser, 484 A.2d 121 (1984).

clear that the parties contemplated it or that it is necessary to imply it to carry out the parties intentions.

Id. quoting Solomon v. U.S. Healthcare Systems of Pa., Inc., 797 A.2d 346, 350 (Pa. Super. 2002) and Slater v. Pearle Vision Center, Inc., 546 A.2d 676, 679 (Pa. Super. 1988).

This Court is unpersuaded by Defendants' argument for the application of this doctrine of necessary implication. This Court will not imply terms as to the frequency of the mailings and the quality of solicitation lists when the contract itself is silent on the matter and gives no further indication that the parties intended to be contractually bound in this way.

Accordingly, the motion to dismiss Count I for breach of contract pertaining to the frequency of the mailings and the inferior quality of the solicitation lists should be granted for failure to state a claim. To the extent that Count I contains a breach of contract claim for violation of the confidentiality clause as well as the covenant not to compete, that claim survives the motion to dismiss.

### 2.    Count II - Mutual Mistake

Next, Plaintiff moves for dismissal of Count II based on the grounds of mutual mistake of fact. Count II is pled in the alternative to Count I and explains: "the parties were operating under a mutual mistake of fact regarding the revenues to be generated by the mailing campaigns and/or the telemarketing calls such that the terms and conditions of the contract are not enforceable against Defendants." Document # 70, ¶ 22. As relief for this claim, Defendants seek rescission or alternatively, monetary damages. Id.

Pennsylvania follows the Restatement (Second) of Contracts in determining whether a mutual mistake of fact exists, the remedy for which is rescission or reformation of the contract. Travelers Indem. Comp. v. Ballantine, 436 F.Supp.2d 707, 711 (M.D. Pa. 2006). Under the Restatement, the doctrine of mutual mistake will apply only where the mistake: (1) relates to the basis of the bargain; (2) materially affects the parties' performances; and (3) is not one as to which the injured party bears the risk. Consol. Rail. Corp. v. Portlight, Inc., 188 F.3d 93, 96 (3d

Cir. 1999) <u>citing</u> <u>Restatement (Second) Contracts, § 152 (1981)</u>.

"Mutual mistake exists where the parties were mistaken as to an existing material fact at the time their contract was executed." <u>Adapt of Philadelphia v. Philadelphia Housing Authority</u>, 2005 WL 3274331, at *25 (E.D.Pa., 2005) <u>quoting</u> <u>Consol. Rail.</u>, 188 F.3d at 96. Among other requirements, the mistake must relate to the basis of the agreement and must materially affect the parties' performance. <u>Id.</u> The Restatement itself defines the term "mistake":

> A mistake is a belief that is not in accord with the facts. [...] In this Restatement the word "mistake" is used to refer to an erroneous belief. A party's erroneous belief is therefore said to be a "mistake" of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives. The word "mistake" is not used here, as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief. This usage is avoided here for the sake of clarity and consistency. Furthermore, the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined here. An erroneous belief as to the contents or effect of a writing that expresses the agreement is, however, a mistake.

<u>Restatement § 151</u>, comment a.

However, "erroneous predictions of future events do not qualify as a mistake." <u>Consol. Rail.</u>, 188 F.3d at 96. Further, "a party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' [...]. Consequently, neither disappointed expectations as to future events, nor mistakes of judgments or belief in that regard, state any claim for relief based on mutual mistake." <u>M. Leff Radio Parts, Inc. v. Mattel, Inc.</u>, 706 F.Supp. 387, 398 (W.D. 1988) <u>quoting</u> <u>Baker v. Pennsylvania Mutual Life Insurance Comp.</u>, 788 F.2d 650, 662 (10th Cir. 1986) and <u>Haas v. Pittsburgh National Bank</u>, 495 F.Supp. 815, 817 (W.D. Pa. 1980).

Because "disappointed expectations as to future events," such as the allegedly projected revenue here, cannot form the factual basis of mutual mistake, Defendants have failed to state a cognizable claim in this regard. Accordingly, the motion to dismiss should be granted as to Count II.

### 3.    Statute of limitations

Finally, Plaintiff argues that Count III and Count IV are barred by the applicable statute of limitations.

