UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING | ) | |
| PARTNERS, LLC, a Delaware | ) | |
| limited liability company, | ) | |
|      Plaintiff | ) | C.A. No.: 04 - 263 Erie |
| | ) | |
|      v. | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, | ) | |
| INC., a Pennsylvania corporation, and | ) | |
| TELATRON MARKETING GROUP, | ) | |
| INC., a Pennsylvania corporation, | ) | |
|      Defendants | ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

I.            <u>DEFENDANTS' OBJECTIONS</u>

In accordance with 28 U.S.C. §636(b)(1) and W.D. Pa. L.R. 72.1.4, Defendants respectfully object to the Magistrate Judge's Report and Recommendation which was filed on June 25, 2007 [Doc. 89] to the extent that the Magistrate Judge has recommended that the Plaintiff's motion to dismiss Defendants' counterclaim be granted as follows: (a) granted under the parol evidence rule as to that portion of Count I (breach of contract) pertaining to the frequency of the Plaintiff's mailings of solicitations and pertaining to the quality of the telephone solicitation lists; (b) granted as to Count II (mutual mistake) for failure to state a claim; and (c) granted as to Count III (fraudulent inducement) based upon statute of limitations.

Defendants also respectfully object to the Magistrate's Report and Recommendation with regard to the Plaintiff's motion for summary judgment to the extent the Magistrate Judge recommended that the motion be granted, due to absence of supporting evidence, as to those portions of Defendants' counterclaim which remain after the rulings on the motion to dismiss.

In support of these objections, Defendants hereby incorporate by reference Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss (and the appendix thereto) [Doc. 74] and Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment (and the appendix thereto) [Doc. 88] as if all of these documents were set forth fully herein.  Defendants would request that the Court review these court filings as part of its de novo review.

Without waiving any objections set forth above, the Defendants offer the following additional details of their objections to the Magistrate Judge's Report and Recommendation.  The omission below of any argument, authority or reference to the record shall not be construed as a waiver of any such matter.

2.

II.          SUPPLEMENTAL DISCUSSION

A.  Plaintiff's Motion to Dismiss

1.  Count I of the Counterclaim – Breach of Contract – Parol Evidence Rule

Count I of the counterclaim asserts a cause of action arising from Plaintiff's breach of its contractual obligations.  These breaches include: (1) Plaintiff's violation of the non-compete provision; (2) Plaintiff's violation of the confidentiality provision; (3) Plaintiff's failure to provide the quality mailing lists promised; and (4) Plaintiff's failure to conduct the quantity of mailings promised.

The Magistrate Judge recommended that, as to the breaches arising from the Plaintiff's poor performance (items 3 and 4 identified above), the Plaintiff's motion to dismiss should be granted.  The Magistrate Judge concluded that the parol evidence rule would preclude introduction of evidence of the parties' pre-contract agreement as to the level or nature of the Plaintiff's performance under the contract. The Magistrate Judge did not recommend that the motion be granted as to Plaintiff's breach of the contract's non-compete clause or Plaintiff's breach of the confidentiality provision (items 1 and 2 identified above).

3.

It is respectfully suggested that the Magistrate Judge's conclusions regarding the parol evidence rule are incorrect and should be rejected. As to the Plaintiff's promised performance, Plaintiff had represented that it would meet a certain level of quality with regard to the telephone lists to be supplied. *Counterclaim, ¶¶6, 7, 13*. The Plaintiff also represented that it would issue mailing campaigns on a monthly basis. *Counterclaim, ¶¶5-11*. The written contract between the parties is silent as to the acceptable level of Plaintiff's performance and as to the frequency of the mailings to be issued by the Plaintiff. The Magistrate Judge recommended that the motion to dismiss be granted because "under the parol evidence rule, this Court cannot look outside the four corners of the written agreement." *Report and Recommendation, p. 8.*

However, the parol evidence rule only prohibits evidence which contradicts the terms of the written contract. It does not prohibit the introduction of all parol evidence. The rule is not applicable here because the evidence to be presented does not contradict any of the terms of the written contract. To the contrary, the subject evidence provides terms which are missing from the written agreement. Even where a written contract has an integration clause, parol evidence is permissible to supply terms which are not at odds with the written terms. See The Bachman Co. v. Anthony Pinho, Inc.. 1993 WL 64620,*11 (E.D. Pa. 1993) (parol evidence was permitted even though contract had integration clause where the written contract was silent on the issue of price and profit margin); Voracek v. Crown Castle USA, Inc., 907 A.2d 1105, 1107 (Pa. Super. 2006) (parol evidence may be admissible even when the written contract has an integration clause). See also Moyer v. Heilveil, 49 A.2d 514, 515 (Pa. Super. 1946) (where "writing is silent" it is

