UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff | ) | C.A. No.: 04 - 263 Erie |
| | ) | |
| v. | ) ) | Judge McLaughlin<br>Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | ) ) ) ) | |
| Defendants | ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS
TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

I.      PROCEDURAL BACKGROUND

The Plaintiff has filed objections to that aspect of the Magistrate Judge's Report and Recommendation which concerns the Plaintiff's motion for summary judgment on the Plaintiff's contract claims. The Magistrate Judge recommended that the Plaintiff's motion for summary judgment be denied because of remaining issues of material fact concerning the Plaintiff's performance of its contractual obligations.

Defendants file this brief in response to Plaintiff's objections and Defendants also hereby incorporate by reference their Brief In Opposition to the Plaintiff's Summary Judgment

Motion (and the appendix thereto) [Doc. 88] and Defendant's Brief in Opposition to Motion to Dismiss (and appendix thereto) [Doc. 74].

II.  DISCUSSION

Plaintiff's summary judgment motion is based upon the faulty premise that there is no dispute that Plaintiff has fulfilled all of its obligations under the parties' Agreement. However, the Plaintiff has not offered any evidence to support the claim that all conditions precedent entitling it to payment have been satisfied. In fact, Plaintiff did not even make the effort to file the required Concise Statement of Material Facts in support of its motion. See W.D. Pa. L.R. 56.1.

Even more surprising, Plaintiff has taken the remarkable position that there was no condition precedent to Plaintiff's entitlement to payment. Apparently, the Plaintiff would have this Court believe that there was no requirement that Plaintiff perform any services or, at least, that it perform any services of value in order to earn its payment.

It is the Defendants' position that the Agreement expressly imposes substantial obligations upon Plaintiff and that the Plaintiff has not fulfilled those obligations which would entitle the Plaintiff to receive its full payment[1] under the terms of the Agreement.

---

[1] There is no dispute that Plaintiff has been paid approximately $755,000.00. *Complaint, ¶14.*

> As a condition precedent to any payment, Plaintiff is obligated to properly perform certain specified work and services. It is specifically denied that the Plaintiff has properly performed all of its obligations and duties in this regard.

*Amended Answer, ¶9.* See also *Amended Answer, ¶¶12-14 ("Plaintiff failed and refused to properly perform all of its obligations and duties under the parties' contract"); Third Defense ("the Plaintiff has failed to fulfill and satisfy all of the conditions precedent to any entitlement to payment under the parties' contract").*

It is beyond dispute that the Agreement provides that Plaintiff is only entitled to payment "[f]or the services provided." *Agreement, Ex. -001, ¶4.* The Agreement between the parties describes generally the services which the Plaintiff was required to provide in order to earn its payments. For instance, the Agreement states "Delaware Marketing shall be responsible for developing potential loan prospects through list sources, direct mail campaigns and advertising." *Agreement, ¶2.* Exhibit -001 of the Agreement provides additional detail regarding the work which Plaintiff would have to satisfactorily perform in order to earn its fee.

> Delaware Marketing shall be responsible for the following:
>
> (1) "Prospect Lead Acquisition." This includes the identification of name list sources for the purpose of FFELP student loan consolidations.
>
> (2) "Direct Mail Campaigns." Delaware Marketing shall plan, develop, and implement direct mail

3.

>campaigns consisting of name list procurement, data processing services (this includes list hygiene and suppressions), data append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.
>
>(3) "Credit Bureau Relationships."  Management of relationship with credit bureaus relative to prospect lead acquisition.
>
>(4) "Analyst Recommendations."  Campaign response analysis and recommendations.
>
>(5) "Marketing Plan Recommendations."  Delaware Marketing shall suggest and recommend methods and approaches relative to the academic lending overall marketing plan.
>
>(6) "Marketing Management Assignments."  Delaware Marketing shall accept and perform other reasonable marketing assignments from Telatron.

*Agreement, Ex. -001, ¶2.  See also Defendants' Appendix In Opposition to Summary Judgment Motion, Ex. 1, Trish DeSanti-Boehm depos., p. 23 (Plaintiff was hired by Defendants to perform "list acquisition analysis, direct marketing campaigns, advertise for ALC program"); p. 35 (This is the "work and services that Delaware Marketing Partners was obligated to perform as a condition precedent to their receiving 28.5% of the funds that academic lending sent or received").*

The Plaintiff would have us ignore these express responsibilities and ignore the poor manner in which Plaintiff actually performed these tasks.  Defendants have submitted proof

4.

that the Plaintiff did not perform its work as promised or as required and that this lack of performance has resulted in substantial losses to the Defendants. For a detailed explanation of the calculation of these losses and of Plaintiff's failure to perform. *See Defendants' Appendix In Opposition to Summary Judgment Motion, Ex. 2, Defendants' Answers to Plaintiff's Third Set of Interrogatories, No. 10.*

The evidence of record also establishes the following details regarding Plaintiff's failure to satisfy its obligations under the Agreement.

> The prospect lead acquisition, it's true that they [Plaintiff] gave us leads. Our concern was that, beginning in April, 2003, the quality of those leads began to diminish. Additionally, as we hit around the September, October, November, December time frame, the quality of the leads deteriorated quite rapidly and quite significantly. So that would have been one issue.
>
> The second was the direct mail campaigns. We did two direct mail campaigns, neither of which came anywhere near the target that was projected to us. So, of course, that was an issue. As was the fact that there was no other direct marketing initiatives that took place after that.

