UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff | ) | C.A. No.: 04 - 263 Erie |
| | ) | |
| v. | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | ) ) ) ) | |
| Defendants | ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' MOTION IN LIMINE**

AND NOW, the Defendants, by and through their attorneys, ELDERKIN, MARTIN, KELLY & MESSINA, file the following Motion in Limine, respectfully representing as follows:

1. The Defendants have filed this motion in limine to exclude at trial any evidence or testimony relating to Plaintiff's claim for commission from revenues received by Defendants after the date of the termination of the parties' contract.

2. At all times relevant Defendants operated a telemarketing business which, among other projects, contacted individuals to market student loan consolidations. Defendants telephoned people who fit the profile of those who may be eligible to consolidate and refinance

student loans. If the person contacted wanted to take advantage of the opportunity to consolidate existing student loans, Defendants would then prepare a loan application to be submitted to a lender (Brazos) and Defendants would gather the necessary documentation required by Brazos to permit funding of the new loan. If the application was accepted and the consolidation loan was then funded by Brazos, Defendants would eventually receive a commission payment from Brazos based upon the quantity and the average balance of the consolidated loans.

3. The Defendants hired the Plaintiff to provide certain services which were critical to the success of this endeavor. Effective September 1, 2002, the parties entered into a Student Loan Origination and Marketing Agreement ("Agreement"). The Agreement includes a document identified as Exhibit -001. A copy of the entire Agreement is attached hereto as Exhibit "1." Generally speaking, one of the Plaintiff's roles was to obtain telemarketing lists to be used by the Defendants to contact prospective borrowers. To fulfill this duty, Plaintiff would formulate specific list selection criteria to be submitted to ChoicePoint, a broker of consumer credit information which it purchases from various credit bureaus. However, by no means was this the Plaintiff's sole contractual obligation. To the contrary, the Plaintiff agreed to perform all of the following work:

> Delaware Marketing shall be responsible for the following:
>
> (1) **"Prospect Lead Acquisition."** This includes the identification of name list sources for the purpose of FFELP student loan consolidations.

2.

>(2) **"Direct Mail Campaigns."** Delaware Marketing shall plan, develop, and implement direct mail campaigns consisting of name list procurement, data processing services (this includes list hygiene and suppressions), data append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.
>
>(3) **"Credit Bureau Relationships."** Management of relationship with credit bureaus relative to prospect lead acquisition.
>
>(4) **"Analyst Recommendations."** Campaign response analysis and recommendations.
>
>(5) **"Marketing Plan Recommendations."** Delaware Marketing shall suggest and recommend methods and approaches relative to the academic lending overall marketing plan.
>
>(6) **"Marketing Management Assignments."** Delaware Marketing shall accept and perform other reasonable marketing assignments from Telatron.

*Agreement, Ex. -001, ¶2.  See also Defendants' Appendix in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 88], Trish DeSanti-Boehm depos., p. 23 (Plaintiff was hired by Defendants to perform "list acquisition analysis, direct marketing campaigns, advertise for ALC program"); p. 35 (This is the "work and services that Delaware Marketing Partners was obligated to perform as a condition precedent to their receiving 28.5% of the funds that academic lending sent or received").*

3.

4. Thus, the Plaintiff's work did not end with the mere delivery of telemarketing lists to the Defendants. To the contrary, the Plaintiff was obligated to, among other things, analyze the results of the telemarketing efforts and to make recommendations to direct and focus those efforts. In this regard, Plaintiff was in charge of "[c]ampaign response analysis and recommendations". The Plaintiff was also obligated to suggest and recommend methods and approaches relating to the overall marketing plan.

5. In exchange for the Plaintiff's performance of *all* of this work, the Agreement provided that the Plaintiff would receive from the Defendants a sum calculated as 28.57% of the gross revenues which were to be received by Defendants from Brazos. *Agreement, Ex. -001, ¶4(a)*.

6. By letter dated January 9, 2004, Plaintiff's counsel informed the Defendants that the Plaintiff was terminating the agreement "effective immediately." *See Exhibit 2 attached hereto*.

7. The Agreement provides that either party may terminate the contract due to a material breach of the agreement. *Agreement, ¶10(a)(iv)*. Paragraph 11(b) of the Agreement also deals expressly with the issue of compensation owed to the Plaintiff upon such a termination.

> Both parties shall be responsible for paying any
> compensation set forth in Program Exhibit(s)
> through the effective date of termination (including

4.

>           any notice period).  Payment shall be described as
>           Section 8 above.

*Agreement, ¶11(b)*.

8. The Agreement states that compensation is to be paid up "through the effective date of termination." The reasonable reading of this contractual limitation is that no compensation is owed unless the right to compensation has accrued before the date of termination.

9. There is no dispute that the Plaintiff had no right to any compensation unless and until the Defendants actually *received* revenues. *Plaintiff's Pretrial [Doc. 95], pp. 1-2* ("It was expressly agreed that Delaware Marketing Partners, LLC would be paid 28.57% of the gross revenues *received* by the Defendants from lenders as compensation for its efforts under the contract"); *Plaintiff's Brief in Support of Motion for Summary Judgment [Doc. 87], p. 3* ("It is clear that based upon [the contract] Delaware Marketing Partners, LLC was owed 28.57% of the gross revenues *received* by the Defendants as payment for its efforts under the contract"); *Plaintiff's Motion for Summary Judgment [Doc. 86], ¶7* ("Under the contract, Delaware Marketing Partners, LLC was owed 28.57% of the gross revenues *received* by the Defendants as payment for its efforts under the contract"). Therefore, the Plaintiff's claim for compensation could not accrue until the loan application was accepted by Brazos and the Defendants received payment from Brazos. Since the Agreement provides that Plaintiff is only entitled to payments

which had accrued as of the date of termination, the Plaintiff has no right to revenues which were received after the date of termination.

10. This is a reasonable and fair contract limitation because the Plaintiff's entitlement to compensation was in exchange for the Plaintiff's performance of *all* of the work and services identified in the Agreement. <u>See</u> Agreement, Exhibit -001, *¶4* ("For the services provided by the parties, Telatron shall distribute commission funds as follows"). The bargain struck by the parties required the Plaintiff to do more than simply supply lists in order to earn its full share of the revenues. The Agreement does not state that the Plaintiff would receive full compensation (28.57% of gross revenues) if Plaintiff did not perform all of its duties. After January 9, 2004, the Plaintiff did not perform any of the work which was needed to make the Defendants' use of the telemarketing lists effective and profitable. After termination, the Plaintiff provided no analysis of any list performance. The Plaintiff made no suggestions nor recommendations regarding methods or approaches of the marketing program. Since the Plaintiff was obligated to perform work in addition to furnishing telemarketing lists in order to earn its compensation, the Plaintiff has no right to any commissions from the revenues which were paid to Defendants after the termination of the Agreement.

11. Since Plaintiff is not entitled to a commission it did not earn and which had not accrued as of January 9, 2004, the Court should exclude all evidence relating to and/or concerning Plaintiff's claims for such commissions.

WHEREFORE, the Defendants respectfully request that this Honorable Court issue an order granting this Motion in Limine and excluding all evidence at trial relating to Plaintiff's claims to a commission for revenues received by Defendants after January 9, 2004.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By    /s/ Craig A. Markham
      Craig A. Markham, Esquire
      Attorney for Defendants
      150 East Eighth Street
      Erie, Pennsylvania 16501
      (814) 456-4000