# Student Loan Origination and Marketing Agreement

This Agreement is made as of the 1st day of September 2002 by and between **DELAWARE MARKETING PARTNERS, LLC**, with its principal offices at 5223 West Woodmill Dr., Suite 41, Wilmington, DE 19808 (hereinafter referred to as "**DELAWARE MARKETING**"), and **ACADEMIC LENDING CENTER/CREDITRON FINANCIAL SERVICES, INC.** and **TELATRON MARKETING GROUP, INC.** with offices at 1545 West 38th Street, Erie, Pa. 16508 (hereinafter referred to as "**TELATRON**").

WITNESSETH

WHEREAS, **TELATRON** and **DELAWARE MARKETING** desire to implement one or more Student Loan Acquisition Programs for the marketing and funding of consolidation loans made under Section 4C of the Higher Education Act, as amended ("The ACT") and under private loan funding laws; and

WHEREAS, **TELATRON** and **DELAWARE MARKETING** desire to work together to perform Student Loan Acquisition Services;

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, **DELAWARE MARKETING** and **TELATRON** agree as follows:

1. **DESCRIPTION OF STUDENT LOAN ORIGINATION AND MARKETING AGREEMENT.**

    At various times during the term of this Agreement, **TELATRON** and **DELAWARE MARKETING** shall perform program services as set forth in one or more mutually agreed upon Exhibits. Any such Exhibit will be issued and executed hereunder by both parties prior to the commencement of future Program services. The Exhibit will reference this Agreement and shall outline, without limitation, a description of the specific program services to be performed, the performance schedule, and all associated income participation. In the event that any ambiguity or discrepancy arises between the Exhibit and the Agreement, the terms and conditions of this agreement shall control.

2. **AUTHORIZED SERVICES TO BE PERFORMED**

    Each of the parties to this Agreement shall be responsible to perform program services called for in Paragraph 1. **DELAWARE MARKETING** shall be responsible for developing potential loan prospects through list sources, direct mail campaigns and advertising. They shall also accept other marketing management assignments given to them by **TELATRON** from time to time. **TELATRON**, through its Academic Lending Center, shall fully manage the student loan acquisition program.

TELATRON's efforts will include, but are not limited to: 1. Contact Center Marketing (inbound, outbound, web, data entry/mail administration) 2. Secondary Market Source Relationships 3. Program Funding 4. General Administration.

3. **CONFIDENTIALITY**

    a. **TELATRON** and **DELAWARE MARKETING** acknowledge that each may have access to and receive disclosure of certain information relating to the other party (including without limitation marketing programs, strategies, fee structures, or sales, and further including the information described more fully in the following section of this Agreement). **TELATRON** and **DELAWARE MARKETING** agree that all such information and materials (herein after referred to as "Confidential Information") obtained from the other party, its directors, officers, employees and agents (the "Providing Party") by the receiving party, its directors, officers, employees, and agents (the "Receiving Party") is, and shall be considered confidential and proprietary to the Providing Party, and shall be maintained by the Receiving Party in absolute confidence and secrecy. The Receiving Party shall make no disclosure of any such confidential information to any third person, other than employees or consultants of the Receiving Party who have a need to know the confidential information in order to complete the services outlined herein, without the Providing Party's express prior written consent. The Receiving Party will, before disclosing any such confidential information to any of its employees or consultants, instruct its employees and consultants that the information is confidential and a trade secret and must be kept in absolute confidence and secrecy. The Receiving Party will not, however, be obligated to retain as confidential any such information which is generally available to the public or is generally available to the public by the Providing Party or any third person, provided; however, that this sentence shall not apply to any confidential information which becomes generally available to the public as a result of the Receiving Party's action or inaction, including as a result of the Receiving Party's failure to meet any of its obligations under this "Confidentiality" section.

    b. Upon termination of this Agreement for any reason, the Receiving Party will return to the Providing Party any and all copies of such confidential information which are in the Receiving Party's possession or control. The Receiving Party acknowledges that a breach of any of its obligations under this "Confidentiality" section by the Receiving Party or by any of its employees or consultants will cause the Providing Party irreparable injury and damage and therefore may be enjoined through injunctive proceedings in addition to any other remedies which may be available to the Providing Party under this Agreement or at law or in equity.

    c. **DELAWARE MARKETING** agrees to comply with **TELATRON**'s Data Security Policy Procedure, as may be modified from time to time.

    d. The provisions of this "Confidentiality" section shall survive the termination of this agreement.

