UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff | ) ) | C.A. No.: 04 - 263 Erie |
| v. | ) ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| CREDITRON FINANCIAL SERVICES, INC., a Pennsylvania corporation, and TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | ) ) ) ) ) | |
| Defendants | ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE**

I.   BACKGROUND

As a component of its damage claim, the Plaintiff seeks to recover a commission on those revenues which were received by the Defendants after the Plaintiff terminated the parties' contract on January 9, 2004. The Plaintiff claims that, for some yet-to-be identified period of time after the January 9, 2004 termination, Defendants continued to receive revenue from Defendants' use of telemarketing lists which had been furnished by the Plaintiff prior to January 9, 2004. Despite contractual language to the contrary, which limits Plaintiff's compensation up to "the effective date of termination," the Plaintiff demands payment of a commission on those revenues received after the date of termination.

The Defendants have filed a motion in limine to exclude at trial any evidence or testimony to support Plaintiff's claim for compensation from revenues received after the date of the contract's termination. This brief is respectfully submitted in support of that motion.

II.     FACTUAL BACKGROUND

At all times relevant Defendants operated a telemarketing business which, among other projects, contacted individuals to market student loan consolidations. Defendants telephoned people who fit the profile of those who may be eligible to consolidate and refinance student loans. If the person contacted wanted to take advantage of the opportunity to consolidate existing student loans, Defendants would then prepare a loan application to be submitted to a lender (Brazos) and Defendants would gather the necessary documentation required by Brazos to permit funding of the new loan. If the application was accepted and the consolidation loan was then funded by Brazos, Defendants would eventually receive a commission payment from Brazos based upon the quantity and the average balance of the consolidated loans.

The Defendants hired the Plaintiff to provide certain services which were critical to the success of this endeavor. Effective September 1, 2002, the parties entered into a Student Loan Origination and Marketing Agreement ("Agreement"). The Agreement includes a document identified as Exhibit -001. A copy of the entire Agreement is attached to Defendants' Motion as Exhibit "1." Generally speaking, one of the Plaintiff's roles was to obtain telemarketing lists to be used by the Defendants to contact prospective borrowers. To fulfill this duty, Plaintiff would formulate specific list selection criteria to be submitted to ChoicePoint, a broker of consumer

credit information which it purchases from various credit bureaus. However, by no means was this the Plaintiff's sole contractual obligation. To the contrary, the Plaintiff agreed to perform <u>all</u> of the following work:

> Delaware Marketing shall be responsible for the following:
>
> (1) **"Prospect Lead Acquisition."** This includes the identification of name list sources for the purpose of FFELP student loan consolidations.
>
> (2) **"Direct Mail Campaigns."** Delaware Marketing shall plan, develop, and implement direct mail campaigns consisting of name list procurement, data processing services (this includes list hygiene and suppressions), data append services (consisting of credit and demographic attributes; telephone number appends), prospect targeting and response modeling and creative development, and direct mail printing and production.
>
> (3) **"Credit Bureau Relationships."** Management of relationship with credit bureaus relative to prospect lead acquisition.
>
> (4) **"Analyst Recommendations."** Campaign response analysis and recommendations.
>
> (5) **"Marketing Plan Recommendations."** Delaware Marketing shall suggest and recommend methods and approaches relative to the academic lending overall marketing plan.
>
> (6) **"Marketing Management Assignments."** Delaware Marketing shall accept and perform other reasonable marketing assignments from Telatron.

*Agreement, Ex. -001, ¶2. See also Defendants' Appendix in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 88], Trish DeSanti-Boehm depos., p. 23 (Plaintiff was hired by*

3.

*Defendants to perform "list acquisition analysis, direct marketing campaigns, advertise for ALC program"); p. 35 (This is the "work and services that Delaware Marketing Partners was obligated to perform as a condition precedent to their receiving 28.5% of the funds that academic lending sent or received").*

Thus, the Plaintiff's work did not end with the mere delivery of telemarketing lists to the Defendants. To the contrary, the Plaintiff was obligated to, among other things, analyze the results of the telemarketing efforts and to make recommendations to direct and focus those efforts. In this regard, Plaintiff was in charge of "[c]ampaign response analysis and recommendations". The Plaintiff was also obligated to suggest and recommend methods and approaches relating to the overall marketing plan.

In exchange for the Plaintiff's performance of *all* of this work, the Agreement provided that the Plaintiff would receive from the Defendants a sum calculated as 28.57% of the gross revenues which were to be received by Defendants from Brazos. *Agreement, Ex. -001, ¶4(a)*.

