IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE MARKETING PARTNERS, LLC, a Delaware limited liability company, | CA No.: 04-263 |
| Plaintiff | |
| v. | JUDGE McLAUGHLIN AND MAGISTRATE JUDGE  SUSAN PARADISE BAXTER |
| CREDITRON FINANCIAL SERVICES, INC, a Pennsylvania corporation, and, TELATRON MARKETING GROUP, INC., a Pennsylvania corporation, | TRIAL BY JURY DEMANDED  **Electronically Filed** |
| Defendants | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE REGARDING DAMAGES**

AND NOW, comes Delaware Marketing Partners, LLC, by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files this Memorandum of Law as follows:

The Student Loan Origination and Marketing Agreement (Exhibit 1) states in the recitals that the parties desire to implement programs for the marketing and funding of consolidation loans, and that they desire to work together to perform student loan acquisition services. The allocation of revenues section of the Agreement which appears in Exhibit - 001 provides as follows:

> "4. ALLOCATION OF PROGRAM REVENUES
>
> For the services provided by the parties, TELATRON shall distribute commission funds received as follows:
>
> a. DELAWARE MARKETING shall be paid 28.57% of the gross revenues. Such payment shall be accomplished within seven (7) days after commission funds are received from the lender(s). TELATRON shall remit payment to

> DELAWARE MARKETING by wire transfer. TELATRON shall be entitled to 71.43% of the remaining gross revenues.
>
> b. DELAWARE MARKETING shall share in the initial organization expenses of the (FFELP) Student Loan Consolidation Loan Program. Accordingly, DELAWARE MARKETING shall forego the first $142,850.00 in commission funds."

Perhaps a "cleaner" way to have handled the commissions would have been for the parties to arrange for the lender to send 28.57% of each commission directly to Delaware Marketing Partners, LLC, and the balance to the defendants. Possibly because he wanted to make it easier for the lender, or possibly because he intended to keep Delaware Marketing Partners, LLC's share of the commissions, Mr. Covatto insisted that the entire commission be sent to him. This was acceptable to Delaware Marketing Partners, LLC because the Agreement required the defendants to wire to Delaware Marketing Partners, LLC its share of each commission within 7 days of defendants' receipt of same.

Pursuant to the Agreement, the parties did in fact implement programs for the marketing and funding of consolidation loans, and they did in fact work together to perform student loan acquisition services. The parties stopped working together when plaintiff exercised its right to terminate the Agreement based on defendants' material breach of the Agreement, i.e., failing to distribute to plaintiff its 28.57% of the gross revenues.

Defendants claim that they "hired the Plaintiff," and that under the Agreement, plaintiff's right to compensation ended at the time the Agreement was terminated. Plaintiff disputes that it was "hired," and further disputes that the language in paragraph 11 (b) about paying "compensation" through the date of termination does not relieve defendants of their obligation to forward to the plaintiff its share of all of the "commissions" that derived from the programs that were implemented under the Student Loan Origination and Marketing Agreement. Plaintiff will present evidence at trial to prove (1) which of the individuals whose names plaintiff supplied to

defendant actually received consolidated loans, and (2) the dollar amount of all commissions that were paid by the lender for the loans that were made to these individuals. It is plaintiff's position that the date of termination of the Agreement is irrelevant to the determination of plaintiff's damages.

    A.    **Argument**

    1.    **The terms of the Agreement require that Delaware Marketing Partners, LLC be paid 28.57% of all gross revenues received by defendants regardless of whether these funds were received before or after the date of termination.**

Pennsylvania law provides that the intent of the parties to a written contract is contained in the writing itself. *Krizovensky v. Krizovensky*, 425 Pa. Super. 204, 624 A.2d 638 (1993) (citing *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982)). "When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. (Citation omitted). Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Id*. (citing *D'Huy v. D'Huy*, 390 Pa. Super. 509, 568 A.2d 1289 (1990). *See also*, *Gemini Equip. v. Pennsylvania Supply*, 407 Pa. Super. 404, 413, 595 A.2d 1211, 1215 (1991) ("[T]he written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements are admissible to explain or vary the terms of such a contract.").[1]

---

[1] A contract will be found to be ambiguous:

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Krizovensky*, 624 A.2d at 642 (citing *Z&L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (1985)).