### a.    Count III - Tort of Fraudulent Inducement[5]

At Count III of the counterclaim, Defendants allege that prior to the signing of the contract at the end of February of 2003, Plaintiff made certain written representations and promises to Defendants regarding the revenue to be produced as a result of Plaintiff's work in the direct mailing solicitations.  Allegedly Plaintiff further indicated that it would make such mailings on a monthly basis and would thus generate a projected gross income monthly. Document # 70, ¶ 5.   Specifically, according to Defendants, Plaintiff represented and warranted that each of the direct mailing campaigns, consisting of 200,000 solicitations per campaign, would result in gross commission revenues of almost two million dollars.  Document # 70, ¶ 5, and Exhibit B, Email dated January 7, 2003 from Alan Estes to Terry Smith of Defendant Telatron.  Plaintiff indicated that this estimate of revenue was "fairly conservative".  Id. Defendants further allege that prior to the signing of the contract, Plaintiff provided Defendants with solicitation lists to be used for telemarketing purposes.  These sample lists were of a very high quality (95% usability) and Plaintiff represented that these lists were indicative of the quality of the lists Plaintiff would continue to provide under the contract.  Id. at ¶ 6.

After the signing of the contract, Plaintiff did not make monthly mailings, but instead made only two mailings between February of 2003 and January of 2004.  Both mailings fell

---

[5]  Under Pennsylvania law, the elements of the tort of fraudulent inducement are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury that was proximately caused by the reliance."   Academy Plaza L.L.C.1 v. Bryant Asset Management, 2006 WL 1652687, at * 5 (Pa.Com.Pl., 2006), quoting Eigen v. Textron Lycoming Reciprocating Engine Division, 874 A.2d 1179, 1185 (Pa. Super. 2005).

significantly short of the promised number.  The first mailing in March of 2003 consisted of 129,760 solicitations (as opposed to the 200,000 represented by Plaintiff in the email).[6]  The second mailing in June of 2003 consisted of only 70,000 solicitations (as opposed to the 200,000 represented by Plaintiff in the email).[7]  Id. at ¶ 11.

Defendants' claim of fraudulent inducement is governed by Pennsylvania's two-year statute of limitations, which provides:

> The following actions and proceedings must be commenced within **two years**:
>
> \*                    \*                    \*
>
> Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, **including deceit or fraud**, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S.A. § 5524(7)(emphasis added).  Here, Defendants filed the counterclaim on September 22, 2006, which is more than two years from the representations at issue which were made prior to the signing of the contract in February of 2003.

However, the counterclaim is not automatically time-barred because it was filed over two years after the alleged representation was made.  This Court must examine tolling principles to determine if this otherwise time-barred claim may be saved from dismissal.  See Beautytime v. VU Skin Systems, 118 F.3d 140, 144 (3d Cir. 1997) ("Because we look to state law for the appropriate statute of limitations, we also look to Pennsylvania law on the closely related questions of tolling and application.").

One such exception to the statute of limitations is the discovery rule.  "The discovery rule applies [...] when the underlying cause of action sounds in fraud, and that the statute of limitations is tolled until the plaintiff learns or reasonably should have learned through the

---

[6] Using Plaintiff's revenue formula, this mailing should have produced gross revenues of approximately 1.2 million dollars.  Instead, the mailing produced approximately $326,000. Id. at ¶ 11.

[7] Again, using Plaintiff's formula, this mailing should have produced almost $700,000 but instead produced only $152,000.  Id. at ¶ 11.

exercise of due diligence of the existence of the claim." Id. at 148.  The discovery rule "is premised on the concept that where the existence of an injury is not apparent or where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known or discoverable by the exercise of reasonable diligence." Ward v. Rice, 828 A.2d 1118, 1121 (Pa.Super. 2003) citing Ayers v. Morgan, 397 Pa. 282 (1959).

Under Pennsylvania law, a plaintiff is expected to exercise reasonable diligence to ascertain the existence and cause of an injury.  Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1281 (3d Cir. 1991) ("To continue to benefit from tolling, a plaintiff must exercise reasonable diligence.").  Reasonable diligence has been defined as:

> A fair, proper and due degree of care and acting, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity... there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and suggest investigation.  Plaintiffs need not know that they have a cause of action or that the injury was caused by another party's wrongful conduct, for once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.

McCloskey v. Novastar Mortgage, Inc., 2007 WL 320287 (E.D. Pa. 2007).  "An assessment of whether a plaintiff has exercised 'reasonable diligence' in protecting her own interest requires an evaluation of [her] actions to determine whether she exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'"  Ward v. Rice, 828 A.2d 1118, 1122 (Pa. Super. 2003) quoting Restatement (Second) Torts, § 283, Comment b.