4.

permissible to prove prior oral agreement which is "not inconsistent with the writing and unaffected by it"); <u>Yinger v. Youngman</u>, 30 Pa. Super. 139 (1905) (evidence of contemporaneous oral agreement is admissible where it relates to a matter concerning which the writing is silent). The proof of the pre-contract representations and promises made by Plaintiff to the Defendants would not alter, contradict or vary any terms of the written agreement. As such, the parol evidence rule would not preclude the introduction of such evidence. Therefore, it is respectfully requested that this Honorable Court reject the Magistrate Judge's recommendation and that the Court deny Plaintiff's motion to dismiss.

<u>2. Count II of Counterclaim – Mutual Mistake of Fact – Failure to State a Claim</u>

Count II of the counterclaim asserts that there was a mutual mistake of fact which led to the formation of the contract between the parties. The mutual mistake was the parties' erroneous belief that a mathematical formula presented by the Plaintiff provided an accurate methodology to calculate revenues to be generated from the Plaintiff's mailing campaigns. *Counterclaim, ¶5, exhibit B*. Based upon these calculations, the Defendants were led to believe that the work to be performed by the Plaintiff on behalf of the Defendants would be very profitable. However, well after the contract was signed, it was later learned that the Plaintiff had omitted a significant component of the mathematical formula which would have resulted in a substantial reduction of the revenue calculations. In fact, it would appear that neither the Plaintiff nor the Defendants realized this error until discovery was underway in this litigation.

The Magistrate Judge concluded that the mutual mistake identified by Defendants was in the nature of "disappointed expectation as to future events." *Report and Recommendation, p. 10.* The Magistrate Judge ruled that those types of mistakes are not sufficient to rescind the contract. However, this is not a proper characterization of the nature of the parties' mistake. The parties' mistake was not an erroneous belief of the future. Rather, the mistake was that the parties believed that the Plaintiff's revenue formula contained all of the necessary mathematical components. <u>See</u> *Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss, pp. 20-23.* This was an erroneous belief not of future events but as to those facts which existed at the time that the contract was formed. Therefore, due to the existence of a mutual mistake of fact, the contract must be rescinded. As such, the Defendants respectfully request that this Honorable Court reject the Magistrate Judge's recommendation and that the Court deny the Plaintiff's motion to dismiss.

### 3.  Count III of the Counterclaim– Fraudulent Inducement – Time Barred

Count III of the counterclaim alleges that the erroneous revenue formula constituted a fraudulent inducement which caused the Defendants to enter into the contract with the Plaintiff. On January 7, 2003, the Plaintiff provided the subject formula to calculate the likely response rate from recipients of the mailing campaigns. *Counterclaim, Ex. B.* However, the Plaintiff's formula omitted a significant deduction from likely responses. *Estes depos., p. 49;*

6.

*Metcalfe depos., pp. 75-77.*[1]  The Defendants did not learn that the revenue formula was defective until the depositions of Plaintiff's principals.  On May 18, 2006, Mr. Alan Estes, one of the founders of the Plaintiff, testified that due to an alleged oversight on his part, one of the components of the mathematical formula was missing.  *Estes depos., p. 49.*  In fact, it was Mr. Estes who originally conveyed the mathematical formula to the Defendants in an email of January 7, 2003.  Mr. Estes has claimed that even he was not aware of the omission of the formula's component until the day of his deposition.  *Estes depos., p. 49.*  Nevertheless, the Magistrate Judge concluded that the "Defendants filed the counterclaim on September 22, 2006, which is more than two years from the representations at issue which were made prior to the signing of the contract in February of 2003."  *Report and Recommendation, p. 12.*

It is respectfully suggested that this reasoning is in error. Although the Plaintiff's misrepresentation occurred before the contract was executed in February, 2003, the Defendants did not learn, and were not reasonably put on notice, that the revenue formula was inaccurate until the time of Mr. Estes' deposition on May 18, 2006.  The discovery rule would have the statute of limitations commence as of that date.