*Trish DeSanti-Boehm depos., p. 25. See also Defendants' Appendix Ex. 3, Alfred D. Covatto depos., p. 36* ("We didn't pay the 28.57% [to Plaintiff] because we didn't get – they [Plaintiff] didn't provide the services properly"); *p. 48* ("On the direct mail campaign alone, they [Plaintiff] were short about $1.5 million" dollars); *p. 96* ("Because the results were lower than

5.

*was forecasted [by Plaintiff] . . . Defendants are not obligated to pay 28.5% of all gross revenue").*

The Defendants also have provided specific information on the Plaintiff's failure to perform with regard to the procurement of marketable solicitation lists.

> The Plaintiff also breached its promises and obligations with regard to the quality of the telemarketing lists by providing to Defendants deficient lists of poor quality such that the usable name and telephone numbers declined from a pre-contract average of approximately 95% to a post-contract result of 53.3% for the lists supplied in April, 52.9% for the lists supplied in May, 57.5% for the lists supplied in July, 70% for the lists supplied in August, 35.2% for the lists supplied in September, 66.8% for the lists supplied in October and 40.5% for the lists supplied in December, 2003.

*Defendants' Ex. 2, Defendants' Answers to Plaintiff's Third Set of Interrogatories, No. 10.*

The evidence establishes that Plaintiff did not provide the nature or quality of services promised. The Plaintiff offered no evidence to dispute these facts. At best, there clearly remains a genuine dispute of material fact regarding the Plaintiff's poor performance. Therefore, in either event, the motion for summary judgment must be denied.

6.

The Plaintiff argues that since the written parties' Agreement does not define the services to be provided by a reference to a minimum quality level, the Defendants must accept Plaintiff's performance even if that performance was poor or devoid of utility or value. However, this cannot be accepted as a reasonable reading of the parties' true intent. Although there may be a genuine dispute as to the quality level which would reasonably satisfy Plaintiff's contractual obligations, or whether Plaintiff's performance met that standard, it would be unreasonable to conclude that the parties did not agree that Plaintiff's performance was to be of *some* value.

There are two ways that this gap in the Agreement may be filled. First, the pre-contract discussions and representations may be relied upon to define these expectations. Such evidence would not offend the parol evidence rule because the evidence would not contradict the terms of the Agreement. See The Bachman Co. v. Anthony Pintto, Inc., 1993 WL 64620 (E.D. Pa. 1993) (parol evidence permitted where contract was silent on issue of price and profit margin). See also Moyer v. Heilveil, 49 A.2d 514, 515 (Pa. Super. 1946) (where "writing is silent" it is permissible to prove prior oral agreement which is "not inconsistent with the writing and unaffected by it"). Yinger v. Youngman, 30 Pa. Super. 139 (1905) (evidence of contemporaneous oral agreement is admissible where it relates to a matter concerning which the writing is silent). Thus, the Plaintiff's pre-contract representations and promises would not alter, contradict or vary any terms of the Agreement and may be relied upon to determine the parties' intent regarding this issue.

Second, the doctrines of necessary implication and good faith, collectively, are available to assist in identifying the parties' reasonable, but unspoken, expectations. Gallagher v. Upper Darby Township, 539 A.2d 463, 473 (Pa. Commw. 1988) ("where an obligation was within the contemplation of the parties . . . or is necessary to carry out their intention, the law will imply that obligation and enforce it even though it is not specifically and expressly set forth in the written contract"). "Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." John B. Conomos, Inc. v. Sun Company, Inc., 831 A.2d 696, 707 (Pa. Super. 2003).

The court will apply the doctrine of necessary implication where "it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions" even if the written contract is not ambiguous. Slater v. Pearle Vision Center, Inc., 546 A.2d 676, 679 (Pa. Super. 1988). The purpose of the doctrine is to "allow the court to enforce the clear intentions of the parties and avoid injustice." Id. Thus, even in the absence of an express contract provision, the law will prohibit an "evasion of the spirit of the bargain, lack of diligence and slacking off, [and] willful rendering of imperfect performance." Onal v. BP AMACO Corp., 275 F. Supp. 2nd 650, 659 (E.D. Pa. 2003). "When a contract is silent, principles of good faith . . . fill the gap." In re: Kaplan, 143 F.3d 807, 818 (3rd Cir. 1998); See also Huang v. BP AMACO Corp., 271 F.3d 560, 564 (3rd Cir. 2001) ("One of the most important principles of contract law is the implied covenant of good faith"). Therefore, at the

very least, Plaintiff was obligated to perform in a manner consistent with the requirements of good faith. The Defendants contend that even this minimal standard was not satisfied by the Plaintiff.

The Agreement between the parties here does not contain any express quality or quantity standards. Nevertheless, it is more reasonable to conclude that the parties had an understanding regarding the expected quality of Plaintiff's performance than it is to believe that the utility of Plaintiff's performance was deemed completely irrelevant by the parties. In fact, it is Defendants' position that the Plaintiff made representations regarding the nature and quality of the services it would provide to Defendants. Evidence of Plaintiff's representations on this issue would not contradict any provision of the written contract, but would serve as an essential gap-filler. Therefore, this Court may consider the Plaintiff's representations regarding performance to ascertain the true intention of the parties. Thus, the Plaintiff's motion must be denied.

        Respectfully submitted,

        ELDERKIN, MARTIN, KELLY & MESSINA

        By /s/ Craig A. Markham, Esquire
            Craig A. Markham, Esquire
            Attorney for Defendants
            150 East Eighth Street
            Erie, Pennsylvania 16501
            (814) 456-4000