4. **OWNERSHIP OF AND RIGHT TO USE INFORMATION**

    a. The information obtained by the Receiving Party as a result of the relationship under this Agreement, including, without limitation, all of the information supplied to the Receiving Party by the

Providing Party or by any customer or prospective customer of Providing Party, and any and all rights to use the same, shall be the exclusive and confidential property of Providing Party and shall be used by the Receiving Party only for the purposes of this Agreement. All such information is hereby expressly identified by Providing Party as being confidential and trade secret, and Providing Party shall have the exclusive proprietary interest therein. The Receiving Party shall have no right, title, or interest whatsoever in any such information, nor shall it have any right to use any such information for any purpose whatsoever or disclose it to any other party without the express prior written consent of Providing Party, subject to the provisions of the preceding "Confidentiality" section of this Agreement. The Receiving Party agrees to be responsible for any breach of the terms of the preceding "Confidentiality" section of this Agreement by any of its agents, representatives, employees or consultants or any other person to whom information is provided.

    b.    The provisions of this "Ownership of and Right to Use Information" section shall survive termination of this agreement.

## 5. NON-USE OF TELATRON NAME

**DELAWARE MARKETING** agrees that it will not, during the course of performance of this Agreement or thereafter, use the name, logo, trademark, or service mark of **TELATRON**, or any **TELATRON** affiliate in any advertising or promotional media identifying **TELATRON** as a customer or client of **DELAWARE MARKETING** or for any other purpose without the prior written consent of **TELATRON**.

## 6. INDEMNIFICATION

    a.    **DELAWARE MARKETING** shall indemnify, defend, and hold harmless **TELATRON**, its affiliates, officers, directors, agents and employees from and against any and all losses, liabilities, claims, suits, judgments, damages, costs and expenses, including without limitation reasonable attorney's fees, which may accrue against, be charged to, incurred by, or recoverable from **TELATRON**, its officers, agents, and employees as a result of **DELAWARE MARKETING**'s performance, non-performance, or improper performance under this Agreement, **DELAWARE MARKETING**'s breach of any representation or warranty thereunder, or which arise out of or relate to the legality of the services outlined herein or any **DELAWARE MARKETING** provided scripts.

    b.    **TELATRON** shall indemnify, defend and hold harmless **DELAWARE MARKETING**, its affiliates, officers, directors, agents and employees from and against any and all losses, liabilities, claims, suits, judgments, damages, costs and expenses, including without limitation reasonable attorneys' fees, which may accrue against, be charged to incurred by, or recoverable from **DELAWARE MARKETING**, its officers, agents and employees as a result of **TELATRON**'s performance, non-performance, or improper performance under this Agreement, **TELATRON**'s breach of any representations or warranty hereunder, or which arise out of or relate to the legality of the services outlined herein or the manner in which such services are or were performed. This paragraph includes without limitation any and all claims arising out of or relating to **TELATRON**'s compliance or non-compliance with any applicable state or federal consumer protection law, including without

limitation the Federal Telephone Consumer Protection Act of 1991, as amended, the FTC Telemarketing Sales Rule, and FTC or FCC statutes relating to telemarketing, and all regulations promulgated pursuant to said laws or any other state or federal consumer protection law. **TELATRON** hereby expressly represents and warrants that it will perform these services in full compliance with applicable state and federal consumer protection law, including without limitation the Federal Telephone Consumer Protection Act of 1991, as amended, the FTC Telemarketing Sales Rule, and FTC or FCC statutes relating to telemarketing, and all regulations promulgated pursuant to said laws or any other state or federal consumer protection law. (The preceding representation and warranty does not include the wording of **DELAWARE MARKETING** provided scripting.)

c. The provisions of this "Indemnification" section shall survive the termination of this Agreement.

7. **REPRESENTATIONS AND WARRANTIES OF TELATRON**

**TELATRON** represents, warrants and covenants that:

a. It is duly incorporated, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania;

b. It is duly authorized to enter into this Agreement and to perform its obligations hereunder;

c. It is, and will continue to be duly qualified and licensed ( to the extent required by law) to do business and to carry out its obligations under this Agreement;

d. The services provided under this Agreement will not infringe upon any patent, copyright, trademark, trade secret or other proprietary right of any third party; and

e. It will exercise due care and diligence in the selection and maintenance of hardware and software used to perform services under this Agreement.

8. **COMPENSATION**

Specific compensation will be established and agreed upon on a program by program basis and outlined in program exhibits as defined in paragraph 1 of this Agreement. Included within this compensation section is **DELAWARE MARKETING**'s agreement to share start up expenses for each major program undertaken. Such participation in startup expenses shall be deducted from future commissions earned.