By letter dated January 9, 2004, Plaintiff's counsel informed the Defendants that the Plaintiff was terminating the agreement "effective immediately." *See Exhibit 2 attached to Defendants' Motion.* The purported basis for the termination was the Plaintiff's allegation that the Defendants had breached the Agreement by failing to pay the Plaintiff amounts owed. The Defendants asserted that no additional amounts were owed (Plaintiff concedes that it was paid $755,007.00) because Plaintiff did not fulfill all of its performance obligations. Additionally,

4.

Plaintiff breached the non-compete provisions of the Agreement by secretly forming and operating a business (K2 Financial) which became a direct competitor of the Defendants. K2 Financial was formed and was operating months before the Plaintiff terminated its contract with Defendants. *See Magistrate Judge's Report and Recommendation 6/25/07, p. 19; Estes depos. pgs. 3-6; Metcalfe depos. pgs. 5-7.* Copies of these excerpts of the deposition transcripts of Estes and Metcalfe are attached to Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss Counterclaim [Doc. 74].[1]

In any event, the Agreement provides that either party may terminate the contract due to a material breach of the agreement. *Agreement, ¶10(a)(iv)*. The contract also deals expressly with the issue of compensation owed to the Plaintiff upon such a termination.

> 11. RESPONSIBILITIES UPON TERMINATION
>
> (a) . . .
>
> (b) Both parties shall be responsible for paying any compensation set forth in Program Exhibit(s) through the effective date of termination (including any notice period). Payment shall be described as Section 8 above.

*Agreement, ¶11(b).*[2]

---

[1] Estes, Metcalfe and Brian Nelson were the founding members of both Delaware Marketing Partners, LLC and of K2 Financial. Despite this record evidence, the Court adopted the Magistrate Judge's recommendation to enter summary judgment on Defendants' counterclaim for breach of the non-compete provisions of the Agreement.

[2] The agreement also provides that termination would not affect those rights which "have accrued prior to such termination." *Agreement, ¶11(a)*. The issue here is the extent to which the Plaintiff's right to compensation "accrued prior to" January 9, 2004. It is Defendants' position that no rights had accrued with respect to revenues

It is Plaintiff's position that, despite this clear contractual limitation, the Plaintiff is entitled to full commissions for those revenues received by Defendants after the termination. However, Plaintiff can not point to any express contract provision which provides such a right. The court would have to not only add provisions to the contract, but it would also have to ignore paragraph 11(b) of the Agreement (or conclude that this provision is meaningless) in order to grant the Plaintiff the relief it demands.

III.  DISCUSSION

The Agreement states that compensation is to be paid up "through the effective date of termination." The reasonable reading of this contractual limitation is that no compensation is owed unless the right to compensation has accrued before the date of termination.

There is no dispute that the Plaintiff had no right to any compensation unless and until the Defendants actually *received* revenues. *Plaintiff's Pretrial [Doc. 95], pp. 1-2* ("It was expressly agreed that Delaware Marketing Partners, LLC would be paid 28.57% of the gross revenues *received* by the Defendants from lenders as compensation for its efforts under the contract"); *Plaintiff's Brief in Support of Motion for Summary Judgment [Doc. 87], p. 3* ("It is clear that based upon [the contract] Delaware Marketing Partners, LLC was owed 28.57% of the gross revenues *received* by the Defendants as payment for its efforts under the contract"); *Plaintiff's Motion for Summary Judgment [Doc. 86], ¶7* ("Under the contract, Delaware

---

yet to be received from Brazos.

6.

Marketing Partners, LLC was owed 28.57% of the gross revenues *received* by the Defendants as payment for its efforts under the contract"). Therefore, the Plaintiff's claim for compensation could not accrue until the loan application was accepted by Brazos and the Defendants received payment from Brazos. Since the Agreement provides that Plaintiff is only entitled to payments which had accrued as of the date of termination, the Plaintiff has no right to revenues which were received after the date of termination.

This is a reasonable and fair contract limitation because the Plaintiff's entitlement to compensation was in exchange for the Plaintiff's performance of *all* of the work and services identified in the Agreement. <u>See</u> *Agreement, Exhibit -001, ¶4* ("For the services provided by the parties, Telatron shall distribute commission funds as follows"). The bargain struck by the parties required the Plaintiff to do more than simply supply lists in order to earn its full share of the revenues. The Agreement does not state that the Plaintiff would receive full compensation (28.57% of gross revenues) if Plaintiff did not perform all of its duties. After January 9, 2004, the Plaintiff did not perform any of the work which was needed to make the Defendants' use of the telemarketing lists effective and profitable.[3] After termination, the Plaintiff provided no analysis of any list performance. The Plaintiff made no suggestions nor recommendations regarding methods or approaches of the marketing program. Since the Plaintiff was obligated to perform work in addition to furnishing telemarketing lists in order to earn its compensation, the Plaintiff

---

[3] Defendants produced substantial evidence to show that, even prior to termination, Plaintiff had failed to perform as promised and failed to deliver telemarketing lists of an acceptable quality. *Magistrate Judge's Report and Recommendation, pp. 22-23; DeSanti-Boehm depos., p. 25; A. Covatto depos., pp. 36, 46*. Plaintiff took the position that it could renege on its promises and representations of performance because they were not specifically incorporated into the written Agreement. The Court accepted the Plaintiff's argument.

has no right to any commissions from the revenues which were paid to Defendants after the termination of the Agreement.