The parties entered into a written contract which contains clear and unambiguous terms governing the parties' relationship. Defendants are asking the Court to rule that the defendants are not obligated to pay to plaintiff its 28.57% share of all of the commissions which the defendants received after the plaintiff terminated the Agreement, i.e, January 9, 2004. Defendants rely on subparagraph (b) of paragraph 11 of the Agreement which states:

> "Both parties shall be responsible for paying any compensation set forth in program Exhibit(s) through the effective date of termination (including any notice period). Payment shall be made as described in Section 8 above."

It must be remembered that Plaintiff terminated the Agreement under paragraph 10 (a)(iv) for material breach of contract. The right to terminate would be rendered meaningless if the Court were to rule that by exercising its right to terminate, plaintiff gave up its right to receive its share of the commissions that were paid after the date of termination for names provided by plaintiff before the date of termination. A ruling in the defendants' favor would also ignore the plain language of subparagraph (a) of paragraph 11, which states:

> "The termination of this Agreement, however occasioned, shall not terminate, affect or impair any rights, obligations or liabilities of DELAWARE MARKETING or TELATRON that may accrue or have accrued prior to such termination or that, under the terms of this Agreement, continue after the termination. Each party shall return all property and confidential information belonging to the other party which is in its possession at the time of termination."

Moreover, had plaintiff elected not to terminate the Agreement, plaintiff would have been required to provide lists of more names, which would have resulted in the payment by the lender of even more commissions, all of which would have been kept by defendants, thereby increasing the amount of damages plaintiff would have to sue for. Plaintiff should not be penalized for mitigating its damages, and defendant should not benefit from breaching the Agreement.

Defendants confuse the concept of "paying compensation" and the concept of "distributing commission funds." Even if the Court were to rule that the obligation to pay

4

compensation ends upon the termination of the Agreement, that does not mean that the obligation to distribute gross revenues ceases upon the termination of the Agreement. Looking at this issue from a different perspective will demonstrate the absurdity of the defendants' argument. Had the parties arranged for the lender to wire 100% of the commissions to Delaware Marketing Partners, LLC, and had defendants terminated the Agreement due to a breach on the part of plaintiff, would defendants agree that paragraph 11 (b) allows the plaintiff to keep 100% of the commissions? Of course not.

It must be kept in mind that after Delaware Marketing Partners, LLC provided each list of names to the defendants, the question of whether a commission would be paid for any of the names on the list depended on whether an individual with more than one student loan elected to submit an application, and also depended on whether the application would be approved. The question of when a commission would be paid by a lender depended on how long it took for the application to be submitted and how long it took to process and fund the loan. Hence, it was typically a matter of many months between the time Delaware Marketing Partners provided names to the defendants, and the time a commission was earned and paid. It is in this context that there is language in the Agreement that termination of the contract shall not impair any rights, obligations or liabilities that accrued prior to termination or that under the terms of the Agreement continue after the termination. (Exhibit 1, ¶ 11(a))  It is also in this context that the only reference to time in the "Allocation of Program Revenues" paragraph of the Agreement is that defendants were obligated to wire plaintiff's share of the gross revenues within seven days after the commissions were received from the lender.

Defendants argue that paragraph 11(b) of the Agreement prevents Delaware Marketing Partners, LLC from recovering 28.57% of all gross revenues received by defendants after January 9, 2004, the date of the termination of the Agreement, arising from services provided by

5

Delaware Marketing Partners, LLC. Paragraph 11(b) states, in relevant part: "Both parties shall be responsible for paying any compensation set forth in Program Exhibit(s) through the effective date of termination (including any notice period)." Contrary to defendants' argument, this provision says nothing about limiting Delaware Marketing Partners, LLC's right to payment of its 28.57% gross revenue amount. In fact, when reading paragraph 11(b) together with paragraph 11(a), as this Court should do,[2] it is readily apparent that 11(b) merely supplements 11(a) and that 11(a) actually controls this damage dispute. Paragraph 11(a) controls the parties' relationship post termination, while paragraph 11(b) addresses the narrow issue of compensation during performance of the Agreement through the effective date of termination. Defendants' argument which relies upon paragraph 11(b) is without merit.