In support of its motion to dismiss, Plaintiff argues that Defendants' claim for fraudulent inducement accrues "when a plaintiff is damaged, not when the precise amount or extent of the damage is realized"; to wit, Defendants suffered their damages in 2003 when the revenues were far below that which Plaintiff had predicted prior to the signing of the contract and that should have started the statute of limitations running.  In Opposition, Defendants argue that although they knew in 2003 that they were experiencing lower-than-expected revenue, they did not recognize the nature of Plaintiff's misrepresentations because they did not learn that Plaintiff's

revenue calculation formula was defective until May 18, 2006, during discovery in this case. Specifically, Defendants argue that during the depositions of Harry Metcalfe and Alan Estes (employees of Plaintiff Delaware Marketing), it became clear that the mathematical formula used to induce Plaintiff into signing the contract was "seriously flawed."  Document # 74, page 7.

Defendants argue that the misrepresentation at issue here is the mathematical formula provided by Plaintiff to calculate the revenues to be generated by the monthly mailings. Defendants explain that

> the formula convinced Defendants that the monthly gross revenues would be such as to make this project a resounding financial success.  It is now known to Defendants that Plaintiff's formula failed to include a component which, if applied, would produce a 70% reduction in the gross revenue calculation.  Thus, when Plaintiff applied its erroneous calculation to the monthly solicitation mailings, Defendants were led to believe that the revenues would be 70% higher than the true formula would reflect.

Document # 74, page 4.

Defendants' reliance on the relatively recent discovery of the allegedly fraudulent revenue calculation in order to overcome the statute of limitations problem is too fine a point upon which to rest their equitable tolling argument.  As of at least the end of April of 2003, Defendants were on notice that Plaintiff was not living up to its pre-contract promises of a **monthly** mailing with the resulting revenues.  Based on those pre-contract inducements, by the end of April, Plaintiff should have conducted at least two monthly mailings (for March and April) totaling 400,000 solicitations and producing the projected almost 4 million dollars in revenue.  Instead, according to Defendants' counterclaim, Plaintiff had only conducted one mailing of 129,760 solicitations which produced only $326,000 in revenue.[8]  This drastic failure to meet expectations should have triggered Defendants to exercise some amount of  reasonable diligence to investigate the source of that failure.  The record reflects that Alfred Covatto, President of Defendant Creditron, was "having difficulty with the numbers" of the mailings as early as March of 2003.  Document # 86-

---

[8]  By the end of May, Plaintiff should have mailed 600,000 solicitations and produced almost 6 million dollars in revenue.  Instead, no May mailing occurred meaning that by the end of May, Plaintiff had still only produced 129,760 mailings and $326,000 in revenue, a fraction of the Defendants' expected revenue at this point in time.

4, Deposition of Alfred Covatto, page 11. Defendants did nothing for over eight months and so they cannot now benefit from the tolling of the statute of limitations. See Keystone Driller Comp. v. General Excavator Comp., 290 U.S. 240, 241 (1933) ("He who comes into equity must come with clean hands.").

Accordingly, the fraudulent inducement claim at Count III should be barred by the statute of limitations.

### 1)    Recoupment

Alternatively, Defendants argue that the statute of limitations should not apply to Count III because the fraudulent inducement is a claim for recoupment and, as such, is not subject to any statute of limitations.

Recoupment is a counterclaim in which a defendant sets up a claim owed to him by the plaintiff. Recoupment is a purely defensive matter growing out of a transaction constituting plaintiff's cause of action, is available only to reduce or satisfy plaintiff's claim, and does not permit affirmative judgment for defendant. In re Grayboyes, 2006 WL 43754, at * 3 (E.D.Pa., 2006). A counterclaim in the nature of recoupment is never barred by the statute of limitations so long as the main action itself is timely. See Bull v. United States, 295 U.S. 247, 262 (1935). However, affirmative counterclaims may not be instituted after the applicable period of the statute of limitations has expired because such claims are regarded as independent causes of action. Thus, where a counterclaim seeks to assert a separate cause of action for an independent wrong, it generally may not be instituted after the applicable statute of limitations has expired. This rule applies to both counterclaims asserted in a party's initial answer and attempts to set up a counterclaim by way of a motion to amend an answer.