> The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he

---

[1]  Mr. Estes' deposition transcript is attached as exhibit A to Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss [Doc. 74].  Mr. Metcalfe's deposition transcript is attached thereto as exhibit B.

has essentially the same rights as those who have
suffered such an injury.

                    *       *       *

We have clarified that in this context, reasonable
diligence is not an absolute standard, but is what is
expected from a party who has been given reason to
inform himself of the facts upon which his right to
recovery is premised.


Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005).


        The Magistrate Judge concluded that the Defendants did not exercise reasonable

diligence to discover the misrepresentation earlier than the date of Mr. Estes' deposition.[2]  To

reach this conclusion, the Magistrate Judge relied upon the fact that in April, 2003, it was known

to the Defendants that the Plaintiff had not made the *number* of monthly mailings it had promised

to make.  The Plaintiff had promised to make mailings each month, beginning in March, 2003.

The Plaintiff did not make any mailings in April or May, 2003.  The Magistrate Judge concluded

that since the Plaintiff had failed to make the *number* of mailings promised, the Defendants

reasonably should have then investigated whether the mathematical formula of return rates and

_____

    [2]  Under the statute of limitations, the relevant date for the two year statute of limitations would be
October 31, 2002, being two years prior to the filing of the original answer.  See F.R.C.P. 15(c) (amended pleading
relates back to filing date of original pleading). At the earliest, the statute would commence on January 7, 2003,
the date of Estes' email.  Therefore, the counterclaim was filed well within the statute of limitations.

mailing revenues contained all of its necessary components so as to provide an accurate calculation.[3]

It is respectfully suggested that the Plaintiff's failure to make the required *number* of mailings has no bearing on the issue of whether the revenue formula had all of the necessary components. The Plaintiff's failure to make a mailing would not lead a reasonable person to delve into the revenue formula to see if any components were missing. Moreover, there is no evidence to support the conclusion that Defendants would have uncovered the deficiency if they had investigated the matter. The formula was represented by Plaintiffs as having been derived from the Plaintiff's experiences in the industry. *Estes depos., p. 47.* It is not a formula which is confirmed by reference to some independent authority.

In any event, the question of whether the Defendants exercised reasonable diligence under the facts presented is a question which should be left to the jury. See Mest v. Cabot Corp., 449 F.3d 502, 512 (3rd Cir. 2006) (the question of "whether a plaintiff has exercised reasonable diligence is generally a factual question reserved for the jury"); Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005) (since "this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it"). Only where reasonable minds could not differ, is it a question

---

[3] It is unfair for the Magistrate Judge to dismiss Count I's breach of contract claim based upon a ruling that the parol evidence rule precludes proof of the Plaintiff's promises regarding the frequency of the mailings and to then rely upon those same promises to rule that the statute of limitations bars Count III.

which should be answered by the court. Here, the Magistrate Judge erred by concluding that the Defendants failed to exercise reasonable diligence under the circumstances. Therefore, the Defendants respectfully request that the Court reject the Magistrate Judge's recommendation and deny the Plaintiff's motion to dismiss.

4.  Count III – Recoupment

As alternative grounds for their opposition to Plaintiff's motion to dismiss Count III of the counterclaim, the Defendants have alleged that Count III asserts a claim of recoupment. A counterclaim in recoupment does not seek affirmative relief from the Plaintiff, but instead seeks a reduction or offset for the amounts which may be determined to be otherwise owed to the Plaintiff. Kaiser by Taylor v. Monitrend Investment Management, 672 A.2d 359, 363 (Pa. Cmwlth. 1996); Household Consumer Discount Co. v. Vespazini, 415 A.2d 689, 694 (Pa. 1980). As such, it has no statute of limitations.

The Magistrate Judge rejected this alternative theory by concluding that Count III of the counterclaim failed to state a claim of recoupment because the Defendants seek therein to recover more than the dollar amounts demanded by the Plaintiffs. *Report and Recommendation, p. 16.* However, the Plaintiff's complaint demanded an unliquidated amount of monetary recovery described as "$834,490.49 *plus* 28.57% of all gross revenues received by Defendant

after October 31, 2003." *Complaint, ¶14* (emphasis added). Therefore, it cannot be said with any certainty the amounts which are now being claimed due by the Plaintiff or, more importantly, the amounts which a jury may award in favor of the Plaintiff, are less than the amounts sought in recoupment. Likewise, although the Defendants have asserted a claim in recoupment at a specific dollar amount, it would be up to the jury to determine the actual amounts which may be chargeable as recoupment. Therefore, it is respectfully suggested that the Magistrate Judge erred in concluding that Defendants' claim of recoupment seeks an amount in excess of the amounts to be eventually recovered by the Plaintiff.