9. **TERM**

This Agreement shall commence as of the date first above written and shall continue through September 1, 2004 ("Initial Term"). Thereafter, this Agreement shall be automatically renewed for

successive one (1) year terms unless either **DELAWARE MARKETING** or the **TELATRON** gives the other party written notice that is does not wish to renew the Agreement at least thirty (30) days before the expiration of the Initial Term or any renewal term.

10. **TERMINATION: DISCONTINUANCE OF A PROGRAM**

   a. In addition to the provisions set forth in Section 9 above, this Agreement may be terminated as follows:

   (i) Either party shall have the immediate right to terminate this Agreement upon written notice in the event that the other party becomes insolvent, generally fails to pay its debts as they become due, enters into receivership, is the subject of a voluntary or involuntary bankruptcy proceeding, or makes an assignment for the benefit of creditors or; a substantial part of the other party's property is or becomes the subject of any levy, seizure, assignment or sale for or by any creditor or governmental agency without being released or satisfied within thirty (30) days thereafter.

   (ii) Either party shall have the immediate right to terminate this Agreement upon written notice in the event that the other party violates any federal, state or local law or regulation in the performance of its obligations under this Agreement; or is unable to perform its obligations hereunder as a result of any federal, state or local law or regulation.

   (iii) Either party shall have the right to terminate this Agreement immediately upon notice in the event of a force majeure occurrence as described in Section 13 hereof.

   (iv) Either party shall have the right to terminate this Agreement immediately in the event that the other party commits a material breach of this Agreement.

11. **RESPONSIBILITIES UPON TERMINATION**

   a. The termination of this Agreement, however occasioned, shall not terminate, affect or impair any rights, obligations or liabilities of **DELAWARE MARKETING** or **TELATRON** that may accrue or have accrued prior to such termination or that, under the terms of this Agreement, continue after the termination. Each party shall return all property and Confidential Information belonging to the other party which is in its possession at the time of termination.

   b. Both parties shall be responsible for paying any compensation set forth in Program Exhibit(s) through the effective date of termination (including any notice period). Payment shall be made as described in Section 8 above.

12. **SURVIVAL**

   The provisions of Sections 3, 4, 6, 7, 13 and 15 of this Agreement shall survive termination of this Agreement.

### 13. FORCE MAJEURE

In the event either party should fail in whole or in part to fulfill its obligations under this Agreement as a consequence of an act of God, fire, explosion, electrical failure, accident, strike, flood, embargo, war or riot, or other similar occurrence, such failure to perform shall not be considered a breach of this Agreement during the period of such disability. In the event of any force majeure occurrence as set forth in this Section, the disabled party shall use its best efforts to meet its obligations as set forth in this Agreement. The disabled party shall promptly advise the other party in writing if it is unable to perform due to a force majeure event, the expected duration of such inability to perform and whether any developments (or changes therein) appear likely to affect the ability of the disabled party to perform any of its obligations in whole or in part. If the other party determines, in its reasonable judgment, that any such failure of the disabled party to so perform will adversely impact the other party, the other party may elect to terminate this Agreement as set forth in Section 10 (a)(iii) above.

### 14. CONTINGENCY PLAN

In order to ensure that there is no disruption of operations with respect to the Program Specifications to be provided, **DELAWARE MARKETING** and **TELATRON** agree to have in place and implement, when necessary, a contingency plan that will enable them to continue operations in the event of a significant disturbance to their normal operations.

### 15. INDEPENDENT CONTRACTOR

In the performance of this Agreement, **TELATRON** is acting as an independent contractor. Personnel supplied by **TELATRON** hereunder are not **DELAWARE MARKETING**'s personnel or agents, and **TELATRON** assumes full responsibility for their acts. **TELATRON** shall be solely responsible for the payment of compensation of **TELATRON** employees assigned to perform services hereunder, and such employees shall be informed that they are not entitled to the provision of any employee benefits of **DELAWARE MARKETING**.

### 16. ASSIGNMENT, TRANSFER AND SALE

Neither party hereunder may assign or otherwise transfer this Agreement or any of their rights and obligations relating to this Agreement without the prior written consent of the other party hereto; provided that **DELAWARE MARKETING** may assign this Agreement to its parent, a subsidiary or any affiliated companies. Furthermore, **TELATRON** may not subcontract any part of the work being performed under this Agreement without written consent of **DELAWARE MARKETING**.

In the event that **TELATRON** accepts an offer to purchase the organization, **DELAWARE MARKETING** shall be entitled 28.57% of the purchase price which is attributed to Academic Lending Center activity.