In Claflin v. Manufacturers' Club of Philadelphia, 158 A. 575 (Pa. Super. 1932), the plaintiff sued for commissions allegedly due on revenues derived from his sales efforts. Under the plaintiff's contract, he was entitled to receive thirty percent of the "gross revenue from advertising procured by him and accepted by the" defendant. 158 A. at 576. Plaintiff then terminated his contract and claimed commissions for advertising contracts which had been signed prior to his termination but for which revenues had not yet been received. At trial, the court entered a directed verdict in favor of the plaintiff on his claim for commissions. On appeal, the Superior Court reversed and entered judgment on behalf of the defendant.

The Superior Court in Claflin ruled that the plaintiff's entitlement to compensation was based upon the performance of a number of different tasks for the defendant. The plaintiff's work did not end with a customer's order. "The contract provided that the plaintiff should supervise, manage, solicit, procure advertising, prepare copy, and submit advertising proofs, and attend to such other details pertaining to advertising . . . as shall be designated by the" defendant. *Id.* Although the plaintiff had secured contracts for advertising prior to his termination, his right to a commission had not accrued fully because he did not perform these other tasks after his termination.

> Referring to the contract, we find that it expressly
> provided that the appellee had various duties to
> perform – obtaining advertisements was one, but

8.

> there were others. When the plaintiff voluntarily severed his relations with the defendant, he no longer performed the work that followed the receipt of the advertising contracts, which his contract contemplated he was to do. For part performance, he asks full pay. One ought not to be forced to pay out money unless he can get that for which he stipulated.

*Id.*

Similarly, in Levan v. Royal Paper Products, Inc., 185 A.2d 801 (Pa. Super. 1962), the plaintiff demanded that the defendant pay commissions for sales made during the term of plaintiff's employment but for which payment was not made to the defendant until after plaintiff's employment had terminated. The agreement between the parties was that plaintiff's sales commissions would be "due and payable to the [plaintiff] only upon payment by the customers". 185 A.2d at 802. The jury found that plaintiff was not entitled to payment on sales made but for which payment had not been received by defendant before plaintiff's employment was terminated. On appeal, this ruling was affirmed. The Superior Court ruled that although the plaintiff had performed the work which was necessary to make the sale, the plaintiff's right to a commission payment had not accrued with respect to those sales for which the defendant had not received payment by the time of the termination of plaintiff's contract. "Under the terms of the agreement commissions were not due and payable to plaintiff until payment had been made by the customers. Commissions thus were not earned by plaintiff and plaintiff's performance of the bargain was not completed until the condition was met." 185 A2d at 803. The Court concluded that this is wholly consistent with the principal of law reflected in comment (a) of the Restatement (Second) of

9.

Agency that if the result of an agent's work (i.e., defendant's receipt of revenue from a sale) is not accomplished "until after the termination of the agent's employment, he can not recover the agreed-upon compensation", except in cases where the agent was terminated in bad faith. *Id*.

The Agreement here expressly states that no compensation would be payable beyond the "effective date of termination." Although Defendants may have received revenues after Plaintiff terminated the contract, the parties had expressly agreed that Plaintiff would only receive payment "through the effective date of termination." *Agreement, ¶11(d)*. If the Plaintiff is permitted to now receive full commissions after it terminated the contract, then Defendants would not receive the benefit of the parties' bargain. Defendants would not receive all of the other services Plaintiff was obligated to perform in order to earn its full commission. The parties resolved this question by agreeing that no commissions would be payable for revenues received after termination. As of the date of termination, the Plaintiff had not accrued any rights to the revenues yet to be paid by Brazos and for which Plaintiff had not yet performed all of the work required by the Agreement. Therefore, the Plaintiff is not entitled to any commissions on the revenues received by the Defendants after January 9, 2004.

                Respectfully submitted,

                ELDERKIN, MARTIN, KELLY & MESSINA

                By  /s/ Craig A. Markham
                    Craig A. Markham, Esquire
                    Attorney for Defendants
                    150 East Eighth Street
                    Erie, Pennsylvania 16501
                    (814) 456-4000