Further, defendants confuse the term "compensation" found in paragraph 11(b) with the concept of distributing commission funds regarding gross revenues founding paragraph 4 of Exhibit-001 of the Agreement. "Compensation" under the Agreement is discussed in paragraph 11(b) and paragraph 8. (Exhibit 1, pp. 4, 5) In paragraph 8 the only cost specifically relating to the payment of compensation is start up expense. (Exhibit 1, ¶ 8) Further, paragraph 8 states that start up expense should be deducted from future commissions, thereby indicating that start up expense, the only item identified in connection with compensation, is something different than commissions. (Exhibit 1, ¶ 8) Clearly, the contract contemplates that compensation and commissions are two different things; compensation being the payment of money that each party owes to the other in exchange for work done, specifically including connection with start up expense, and commission being monies shared between the parties derived from gross revenues received from operation of the program with 28.57% of those gross revenues distributed to

---

[2] It is well established that, when possible, a court should read the terms of a contract as a consistent, integrated whole and should attempt to reconcile inconsistent terms to give effect to all of its terms. See *Meeting House Lane, LTD. v. Melso*, 628 A.2d 854, 857-858 (Pa. Super 1993).

Delaware Marketing Partners, LLC. This is consistent with the principal that all contractual terms have meaning and when a contract uses two different terms, each term should have its own significance. See *Guy M. Cooper, Inc. v. East Penn School District et al.*, 903 A.2d 608, 616 (Pa. Comw. 2006).

As a result, the terms of the Agreement at paragraph 11(b) merely provide that the parties are responsible for payment of compensation, which would include start up expense, through the effective date of termination. The result which defendants' seek by their strained reading of paragraph 11(b) is not permitted by the clear terms of the Agreement.

Finally, defendants' analysis of the contract violates the fundamental principle requiring mitigation of damages arising from a breach of contract. In this instance, defendants' interpretation of the Agreement necessarily results in the conclusion that Delaware Marketing Partners, LLC would be required to continue to perform under the contract without payment, and thereafter seek an increased amount of damages by way of litigation. Such a result is not consistent with well established authority. See *Bafile v. Borough of Muncie*, 588 A.2d 462, 464 (Pa. 1991) (generally a party who suffers a loss due to a breach of contract has a duty to make a reasonable effort to mitigate the losses).

    **2.    Defendants improperly re-argue liability issues that have already been decided by this Court and that have no relevance the pending damages issue.**

Defendants further argue that the accrual of Delaware Marketing Partners, LLC's rights to compensation under the Agreement did not accrue until defendants received revenues from Brazos. Defendants argue this is a reasonable interpretation of the contract because Delaware Marketing Partners, LLC's right to compensation was conditioned upon full performance of all work and services identified in the Agreement. (Brief in Support of Motion in Limine, p. 6) This argument should be rejected pursuant to the terms of the contract and because this Court has already ruled upon issues regarding performance of the contract.

Simply stated, pursuant to this Court's previous rulings, the jury will be instructed that Delaware Marketing Partners, LLC has performed under the contract and fulfilled its contractual obligations. There is no issue regarding how much of the 28.57% of the gross revenues Delaware Marketing Partners, LLC has earned based upon performance. Rather, the jury will be instructed that defendants breached the contract and the only issue to be decided is the amount of the gross revenue that defendants received from the target lender (Brazos) resulting in any way from the relationship between Delaware Marketing Partners, LLC and defendants. As such, defendants' arguments to support the Motion in Limine are without merit and should be rejected.

Moreover, the Agreement between the parties does not support defendants' arguments. The Agreement provides that Delaware Marketing Partners, LLC shall be paid 28.57% of the gross revenues with seven days from the receipt of those funds by defendants. (Exhibit 1, Exhibit -001 to Agreement, p. 3) This payment provision in the contract says *nothing* about full performance, partial performance or any other qualitative analysis of contract performance. Defendants are improperly attempting to insert such terms into the contract at this time. Simply put, as this Court has already concluded, this clause does not require a qualitative assessment of the performance of either party's work, nor would it require a jury to inquire whether the work performed by Delaware Marketing Partners, LLC was performed in full. In fact, such an inquiry is of no consequence to a proper application of the clear terms of the agreement. If *any* revenue was generated and thereafter collected by defendants that resulted from work and/or services performed under the contract, Delaware Marketing Partners, LLC is to be paid 28.57% of that revenue amount. This is the case whether the revenues generated and collected are for full, or partial, performance of the Agreement as there is no distinction in the Agreement for the same. Further, there is no distinction in the contract for payment arising out of the performance of any particular obligations, as defendants attempt to argue. Defendants are simply re-arguing their

failed liability argument, which this Court has already rejected, pertaining to Delaware Marketing Partners, LLC's performance of the contract. This court has already rejected such arguments pertaining to liability at summary judgment and the only remaining issue is the amount of gross revenue received by defendants for calculation of Delaware Marketing Partners, LLC's damages.