According to the Pennsylvania Supreme Court:

> Under [the doctrine of recoupment] a defendant is entitled to claim, by way of deduction, all just allowances or demands, accruing to him in respect of the same transaction that forms the ground for the action. This is not a setoff ... in the strict sense, because it is not in the nature of a cross demand, but rather it lessens or defeats any recovery by the plaintiff. It goes to the existence of plaintiff's claim, and is limited to the amount thereof ... Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of

> action it may be barred by limitation. The defense of recoupment, which arises
> out of the same transaction as plaintiff's claim, survives as long as the cause of
> action upon the claim exists. It is a doctrine of an intrinsically defensive nature
> founded upon an equitable reason, inhering in the same transaction, why the
> plaintiff's claim in equity and good conscience should be reduced.

Household Consumer Discount Company v. Vespaziani, 415 A.2d 689, 694 (Pa. Supreme

1980).[9]

Here, while the counterclaim for fraudulent inducement does arise out of the same series

of transactions between the parties, Defendants seek affirmative relief in the amount of over

sixteen million dollars, well beyond Plaintiff's claim for approximately eight hundred thousand

dollars for nonpayment under the contract. Based solely on the relief requested, Defendants'

counterclaim is much more than a mere deduction against Plaintiff's claim. Additionally,

Defendants have introduced an entirely new cause of action - the tort of fraudulent inducement -

as opposed to the original claim. Count III is not a claim for recoupment, and therefore is

subject to the two-year statute of limitations. As such, it is time-barred, and the motion for

summary judgment should be granted as to this claim.

---

[9] Importantly, recoupment is not the equivalent of a setoff:

> Recoupment differs from setoff mainly in that the claim must grow out of the
> identical transaction that furnishes the plaintiff's cause of action and, being in the
> nature of a claim of right to reduce the amount demanded, can be had only to an
> extent sufficient to satisfy the plaintiff's action. In other words, recoupment
> going to the justice of the plaintiff's claim, and no affirmative judgment can be
> had thereon, while setoff is not necessarily confined to the justice of such
> particular claim, and an affirmative judgment may be had for any amount to
> which the defendant establishes his right over and above the amount to which the
> plaintiff has proved he is entitled. Recoupment is not merely a cross action, as is
> a setoff. It does not confess the indebtedness alleged in the complaint, as is
> understood by a setoff, but its proposition is that the plaintiff's claim is based on
> a particular contract or transaction and that to entitle the plaintiff to the sum
> claimed, he must prove compliance with certain obligations of the contract; that
> he has failed to do so, and therefore that the defendant has been so damaged in
> the transaction that the plaintiff is not entitled to recover.

Household Consumer, 415 A.2d at 694.

b.    **Count IV**[10]

At Count IV of the counterclaim, Defendants allege that

> 26.    Plaintiff secretly conspired, planned and assisted others to develop and operate a business to compete directly with the Defendants.

> 27.    As part of this conspiracy, the Plaintiff utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and the Plaintiff failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply.

Document # 70, page 14, Count IV in its entirety. Defendants allege that Plaintiff began taking these measures "no later than October of 2003." Id. at ¶ 14.

Plaintiff characterizes this claim as one for the misappropriation of trade secrets and moves for its dismissal under the two-year statute of limitations. Document # 73. In Opposition, Defendants make three arguments in an attempt to avoid dismissal of this claim: first, like Count III, that they did not discover the factual basis of the claim until May 18, 2006, during deposition; second, and alternatively, that Count IV is not limited to the tort of misappropriation of trade secrets but also includes a breach of contract claim relating to the confidentiality and non-compete clauses of the agreement triggering a longer (four year) statute of limitations; and, third, and alternatively, Count IV is a claim in the nature of recoupment and is not subject to any statute of limitations. The parties make much of the characterization of Count IV as a contract claim versus a tort claim due to the differing statutes of limitations.[11]

To the extent that the claim in Count IV may be characterized as a tort claim for misappropriation of trade secrets, it is subject to the shorter two-year statute of limitations under

---

[10]    Defendants have not specifically entitled this claim.

[11]    Pennsylvania has a four-year statute of limitations on contract claims (State Farm Mut. Auto. Ins. Company v. Rosenthal, ___ F.3d ___, 2007 WL 1160782 (3d Cir. April 20, 2007); 42 Pa. Cons.Stat. § 5525(a)(8)), while the tort claim is subject to a two-year statute of limitations period, as discussed above.