The Magistrate Judge also recommended a dismissal of the recoupment claim because, in Count III, "Defendants have introduced an entirely new cause of action - the tort of fraudulent inducement - as opposed to the original claim." *Report and Recommendation, p. 16.* However, although a claim of recoupment must arise out of the same transaction as the Plaintiff's cause of action, it need not be cast in the same legal theory as the Plaintiff's claim. See Household Consumer Discount Co. v. Vespazini, 415 A.2d 689 (Pa. 1980) (plaintiff asserted a contract claim and defendant asserted that plaintiff violated statutory and regulatory provisions governing loans); Kaiser by Taylor, 672 A.2d 359 (Pa. Cmwlth. 1996) (plaintiff asserted breach of contract claims and defendant asserted recoupment based upon intentional misrepresentations). Therefore, it is respectfully suggested that this Honorable Court reject the Magistrate Judge's recommendation and that the Plaintiff's motion be denied.

5.  Count III – Relation Back

The Magistrate Judge's recommendation was also in error because the effective date under the statute of limitations for the filing of the counterclaim is the date on which the original answer was filed.  See Perfect Plastics Industries, Inc. v. Cars & Concepts, Inc., 758 F. Supp. 1080, 1082-1083 (E.D. Pa. 1991).  The original answer was filed on October 31, 2004. During the court conference held on September 18, 2006, the Defendants advised the court of their intention to seek leave of court to file a counterclaim.  After considering the bases of the proposed counterclaim, the court stated that Defendants did "not need to file a motion for leave to file the counterclaim" and that the "issues in the counterclaim are so intimately intertwined with the issues driving the main case" a short period of discovery would be sufficient.  *Trans. conf. Sept. 18, 2006, pgs. 33-34*. The amended answer and counterclaim were then filed on September 22, 2006.

Federal Rule of Civil Procedure 15(c) state that when a claim "asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading", the amendment relates back to the original pleading.  Rule 13(f), concerning amending a pleading to include a counterclaim, has been interpreted so as to have the counterclaim relate back to the date of the original answer.  Perfect Plastics Industries, Inc., supra; Edwards v. Storage Technology Corp., 1999 WL 33505545 (E.D. Pa. 1999); Rosenzweig v.Suburban Orthopedics Associates, 1988 WL 65905 (E.D Pa. 1988).

Therefore, when the filing date for the counterclaim is related back to the filing date of the original answer, the counterclaim was filed well within the two year statute of limitations. Putting aside the issue of the discovery rule, the defective formula was conveyed by Plaintiff to Defendants in Mr. Estes' email of January 7, 2003. The original answer was filed on October 31, 2004. As such, the Defendants respectfully request this Honorable Court reject the Magistrate Judge's recommendation and deny the Plaintiff's motion.

B. Summary Judgment

In light of the Magistrate Judge's recommendations relating to the Plaintiff's motion to dismiss, the only parts of the counterclaim which remained for consideration under the Plaintiff's summary judgment motion were as follows: (1) Count I - Plaintiff's breach of the non-compete clause of the contract and Plaintiff's breach of the confidentiality provision of the contract; (2) Count IV - Plaintiff's conspiracy to breach the non-compete clause and to breach the confidentiality clause. The Magistrate Judge recommended that summary judgment be entered on these claims due to a lack of supporting evidence.

As to the non-compete clause (*Contract, ¶17*), the evidence of record included the fact that in October, 2003, the founding members of the Plaintiff corporation (Metcalfe, Estes and Nelson) secretly founded and created a new corporation, K2 Financial Corporation. *Report and Recommendation, p. 19; Estes depos., pp. 3-4; Metcalfe depos., p. 5.* K2 competed directly with

13.

the Defendants by engaging in the business of identifying and then contacting prospective

customers for student loan consolidations. *Report and Recommendation, p. 19; Estes depos., pp.*

*4-6; Metcalfe depos., pp. 5-7.* The president and chief operating officer of K2 (Metcalfe) was

also the president of the Plaintiff corporation. One of the founding members of K2 (Brian

Nelson), was the representative of the Plaintiff corporation who signed the subject contract with

the Defendants. After its formation in October, 2003, "K2 began developing contractual

relationships with telemarketing vendors and list providers around December of 2003." *Report*

*and Recommendation, p. 19.* During this period, the Plaintiff continued to receive confidential

and proprietary information from the Defendants. After Plaintiff was ready to open its new

competing business, Plaintiff unilaterally terminated its contract with the Defendants in January,

2004. *Counterclaim, ¶15; Plaintiff's Motion for Summary Judgment, ¶24.* The Plaintiff does

not deny any of the foregoing facts and has not offered any evidence to dispute those facts.