## 17. NON-COMPETITION

The parties acknowledge that the marketing of services and products under this agreement extends throughout the United States. Accordingly, during the term of this agreement, neither Academic Lending/Creditron Financial Services nor **DELAWARE MARKETING** shall, without the prior written consent of the other parties, directly or indirectly engage in or render services to any business conducting loan origination services to any business conducting student consolidation loans services in the United States. Telatron Marketing Group Inc. shall maintain its telemarketing business products and relationships and shall confine its activities to telemarketing and related administrative activities.

The parties agree that any breach or threatened breach of this non-competition provision will irreparably injure the non-breaching part, and that any remedy at law for any breach or injunctive relief in addition to any other remedy it might have under this Agreement, or at law or in equity. Each of the parties agrees that the grant of injunctive relief will not deprive such party from its ability to profitably conduct other business.

## 18. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

## 19. COMPLIANCE WITH LAWS

**DELAWARE MARKETING** and **TELATRON** shall perform their respective obligations pursuant to this Agreement in compliance with all applicable federal, state and local laws, rules and regulations.

## 20. WAIVER

The failure of either party to insist upon the performance of any terms or conditions of this Agreement, to exercise any right or privilege conferred in this Agreement, or to demand any penalties resulting from any breach of any of the terms and conditions of this Agreement shall not be construed as waiving any such terms, conditions, rights or privileges, but the same shall continue and remain in full force and effect. Any waiver must be in writing, and delivered to those individuals named in Section 20.

## 21. COMMUNICATIONS

Any notice, request, consent, waiver or other communication required or permitted to be given hereunder shall be effective only if in writing and shall be deemed sufficient only if delivered in person or sent by facsimile, telegram, cable, certified or registered United States mail, postage prepaid, return receipt requested, or private overnight mail delivery or courier service addressed as follows:

If to **DELAWARE MARKETING**:	DELAWARE MARKETING PARTNERS, LLC
5223 West Woodmill Dr
Suite 41
Wilmington, DE 19808
Attention: Alan Estes

If to **TELATRON**:	TELATRON MARKETING GROUP, INC.
1545 West 38th Street
Erie, PA 16508
Attention: Joyce M. Covatto

or to such other person or address as either **DELAWARE MARKETING** or **TELATRON** may designate by written notice given to the other party as provided herein. Such notice or communication shall be deemed to have been given as of the date sent as described above.

## 22. SEVERABILITY

If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof.

## 23. BINDING EFFECT

This Agreement, including all the Exhibits attached hereto, and the rights and obligations created hereunder shall be binding upon and inure solely to the benefit of **DELAWARE MARKETING** and **TELATRON** and their respective successors and permitted assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

## 24. ENTIRE AGREEMENT

This instrument and any Exhibits hereto contain the entire agreement between **DELAWARE MARKETING** and **TELATRON** and may only be changed or altered by a written instrument specifically stating that it modifies this Agreement and signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

## 25. HEADINGS

The Section headings in this Agreement are inserted as a matter of convenience only and shall in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision herein.

**IN WITNESS WHEREOF, DELAWARE MARKETING and TELATRON** have executed this Agreement through their respective, duly authorized officers.

AFFIX CORPORATE SEAL

ATTEST: _____

DELAWARE MARKETING PARTNERS, LLC
BY _[signature]_
TITLE _[illegible]_
DATE SIGNED 2/28/03

AFFIX CORPORATE SEAL

ATTEST: _____

TELATRON MARKETING GROUP, INC.
BY _[signature]_
TITLE _President_
DATE SIGNED 2/24/03

AFFIX CORPORATE SEAL

ATTEST: _____

ACADEMIC LENDING CENTER/
CREDITRON FINANCIAL SERVICES, INC.
BY _[signature]_
TITLE President
DATE SIGNED 2/27/03



Exhibit -001
To The Agreement Between
Delaware Marketing Partners, LLC.
And
Telatron Marketing Group, Inc.
Academic Lending/Creditron Financial Services, Inc.
(the "Agreement")

This Exhibit 001 is made as of this 1st day of September, 2002 by and between **DELAWARE MARKETING PARTNERS, LLC (DELAWARE MARKETING)** and **TELATRON MARKETING GROUP/ACADEMIC LENDING CENTER-CREDITRON FINANCIAL SERVICES. ("TELATRON").**

WITNESSETH:

WHEREAS, **DELAWARE MARKETING** and **TELATRON** wish to work together to perform Student Loan Acquisition Services;

NOW, THEREFORE, **DELAWARE MARKETING** and **TELATRON** agree as follows:

1. **PROGRAM DESCRIPTION**

    The Marketing and origination of Federal Family Education Consolidation Loans (FFELP) made under Section 4C of the Higher Education Act, as amended ("The Act").