Even if this Court were to review the cases upon which defendants rely to support the argument that Delaware Marketing Partners, LLC's right to compensation does not accrue until defendants' receipt of gross revenues, which it should not do so based upon this Court's prior rulings, those cases are not controlling in this matter. Both cases relied on by defendant involve an employer compensating an employee for services, whereas in the case at hand, plaintiff was not an employee but rather a partner in a joint venture. In *Claflin*, plaintiff was to perform work that followed the receipt of certain advertising contracts, which he did not perform due to his termination of his employment contract. In *Claflin*, plaintiff was not paid for work that necessarily had to be performed after his voluntarily resignation. Defendants acknowledge this fact in their Brief at page 8. To the contrary, however, Delaware Marketing Partners, LLC is seeking monies for work that it did, in fact, perform prior to termination of the Agreement.

In *Levan*, the court's analysis is based upon an oral contract of employment where Mr. Levan was told, among other things, by his employer that he would be paid a commission on the 10th day of each month, following payments of invoices by customers. The oral contract in Levan says nothing about the issue central to defendants' argument: that accrual of Delaware Marketing Partners, LLC's right to payment of commissions equals the receipt of the monies by defendants. The court in *Levan*, noting that the terms of the particular contract at issue will govern the dispute between the parties, concluded that under the plain terms of the employment contract in that case Mr. Levan's conditional right to the payment of commissions after

9

termination of his employment contract accrued when payment of invoices had been made by customers.  Mr. Levan's right to payment had simply not existed prior to this time and his right to the commissions did not exist before termination of his contract.

In the case before this Court, as previously discussed herein, Delaware Marketing Partners, LLC's right to payment of commissions under the Agreement accrued prior to termination.  Delaware Marketing Partners, LLC performed work prior to the termination of the agreement which resulted in gross revenues received by defendants.  According to the terms of the Agreement, Delaware Marketing Partners, LLC is entitled to 28.57% of those revenues, without limitation as to when they are received.  The clear terms of the Agreement between the parties provide for this and do not state otherwise.

>   **3.    If this court determines that the Agreement is ambiguous, it should be construed against defendants thereby permitting Delaware Marketing Partners, LLC to recover 28.57% of the gross revenues received by defendants through September 1, 2004.**

It is well established that courts construe contracts against the drafting party.  *Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1203 (3d Cir. 1995) (if agreement is ambiguous it is to be construed "most strongly" against the party who drafted it); *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986); *See also J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 682 (Pa. Super. 2002).  In this instance, the contract at issue was drafted by defendants.[3]  If the contract is determined to be ambiguous with respect to damages permitted to be recovered, the contract shall be construed against defendants.  As a result, Delaware Marketing Partners, LLC is permitted to seek recovery of 28.57% of the gross revenues received by defendants through September 1, 2004.

---

[3] As discussed in the Motion for Summary Judgment filed by Delaware Marketing Partners, LLC, the Agreement was drafted by defendants, specifically Alfred D. Covatto, the Chief Executive Officer of Creditron Financial Corporation and Telatron Marketing Group, Inc., and the President of Academic Lending Center/Financial Services,

10

For the forgoing reasons, this Court should deny defendants' Motion in Limine and permit Delaware Marketing Partners, LLC to recover 28.57% of the gross revenues received by defendants through September 1, 2004 as a matter of law.

        Respectfully submitted,

        DICKIE, McCAMEY & CHILCOTE, P.C.

        By   /s/ *Brett W. Farrar*
           Steven W. Zoffer, Esq.
           PA. I.D. #62497
           szoffer@dmclaw.com
           Brett W. Farrar, Esq.
           PA. I.D. #79217
           bfarrar@dmclaw.com

        Two PPG Place, Suite 400
        Pittsburgh, PA 15222-5402
        (412) 281-7272 Telephone
        (412) 392-5367 Fax

        Attorneys for Plaintiff

---

Inc. (See Exhibit 2, deposition of Alfred D. Covatto dated November 14, 2006, p. 11 to Delaware Marketing Partners, LLC's Motion for Summary Judgment)