Pennsylvania law. 42 Pa.Cons. Stat. Ann. § 5524.[12]  Here, Defendants filed the counterclaim on September 22, 2006, which is more than two years from the latest of the dates of the alleged misappropriation in October of 2003.  Again, Defendants argue for the application of the discovery rule to equitably toll the statute of limitations.

Defendants argue that Plaintiff misappropriated information to create and develop a competing business entity and Defendants did not discover the alleged misappropriation until May 18, 2006, during the depositions of Plaintiff's employees Metcalfe and Estes.  In Opposition, Plaintiff argues that Defendants were on notice of "suspicious activity" as early as October of 2003.  In this regard,  Plaintiff points to the deposition testimony of Terry Smith, an employee of Defendant Telatron, who testified that Plaintiff's requests for certain information raised suspicions in late 2003:

> There were great suspicions there were other things going on.
> * * *
> Harry [Metcalfe] was asking for things that were sending up some major red flags ... he asked for our training materials, our scripting, access to the do not call.
> * * *
> I definitely viewed it [the requests for information] as [a] red flag. ... that Harry would be requesting these types of things this far into the relationship, we became suspicious something else was going on.

Document # 74-5, pages 3-5.  See also Document # 86-9, Deposition of Defendants's employee Trisha DeSanti-Boehm, page 20 ("in September of 2003, we received a curious call from Harry [Metcalfe] where he was asking us for our training materials and our scripts, and they were telling us that they were bringing somebody new on board.  So that kind of raised a red flag for us at that point in time.").

Smith also testified that Metcalfe explained that the requested materials and information

---

[12]  The Uniform Trade Secrets Act, 12 Pa.C.S.A. § 5301, et seq., providing for a three-year statute of limitations period is not applicable here as the Act was enacted on April 14, 2004, and "does not apply to misappropriations occurring before the effective date of the Act, including a continuing misappropriation that began before the effective date and continues after the effective date."  Highland Tank & Manufacturing Company v. PS Intern., Inc., 393 F.Supp.2d 348, 353 (W.D. Pa. 2005).  According to Defendants, the misappropriation alleged here occurred "no later than October of 2003."  Document # 70, ¶ 14.

were necessary in order to train a new employee.  Meanwhile, in actuality, the record reflects that during this time period Plaintiff organized K2 Financial Corp.[13], a company allegedly in direct competition with Defendants[14].  Document # 74-3, Deposition of Alan Estes, pages 6-8.  K2 Financial began developing contractual relationships with telemarketing vendors and list providers around December of 2003 [Document # 74-4, Deposition of Harry Metcalfe, page 6], but the contractual relationship between Plaintiff and Defendants was not terminated (unilaterally by Plaintiff) until January of 2004.

Plaintiff may not come into court now and claim the statute of limitations as a defense if it acted to conceal the commission of the tort.  See Ward v. Rice, 828 A.2d 1118, 1123 (Pa. Super. 2003) ("[I]f, through fraud, deception or concealment of facts, [a party] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [that party] is estopped from evoking the statute [of limitations].");  DeMartino v. Albert Einstein Medical Center, Northern Division, 460 A.2d 295, 300-01 (1983) (in the absence of fraud or concealment the statute of limitations begins to run when a tort is ascertainable; if, however, "though fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from involving the bar of the action.").

Defendants should be allowed to present this tort claim to a jury as a jury should make the determination as to whether Defendants exercised reasonable diligence in determining the factual basis of this claim.  See Ward, 828 A.2d at 1120 ("ordinarily most questions relating to the applicability of the defense of the statute of limitations are questions of fact to be determined by the jury.  Specifically, the questions of whether a [party] has exercised due diligence in discovering the incidence of his injury is usually a jury question.").  Accordingly, Count IV of

---

[13]  K2 Financial Corp. was formed in October of 2003.  Document # 74-3, Deposition of Estes, page 3; Document # 74-4, Deposition of Metcalfe, page 4.

[14]  See section E.2. infra.

19

the counterclaim survives the motion to dismiss.[15]

### 4.    Summary of Motion to dismiss

So then, in summary, the portion of Count I for breach of contract pertaining to the violation of the confidentiality clause and the covenant not to compete and Count IV for misappropriation of trade secrets sounding in both contract and tort should survive the motion to dismiss.