        Therefore, the Plaintiff's violation of the non-compete contract provision is clear.

Three of the founding principals of the Plaintiff (Alan Estes, Harry Metcalfe, Brian Nelson) were

also founding principals of K2 Financial. All three individuals were actively involved in the

relationship between the Plaintiff and the Defendants and all three took part in the formation of

the written contract between the Plaintiff and the Defendants. Before the termination of the

contract between the Plaintiff and the Defendants, all three founding members of the Plaintiff then

became actively and directly involved in the creation, startup and operations of K2 and became

representatives, employees and/or equity owners of K2.  All of this occurred prior to the

termination of the Plaintiff's contract with the Defendants in early January, 2004.


K2 then began operations within several weeks after the termination of the

contract between the Plaintiff and the Defendants.  However, in order to be ready for the startup

of those operations, a tremendous amount of preparatory work had to be undertaken and

contractual relations had to be formed by Plaintiff  with customers and vendors before Plaintiff

terminated its contract with Defendants.  Once Plaintiff's new business was poised to open its

doors and to commence its competition, Plaintiff terminated its contract with the Defendants

without any prior warning.

> QUESTION:  Before the [telemarketing] lists were
> obtained, was any work done on behalf of K2
> Financial with regard to loan consolidation work?
>
> ANSWER [Metcalfe]:  There was no activity
> marketing prior to that point.  But there was – there
> were – there was work to – the company was being
> set up to perform those services at that point?
>
> QUESTION:  And what types of things were
> needed to set up to perform the services?
>
> ANSWER:  Contractual relationships, telemarketing
> vendors, list providers, the operational ability to take
> an application, the ability to process the application
> was starting to be developed.
>
> QUESTION:  And when did that process start?
>
> ANSWER:  I don't recall the specific date.  The
> planning probably would have started sometime in
> December – by December I would say.

QUESTION:  Who, if anyone, was involved with
you in the organizing or developing K2 Financial?

ANSWER:  Well, Alan Estes, Brian Nelson, William
Keanan.  Primarily those four (sic) would be the lead
drivers.

QUESTION:  Okay.  And do those four work for
K2 Financial today?

ANSWER:  Yes.

*Metcalfe depos., p. 7.*

        In support of her recommendation, the Magistrate Judge concluded that

Defendants failed to "come forward with more than speculation and suspicion that the [Plaintiff]

violated the covenant not to compete or misappropriated proprietary information." *Report and*

*Recommendation, p. 24.*  The Magistrate Judge also stated that in response to the summary

judgment motion, Defendants "merely incorporate[d] by reference their brief in opposition to the

motion to dismiss the counterclaim."  This is incorrect.

        In response to the summary judgment motion, Defendants attached evidentiary

materials to their brief, including excerpts from Mr. Metcalfe's deposition.  Also, Defendants

incorporated by reference the evidentiary materials previously attached to their brief which had

been filed in opposition to the Plaintiff's motion to dismiss.  See *Defendants' Brief in Opposition*

*to Plaintiff's Motion for Summary Judgment, p. 11.*  As stated above, there is ample evidence of

record to support the allegation that the Plaintiff violated the non-compete provision of the

parties' contract.  In fact, Plaintiff has not disputed any of the foregoing facts.  Not only is there

proof of the breach of the non-compete agreement, but there is also proof that principals of the

Plaintiff, worked with and conspired with the principals of K2 Financial to secretly form and

operate a competing business.  In fact, the principals of both corporations were the same people.


It is respectfully suggested that this Honorable Court reject the Magistrate Judge's

recommendation and deny the Plaintiff's summary judgment motion.


Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA


By   /s/ Craig A. Markham
  Craig A. Markham, Esquire
  Attorney for Defendants
  150 East Eighth Street
  Erie, Pennsylvania 16501
  (814) 456-4000

17.