2. **PROGRAM RESPONSIBILITY**

    a. **DELAWARE MARKETING** shall be responsible for the following:

    (1.) "Prospect Lead Acquisition". This includes the identification of name list sources for the purpose of FFELP Student Loan Consolidations.

    (2.) "Direct Mail Campaigns". **DELAWARE MARKETING** shall plan, develop, and implement direct mail campaigns consisting of name list procurement, data processing services (This includes list hygiene and suppressions), data append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.

    (3.) "Credit Bureau Relationships"
    Management of Relationship with Credit Bureaus relative to prospect lead Acquisition.

(4) "Analyst Recommendations"
Campaign response analysis and recommendations.

(5) "Marketing Plan Recommendations"
**DELAWARE MARKETING** shall suggest and recommend methods and approaches relative to the **ACADEMIC LENDING** overall marketing plan.

(6.) "Marketing Management Assignments"
**DELAWARE MARKETING** shall accept and perform other reasonable marketing assignments from **TELATRON**.

b. **TELATRON** shall be responsible for the following:

(1.) "Overall Management"
Overall Management of the Student Loan Consolidation Program through its **ACADEMIC LENDING CENTER**.

(2.) "Contact Center Marketing"
Responsibility for Contact Center marketing include inbound, outbound, web, data entry/mail administrative processing.

(3.) "Secondary Markets"
The development and continuing relationship of secondary market student loan lenders.

(4.) "Program Funding"
The responsibility to fund the Contact Center Marketing Plan and the approved Direct Mail Plan.

(5.) "General Program Administration"
**TELATRON** shall coordinate all phases of the 32 point processing plan.

3. **PROGRAM FINANCIAL CONSIDERATIONS**

   a. "Contact Center Activities"
   **DELAWARE MARKETING** shall be responsible for the costs incurred in purchasing prospect name lists and any associated list processing.

   b. "Direct Mail Campaigns"
   **DELAWARE MARKETING** shall fully purchase the prospect names for Direct Mail Campaigns. They shall be responsible for 28.57% of all other costs relative to approved Mail Campaigns.

**TELATRON** shall be responsible for all other related expenses to approved Direct Mail Campaigns.

## 4. ALLOCATION OF PROGRAM REVENUES

For the services provided by the parties, **TELATRON** shall distribute commission funds received as follows:

    a. **DELAWARE MARKETING** shall be paid 28.57% of the gross revenues. Such payment shall be accomplished within seven (7) days after commission funds are received from the lender(s) **TELATRON** shall remit payment to **DELAWARE MARKETING** by wire transfer. **TELATRON** shall be entitled to 71.43% of the remaining gross revenues.

    b. **DELAWARE MARKETING** shall share in the initial organization expenses of the (FFELP) Student Loan Consolidation Loan Program. Accordingly, **DELAWARE MARKETING** shall forego the first $142,850.00 in commission funds.

## 5. NOTICES

Any notice, request, consent, waiver or other communication required or permitted to be given hereunder shall be effective only if in writing and shall be deemed sufficient only if delivered in person or sent by facsimile, telegram, cable, certified, or registered United States mail, postage prepaid, return receipt requested, or private overnight mail delivery or courier service addressed as follows:

## 6. DEFINED TERMS

All defined terms in the agreement shall have the same meanings when used herein.

IN WITNESS WHEREOF, the parties acknowledge that this Addendum is attached and made an integral part of the Telemarketing Service Agreement dated September 1, 2002 BETWEEN THE parties hereto, and have caused their respective Officers to execute this Exhibit Hereunder.

IF TO DELAWARE MARKETING:      DELAWARE MARKETING PARTNERS, LLC
                               5223 West Woodmill Dr. Suite 41
                               Wilmington, De. 19808

IF TO TELATRON:                TELATRON MARKETING GROUP, INC.
                               1545 West 38th St.
                               Erie, Pa. 16508

IF TO CREDITRON:               ACADEMIC LENDING CENTER
                               CREDITRON FINANCIAL SERVICES, INC.
                               1567 West 38th St.
                               Erie, Pa. 16508

ATTEST:                        DELAWARE MARKETING PARTNERS, LLC
_____        BY _____
                               TITLE _____
                               DATE SIGNED  2/28/03

AFFIX CORPORATE SEAL

ATTEST:     TELATRON MARKETING GROUP, INC.
_____        BY _____
                               TITLE _____
                               DATE SIGNED  2/24/03

AFFIX CORPORATE SEAL

ATTEST:     ACADEMIC LENDING CENTER/
_____        CREDITRON FINANCIAL SERVICES, INC.
                               BY _____
                               TITLE  President
                               DATE SIGNED  2/24/03

AFFIX CORPORATE SEAL