Following a lengthy period of discovery, Plaintiff recently moved for summary judgment, both as to the complaint and as to the claims raised against it in the counterclaim. Defendants have not cross-moved for summary judgment. The pending motion is ripe for disposition by this Court.

### E.    Plaintiff's motion for summary judgment

### 1.    relating to Plaintiff's complaint

Plaintiff moves for summary judgment arguing that there is no material issue of fact[16] that

---

[15]  To the extent that Count IV is a contract claim, Defendants' counterclaim was filed on September 22, 2006, and the claim arose no later than October of 2003, so the claim was filed within the four-year statute of limitations period. This Court need not address Defendants' alternative argument relating to recoupment.

[16]  A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the moving party, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

Defendants owe 28.57% of the revenues generated under the agreement.[17]  In Opposition, Defendants argue that Plaintiff is not entitled to payment because it has not fulfilled all of its obligations under the agreement.  Plaintiff has not filed a reply to the opposition.

A district court may grant summary judgment for the moving party when the non-movant has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

Plaintiff argues for the imposition of summary judgment because this is a simple matter in which Defendant owes money under the clear and unambiguous terms of the contract.  In opposition to Plaintiff's motion for summary judgment, Defendants argue that Plaintiff has not fulfilled all of its obligations under the contract and so therefore is not entitled to receive full payment.  Defendants claim that the satisfactory fulfillment of all of Plaintiff's obligations under the contract is a "condition precedent" to payment.

Defendants' argument is inapposite.  A condition precedent is "defined as a condition which must occur before a duty to perform under a contract arises."  Acme Markets, Inc. v. Federal Armored Exp., Inc., 648 A.2d 1218, 1220 (Pa.Super., 1994) citing Village Beer and

---

[17]  Plaintiff has not filed the required Concise Statement of Material Facts in violation of Local Rule 56.1.

Beverage, Inc. v. Vernon D. Cox & Comp., 475 A.2d 117 (Pa. Super., 1984); see also John D. Calamari and Joseph M. Perillo, Contracts, Third Edition, § 11-5. ("A condition precedent is an act or event, other than lapse of time, which must exist or occur before a duty to perform a promised performance arises.  If the condition does not occur and is not excused, the promised performance need not be rendered.  For example, if A has promised for a consideration to pay B $100 if a specified ship arrives in port before a certain date, A's duty to pay does not arise unless and until the ship arrives.  If the ship does not arrive within the time specified A need not keep his promise.  It should be stressed ... the term 'condition' is ordinarily used to describe acts or events which must occur before a party is obliged to perform a promise made in an *existing contract*.") (emphasis in original).  Importantly, satisfactory performance under the contract is not a condition precedent to payment.  Performance and payment are mutual promises under the contract and neither performance or payment are a condition precedent to the other.

Whether Plaintiff is entitled to payment for the services it performed remains the relevant factual and legal question.  Defendants continue to maintain that Plaintiff's performance was substandard so that Defendant is excused from payment.  Defendants point to the deposition testimony of Trisha DeSanti-Boehm and Alfred Covatto in support of this argument.  DeSanti-Boehm testified:

> as we hit the September, October, November, December time frame, the quality of the lists deteriorated quite rapidly and quite significantly.  So that would have been one issue.  The second was the direct mail campaigns.  We did two direct mail campaigns, neither of which came anywhere near the target that was projected to us.  So, of course, that was an issue.  As was the fact that there was no other direct marketing initiatives that took place after that.

Document # 86-6, page 3.  While Alfred Covatto, President of Defendant Creditron Financial Services, testified:

> We didn't pay the 28.57% because we didn't get - they didn't provide the services properly.

> * * *

> On the direct mail campaign alone, they were short about 1.5 million.

> * * *

22

> Because the results were lower than was forecasted ... Defendants are not obligated to pay 28.57% of all gross revenue.

Document # 88, page 13 - 15. Further, Defendants point to the Answers to Interrogatories which indicate:

> Plaintiff breached its promises and obligations with regard to the quality of the telemarketing lists by providing to Defendants deficient lists of poor quality such that the usable name and telephone numbers declined from a pre-contract average of approximately 95% to a post-contract result of 53.3% for the lists supplied in April, 52.9% for the lists supplied in May, 57.5% for the lists supplied in July, 70% for the lists supplied in August, 35.2% for the lists supplied in September, 66.8% for the lists supplied in October, and 40.5% for the lists supplied in December, 2003. If the quality of these lists supplied by Plaintiff were of the same as they were in the pre-contract time frame, the gross revenues from these lists would have been in the combined total of approximately $7,903,633.00. Defendants' net revenues, after paying Plaintiff, would then have been approximately $5,645,565.00. In contrast, as a result of the substantial drop in usable names, the actual combined revenue of these lists is calculated to have been approximately $4,390,44.00 resulting in a deficit of approximately $3,513,187.00 in gross revenues. Of this deficit, Defendants lost approximately $2,509,469.50 in expected net revenues after deducting the percentage which would have been payable to Plaintiff.

Id. at page 10, Defendants' Answers to Plaintiff's Third Set of Interrogatories, No 10.

By providing this evidence Defendants have satisfied their burden under the summary judgment standard. Plaintiff has not demonstrated otherwise by way of a reply brief. Accordingly, the motion for summary judgment should be denied in this regard.

### 2.    relating to Defendants' counterclaim

In the motion for summary judgment, Plaintiff again moves for summary judgment against Defendants' counterclaim, but this time with the benefit of additional discovery. In its opposition to the pending motion for summary judgment, Defendants do not address any of Plaintiff's arguments relating to the counterclaim, but instead merely incorporate by reference their brief in opposition to the motion to dismiss the counterclaim. See Document # 88, page 11. This failure is fatal to Defendants' remaining counterclaims.

Plaintiff argues for the first time that there is no evidence in the record to support the factual allegations of all of the counterclaims. In support of that argument, Plaintiff points to the

November 2006 deposition testimony of Defendants' employee DeSanti-Boehm.  DeSanti-Boehm admits that Defendants do not know of any confidential or propriety information that Plaintiff disclosed or provided to others:

> Q:     Other than speculation and assumptions, do you have any direct evidence that would support the statement in the Answer to Interrogatories that there was wrongful use of Defendants' business and proprietary information?
>
> A:     At this time, no.  I think we're still working that out.
>
> * * *
>
> Q:     What specific evidence do you have that lists procured for purposes of telemarketing and/or mail campaigns, and the analysis of these lists, and the selection criteria used to secure lists was disclosed by the Plaintiff to others?
>
> A.     I think we're still trying to work that out.  We're curious about the date of the last list that was provided to us and information we had gleaned from other sources that other lists might have been provided elsewhere.  So I think that we're still trying to find the information on that.
>
> Q:     Is the answer to my question, none?
>
> A:     None as of right now, correct.

Document # 86-9, pages 23, 25.  Further, Plaintiff argues that in her deposition testimony DeSanti-Boehm failed to identify any evidence to support its counterclaim that Plaintiff conspired to develop a business to compete with Defendants. Document # 86-9, pages 48-51. Following the introduction of evidence by a moving party, the burden then shifts to the non-moving party to show specific facts in evidence to prove the elements essential to his claim. Celotex, 477 U.S. at 322.  Defendants have not responded to this argument as they must in order to defeat a motion for summary judgment under Rule 56.  At this advanced stage of the proceedings in the face of a motion for summary judgment, the non-movant must come forward with more than speculation and suspicion that the moving party violated the covenant not to compete or misappropriated proprietary information.  Accordingly, the motion for summary judgment as to the remaining portions of Defendants' counterclaims should be granted.

24

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion to dismiss Defendants' counterclaim [Document # 72] be granted in part and denied in part. Specifically, the motion to dismiss should be:

A)    granted as to the portion of Count I - breach of contract pertaining to the frequency of mailing and the quality of the solicitation lists, but denied as to the violations of the confidentiality clause and the covenant not to compete;

B)    granted as to Count II - mutual mistake for failure to state a claim;

C)    granted as to Count III - fraudulent inducement as the claim is time-barred; and

D)    denied as to both the contract and tort prongs of Count IV - misappropriation of trade secrets.

It is further recommended that Plaintiff's motion for summary judgment [Document # 86] be granted in part and denied in part. More specifically, the motion should be:

A)    denied as to the single count alleged in the complaint; and

B)    granted as to the claims alleged in Defendants' counterclaim.

The only claim remaining after the resolution of these pending motions is the single count alleged in the complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Failure to timely file objections may constitute a waiver of any appellate rights. See Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).

_____

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

25

Dated:  June 25, 2007